# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STATE OF CALIFORNIA;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF NEW
JERSEY; STATE OF COLORADO;
STATE OF ILLINOIS; STATE OF
MARYLAND; STATE OF NEW YORK;
STATE OF WISCONSIN,

      Plaintiffs,

          v.

U.S. DEPARTMENT OF EDUCATION;
DENISE CARTER, in her official capacity
as former Acting Secretary of Education
and current acting Chief Operating Officer,
Federal Student Aid; LINDA MCMAHON,
in her official capacity as Secretary of
Education,

      Defendants.

Case No. 1:25-cv-10548

## <u>DECLARATION OF JENNIFER OLOFF-LEWIS Ph.D.</u>

1

## DECLARATION OF JENNIFER OLOFF-LEWIS Ph.D.

I, **Jennifer Oloff-Lewis, PhD**, declare as follows:

1.      I am currently employed by California State University, Chico ("Chico State") as a Professor in the College of Communication and Education's School of Education. I have held that position since August 2010.

2.      My current responsibilities include, but are not limited to, acting as the Principal Investigator for The Belong, Engage, Support, and Transform (BEST) Project, also referred to as the BEST Teacher Residency Program or BEST Program.

3.      Except for any matters stated on information and belief, all of the facts set forth below are based on my personal knowledge.  As to any matters stated on information and belief, I believe those facts to be true and correct.

4.      If called upon as a witness, I could and would testify competently to the facts and matters set forth below.

### TQP Grant – Award # S336S240026:

5.      In 2024, the US Department of Education ("ED") solicited and invited applications for grants provided under its Teacher Quality Partnership Grant ("TQP") program published in the Federal Registry on April 4, 2024 (Vol 89, No. 66 23573).

6.      As explained and represented by the ED, the purpose of a TQP grant was to incentivize and cause institutions to implement and undertake programs and initiatives with the objective of improving student achievement at the K-12 level by, among other things, supporting and enhancing the professional development of current teachers, recruiting and training new highly qualified teachers, and recruiting highly qualified individuals in other professions into the teaching profession, especially for hard-to-fill teaching positions in rural high-poverty school districts.

7.      Chico State Enterprises ("CSE") is a non-profit 501(c)(3) corporation affiliated with Chico State.  CSE relied on ED's statements and representations about the intended purpose of a TQP grant. Based on those statements and representations, CSE applied for a TQP in 2024.

8.      As set out in its grant proposal, CSE intended to use the TQP grant to establish, implement, and operate the BEST Teacher Residency Program. The objective of the Program would be to address chronic teacher shortages in high-need K-12 districts, particularly in rural communities by, among other things, improving teacher retention rates, improving instructional effectiveness, and supporting the efforts of those local districts in addressing teacher shortages. To that end, the Program would recruit, prepare, and support a minimum of 60 teacher residents to serve in underserved, high-need rural districts.  The Program would include partnerships with several high-needs or high-poverty public schools located in Butte and Tehama Counties including Palermo Union Elementary, Golden Hills Elementary, Helen M. Wilcox Elementary, Thermalito Union Elementary, Plumas Avenue Elementary, Poplar Avenue Elementary, Sierra Avenue Elementary, Corning Union Elementary, Woodson Elementary, West Street Elementary, Olive View Elementary, and Los Molinos Elementary School.

9.      On September 4, 2024, CSE was awarded a TQP grant from ED for the BEST Program.  The TQP grant was for a five-year term from October 1, 2024, through September 30, 2029.  The total amount provided by the grant over the five-year period was approximately $8,502,340.  A true and correct copy of the Grant Award Notification ("GAN") and attachments, dated September 4, 2024, is attached as Exhibit A.  The GAN set out the terms and conditions of the award.  As set out in the GAN, ED could terminate the grant only if the recipient or subrecipient (1) "materially fails to comply with any term of an award" (GAN at Attachment 5); or (2) engages in violations of human trafficking (GAN at Attachment 8).

10.     Since October 2024, CSE has used and expended the TQP grant funds in a manner fully consistent with both ED's statements regarding the nature of the grant and CSE's grant proposal.

11.     The BEST Teacher Residency Program consists of a yearlong teacher residency during which students would be able to earn a Master of Arts in Teaching and a California Multiple Subject Teaching Credential.  TQP funds have been used to establish the operational framework necessary to and for the BEST Program, including recruiting  student candidates, program and training design, and retaining experienced faculty to provide mentorship.  CSE has also committed to provide teacher candidates with a financial stipend which would allow them to engage in full-time classroom teaching while enrolled in the Program.

12.     On February 12, 2025, without any prior notice or indication, CSE received a GAN from ED informing CSE that effective that same day the TQP grant was terminated. The purported basis for ED's termination was that the "grant is deemed to be inconsistent with, and no longer effectuates, Department priorities. See 2 C.F.R. § 200.340(a)(4); see also 34 C.F.R. § 75.253." A true and correct copy of the February 12, 2025 GAN is attached as Exhibit B.

13.     Prior to February 12, 2025, there had been no indication from ED that the TQP grant would be terminated or that ED would refuse to provide CSE with the funding ED had committed to.  To the contrary, multiple webinars were offered to CSE as a new grantee and there were monitoring calls with our program officer ("PO"). The PO provides technical assistance and monitors grant projects. The first monitoring call with the PO was on November 18, 2024.  During the call, CSE and the PO discussed and reviewed the activities CSE had taken and planned to take to implement and operate the BEST Program. The PO told CSE to continue with its planned activities and the work as outlined in CSE's grant proposal.  On February 3, 2025, CSE received an email from the PO asking to schedule a second monitoring call. However, on February 13, 2025, CSE received an email from the PO canceling all monitoring calls.

14.     On February 12, 2025, CSE also received a letter from ED "Re: Grant Award Termination."  The letter alleged that the TQP grant had provided funding for programs that "promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic"; "violate either the letter or purpose of Federal civil rights law"; "conflict with the Department's policy of

4

prioritizing merit, fairness, and excellence in education"; "are not free from fraud, abuse, or duplication"; or "otherwise fail to serve the best interests of the United States." A true and correct copy of ED's letter is attached as Exhibit C.

15.     Prior to the receipt of Exhibit C, ED had never provided CSE with any notice, written or otherwise, that CSE had allegedly engaged in any of the activities described in the letter.  ED had never suggested, implied or provided notice to CSE  that it had determined CSE had allegedly promoted or taken part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; or had violated  the letter or purpose of Federal civil rights law; or had acted in conflict with ED's policy of prioritizing merit, fairness, and excellence in education; or had engaged in fraud, abuse, or duplication; or had otherwise fail to serve the best interests of the United States.  The letter was the first time CSE had ever heard or was informed of those allegations.

16.     The total remaining amount of TQP funds committed by ED to CSE over the five year term is approximately $ 8.38 Million.  For the period of October 1, 2024 - September 30, 2025, the remaining amount of awarded TQP funds is approximately $1.19 Million.

17.     CSE has relied and acted upon its expectation and understanding that ED would fulfill its commitment to provide the TQP funding it had awarded.  CSE has used, and will use, the funds to design and implement a teacher residency and credential program that trains teachers to provide a high-quality education to children living in high-poverty, rural school districts.  CSE has committed and represented to teacher candidates that TPQ grant funds will be used to provide them with a financial stipend that will enable them to work full time work at a high-needs/high-poverty K-12 school while enrolled in the Program.

18.     Other than the TQP grant, CSE has no other funds to operate the BEST Program, including providing financial support to teacher candidates.  The sudden elimination and termination of the TQP grant and BEST Program will have an immediate negative impact on

teacher candidates residency students as well as high-needs/high-poverty K-12 schools and students.

19.  In return for receiving a financial stipend, upon completion of the BEST Program teacher candidates agree to and must complete three years of full-time teaching in an approved high-needs/high-poverty K-12 school in the United States. Based on recruitment information, CSE fully anticipates and expects that as of June 15, 2025, there will be 15 teacher candidates enrolled in the Program who will receive a financial stipend.

20.    The financial assistance provided to teacher candidates is essential. It enables teacher candidates to complete a demanding year-long clinical preparation program which, among other things, requires them to teach four days a week in a high-needs or high-poverty K-6 school while taking classes one day a week and in the evenings (leaving no time for employment to support themselves in a teacher preparation program). Without the financial assistance provided through the TQP grant, the 15 teacher candidates whom CSE expects to participate in the Program will not be able to enroll and participate in the Program.  Similarly, without a financial stipend, many future potential teacher candidates will not be able to enroll in the BEST Program, thereby further exacerbating the teacher shortage in our rural region

21.    The BEST Program is designed to address critical teacher shortages in high-needs and underserved rural communities in collaboration with local school districts.  As part of the Program, teacher candidates will teach full time in a high-needs or high-poverty school while, working closely with a mentor teacher and meeting residency requirements.  Those schools have a chronic and critical shortage of teachers. They anticipate relying heavily on teacher candidates as a means of addressing their teacher shortages. Those same underserved K-12 schools anticipate hiring those teacher candidates to fill existing and future teacher vacancies once they have completed the Program.

22.    The termination of the TQP grant will eliminate a large number of highly qualified teachers that would otherwise be available and accessible to high-needs or high-poverty rural communities and perpetuate their existing teacher shortages.  It will increase their reliance

on less qualified or underqualified teachers. And will negatively impact them financially because it will increase their cost of recruiting, locating, and training new teachers.

23.    The ultimate goal of the BEST program is to equip students with the academic, social and emotional skills necessary to perform in school and life. Students in high-needs/high-poverty rural school districts and schools require highly qualified teachers with specialized training to assist them in overcoming academic, social and emotional hurdles often present in those communities. Access to highly qualified teachers significantly and indisputably improves student achievement and outcomes in underserved K-12 schools such as the ones that exist in those Counties. Termination of the TQP grant will not support and promote student achievement in those underserved K-12 schools. Instead, it will greatly impede and hamper student achievement and success in those underserved K-12 schools.

24.    A significant percentage of students in rural Butte and Tehama Counties have experienced adverse childhood trauma (e.g., abuse, neglect, social or economic deprivation) compounded by significant trauma caused by natural disasters (wildfires). Students who have experienced trauma can have, and often do have, social, emotional, behavioral or academic problems. The termination of the TQP grant will deprive students who have experienced trauma of teachers especially trained with techniques to address those needs. Trauma-informed teachers and educators are the ones best equipped to support those students and provide a safe and effective learning environment for them.

25.    CSE has objected to ED's termination of the TQP grant, specifically requesting that ED hold the termination in abeyance and continue to provide funding while the objection is considered and/or void the termination and reinstate the obligated funds. CSE requested that ED respond 9 a.m. (PST) March 3, 2025 as to whether it will take one or both of the requested actions. As of the date of this Declaration, ED has not responded to CSE's appeal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed March 4, 2025, in Chico, California.

/s/ Jennifer Oloff-Lewis, PhD
_____
**Jennifer Oloff-Lewis, PhD**

EXHIBIT A

S336S240026
Jennifer Oloff-Lewis
Chico State Enterprises
400 W. First Street
Chico, CA 95929

S336S240026

Mary Sidney
Chico State Enterprises
25 Main St., Suite 103
Chico, CA 95928

S336S240026

# US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| 1 | RECIPIENT NAME | 2 | AWARD INFORMATION |
|---|---|---|---|
| | Chico State Enterprises<br>25 Main St., Suite 103<br>Chico, CA 95928 | | PR/AWARD NUMBER    S336S240026<br>ACTION NUMBER    1<br>ACTION TYPE    New<br>AWARD TYPE    Discretionary |

| 3 | PROJECT STAFF | PROJECT TITLE |
|---|---|---|
| | RECIPIENT PROJECT DIRECTOR<br>Jennifer Oloff-Lewis    (530) 898-5184<br>joloff-lewis@csuchico.edu<br>EDUCATION PROGRAM CONTACT<br>Louis Edwards    (202) 453-6778<br>LOUIS.EDWARDS@ED.GOV<br>EDUCATION PAYMENT HOTLINE<br>*G5* PAYEE HELPDESK    888-336-8930<br>obssed@servicenowservices.com | 84.336S<br>TI1e Belong, Engage, Support, Transform (BEST) Project |

**5**    KEY PERSONNEL

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Jennifer Oloff-Lewis | Project Director | 0% |

**6**    AWARD PERIODS

BUDGET PERIOD    10/01/2024 - 09/30/2025
PERFORMANCE PERIOD    10/01/2024 - 09/30/2029

FUTURE BUDGET PERIODS

| BUDGET PERIOD | DATE | AMOUNT |
|---|---|---|
| 2 | 10/01/2025 - 09/30/2026 | $1,906,240.00 |
| 3 | 10/01/2026 - 09/30/2027 | $1,919,050.00 |
| 4 | 10/01/2027 - 09/30/2028 | $1,943,434.00 |
| *5* | 10/01/2028 - 09/30/2029 | $1,414,598.00 |

**7**    AUTHORIZED FUNDING

THIS ACTION    $1,319,018.00
BUDGET PERIOD    $1,319,018.00
PERFORMANCE PERIOD    $1,319,018.00

**8**    ADMINISTRATIVE INFORMATION

UEI    C4VMQLSU1LF4
REGULATIONS    EDGAR AS APPLICABLE
2 CFR AS APPLICABLE
ATTACHMENTS    2, 3, 6, 8, 9, 11, 12, 13, 14, 17D, 18D, GEl, GE2, GE3, GE4, GE5

**9**    LEGISLATIVE AND FISCAL DATA

AUTHORITY:    PL P.L. 110-315 TITLE II HIGHER EDUCATION ACT, AS AMENDED
PROGRAM TITLE:    TEACHER QUALITY ENHANCEMENT GRANTS FOR STATE AND
PARTNERSHIPS
CFDA/SUBPROGRAM NO:    84.336S

S336S240026

## US Department of Education
## Washington, D.C. 20202

# GRANT AWARD NOTIFICATION

| FUND CODE | FUNDING YEAR | AWARD YEAR | ORG. CODE | CATEGORY | LIMITATION | ACTIVITY | CFDA | OBJECT CLASS | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| 0201A | 2024 | 2024 | ESO00000 | B | JDK | 000 | 336 | 4101C | $1,319,018.00 |

**10**

PR/AWARDNUMBER:      S336S240026

RECIPIENT NAME:      Chico State Enterprises

GRANTEE NAME:      CHICO STATE ENTERPRISES

                25 **MAIN** ST UN IT 203,

                CMCO, CA 95928 - 5388

PROGRAM INDIRECT COST TYPE:      Restricted

PROJECT INDIRECT COST RATE:      **8%**

TERMS AND CONDITIONS

(1) THE FOLLOWING ITEMS ARE INCORPORATED IN THE GRANT AGREEMENT:

l) THE RECIPIENT'S APPLICATION (BLOCK 2);
2) THE APPLICABLE EDUCATION DEPARTMENT REGULATIONS: 2 CFR PART 180; NONPROCUREMENT DEBARMENT AND SUSPENSION AS ADOPTED AT 2 CFR PART 3485; 2 CFR PART 200 AS ADOPTED AT 2 CFR 3474 (BLOCK 8),AND 34 CFRPARTS 75, 77, 79, 81, 82, 84, 86, 97, 98, 99;AND THE PROGRAM REGULATIONS SPECIFIED IN BLOCK 8; AND
3) THE SPECIAL TERMS AND CONDITIONS SHOWN AS ATTACHMENTS IN BLOCK 8 ON THE INITIAL AWARD APPLY UNTIL CHANGED.

THIS AWARD SUPPORTS ONLY THE BUDGET PERIOD SHOWN IN BLOCK 6. IN ACCORDANCE WITH 34 CFR 75.253, THE SECRETARY CONSIDERS, AMONG OTHER THINGS, CONTINUED FUNDING IF:

1) CONGRESS HAS APPROPRIATED SUFFICIENT FUNDS UNDER THE PROGRAM;
2) THE DEPARTMENT DETERMINES THAT CONTINUING THE PROJECT WOULD BE IN THE BEST INTEREST OF THE GOVERNMENT;
3) THE GRANTEE HAS MADE SUBSTANTIAL PROGRESS TOWARD MEETING THE GOALS AND OBJECTIVES OF THE PROJECT;
4) THE SECRETARY ESTABLISHED PERFORMANCE MEASUREMENT REQUIREMENTS FOR THE GRANT IN THE APPLICATION NOTICE, THE PERFORMANCE TARGETS IN THE GRANTEE'S APPROVED APPLICATION;
5) THE RECIPIENT HAS SUBMITTED REPORTS OF PROJECT PERFORMANCE AND BUDGET EXPENDITURES THAT MEET THE REPORTING REQUIREMENTS FOUND AT 34 CFR 75.118, 2 CFR 200.328 AND 200.329, AND ANY OTHER REPORTING REQUIREMENTS ESTABLISHED BY THE SECRETARY; AND
6) THE GRANTEE HAS MAINTAINED FINANCIAL AND ADMINISTRATIVE MANAGEMENT SYSTEMS THAT MEET THE REQUIREMENTS IN 2 CFR 200.302, FINANCIAL MANAGEMENT, AND 2 CFR 200.303, INTERNAL CONTROLS.

IN ACCORDANCE WITH 2 CFR 200.308(c)(2) CHANGES TO KEY PERSONNEL IDENTIFIED IN BLOCK 5 MUST RECEIVE PRIOR APPROVAL FROM THE DEPARTMENT.

THE SECRETARY ANTICIPATES FUTURE FUNDING FOR THIS AWARD ACCORDING TO THE SCHEDULE IDENTIFIED IN BLOCK 6. THESE FIGURES ARE ESTIMATES ONLY AND DO NOT BIND THE SECRETARY TO FUNDING THE AWARD FOR THESE PERIODS OR FOR THE SPECIFIC AMOUNTS SHOWN. THE RECIPIENT WILL BE NOTIFIED OF SPECIFIC FUTURE FUNDING ACTIONS THAT THE SECRETARY TAKES FOR THIS AWARD.

(2) The Office of Management and Budget requires all Federal agencies to assign a Federal Award Identifying Nwnber (FAIN) to each of their financial assistance awards. The PR/AWARD NUMBER identified in Block 2 is your FAIN.



**US Department of Education**
**Washington, D.C. 20202**

S336S240026

# GRANT AWARD NOTIFICATION

If subawards are permitted under this grant, and you choose to make subawards, you must document the assigned PR/AWARD NUMBER (FAIN) identified in Block 2 of this Grant Award Notification on each subaward made under this grant. The term subaward means:

l. A legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient. (See 2 CFR 200.331(a))

2. The term does not include your procurement of property and services needed to carry out the project or program (The payments received for goods or services provided as a contractor are not Federal awards, see 2 CFR 200.50 l(f) of the 0MB Uniform Guidance: "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards").

3. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract. (See 2 CFR 200.1)

(3)   Unless this grant solely funds research, you must comply with new regulations regarding awards to faith-based organizations (FBOs) that provide beneficiary services under this grant or under a contract you award to provide beneficiary services under this grant. These new regulations clarify the rights ofFBOs and impose certain duties on FBOs regarding the referral of beneficiaries they serve. See 34 CFR 75.52, 75.712-75.714, appendix A to part 75, and 2 CFR 3474.15. TI1e Department has established a web page that provides guidance on the new regulations, including FAQs and other implementation tools, which is available at http://www2.ed.gov/policy/:fund/reg/fbci-reg.html. If you have any questions about these regulations, please contact the Education Program Contact identified in Block 3 of this GAN.

(4)   Reimbursement of indirect costs is subject to the availability of funds and statutory and regulatory restrictions. The negotiated indirect cost rate agreement authorizes a non-Federal entity to draw down indirect costs from the grant awards. The following conditions apply to the below entities.

A. All entities (other than institutions of higher education (IHE))

The GAN for this grant award shows the indirect cost rate that applies on the date of the initial grant for this project. However, after the initial grant date, when a new indirect cost rate agreement is negotiated, the newly approved indirect cost rate supersedes the indirect cost rate shown on the GAN for the initial grant. This new indirect cost rate should be applied according to the period specified in the indirect cost rate agreement, unless expressly limited under EDGAR or program regulations. Any grant award with an approved budget can amend the budget to account for a change in the indirect cost rate. However, for a discretionary grant award any material changes to the budget which may impact the scope or objectives of the grant must be discussed with the program officer at the Department. See 34 CFR 75.560 (d)(3) (ii) (part 75 of EDGAR).

B. Institutions of higher education (IHE)

Under 2 CFR part 200, Appendix III, Indirect (F&A) Costs Identification and Assignment, and Rate Determination for Institutions of Higher Education (IHEs), the Department must apply the negotiated indirect cost rate in effect on the date of the initial grant award to every budget period of the project, including all continuation grants made for this project. See 2 CFR Part 200, Appendix III, paragraph C.7. Therefore, the GAN for each continuation grant will show the original indirect cost rate and it applies to the entire period of performance of this project. If the indirect cost rate agreement that is applicable to this grant does not extend to the end of the grants project period, the indirect cost rate set at the start of the project period must still be applied to the end of project period regardless of the fact that the rate has otherwise expired.

(5)   Frontload: The following condition will be imposed on the grantees who are proposed to be frontloaded:
This grant is a frontloaded grant, i.e., funds indicated in Block 7 were requested by the grantee, and approved by the Department, for expenditure in more than one budget period. For the current budget period and any subsequent budget period, the grantee may only draw down funds in accordance with its approved budget for that budget period and may not draw down funds in excess of that amount without prior approval. If you wish to request reconsideration of these specific conditions, please send written notification describing why such conditions should not be imposed on this grant to your Department program officer.

S336S240026

**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

(6)  Revised Budget: The following condition will be imposed on all grantees recommended for funding:
The grantee must submit a revised budget covering Year 1 of the grant award that aligns with the actual amount
of funding that the grantee receives from the Department. The revised budget must be within the scope of the
approved project and must align with all initial goals and objectives of the approved application. The grantee must
submit this revised budget within 60 days of the grant award. If you wish to request reconsideration of these specific
conditions, please send written notification describing why such conditions should not be imposed on this grant to
your Department program officer.

LAVANNA WEEMS    Digitally signed by LAVANNA WEEMS
                 Date: 2024.09.04 15:08:58 -04'00'

**AUTHORIZING OFFICIAL**                              **DATE**

Ver.1

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**      (See Block 2 of the Notification)

**1. RECIPIENT NAME** - The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION** -   Unique items of information that identify this notification.

    **PR/AWARD NUMBER**-  A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant numbe • or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

    **ACTION NUMBER** - A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

    **ACTION TYPE** - The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

    **AWARD TYPE** -   The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF** - This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

    **\*RECIPIENT PROJECT DIRECTOR** -  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

    **EDUCATION PROGRAM CONTACT** - The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

    **EDUCATION PAYMENT CONTACT** -   The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER** - Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5. \* KEY PERSONNEL** - Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS** -   Project activities and funding are approved with respect to three different time periods, described below:

    **BUDGET PERIOD** - A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

    **PERFORMANCE PERIOD** - The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

    **\*FUTURE BUDGET PERIODS** - The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING** - The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

    **\*THIS ACTION** - The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

    **\*BUDGET PERIOD** - The total amount of funds available for use by the grantee during the stated budget period to this date.

    **\*PERFORMANCE PERIOD** - The amount of funds obligated from the start date of the first budget period to this date.

    **RECIPIENT COST SHARE** -   The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

    **RECIPIENT NON-FEDERAL AMOUNT** - The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION** -   This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

    **UEI** -        The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

**\*REGULATIONS** -   Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS** -   Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures,  and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA** -   The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS** - The fiscal information recorded by the U.S. Department of Education's Grants Management System (GS) to track obligations by award.

**AMOUNT** -  The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS** -   Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER** -   The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME** -  The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE** - The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE** -   The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL** -   The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award


**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF** -  The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT** -   The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT** -   The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT** -   The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE** -  If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

# UNITED STATES DEPARTMENT OF EDUCATION
## OFFICE OF THE CHIEF FINANCIAL OFFICER
## & CHIEF INFORMATION OFFICER

Jennifer Oloff-Lewis
Chico State Enterprises
25 Main St., Suite 103

Chico, CA 95928

SUBJECT: Payee Verification for Grant Award S336S240026

This is to inform you of the payee for the above listed grant award issued by the United States Department of Education

Grantee UEI: C4VMQLSU1LF4
Grantee Name: CHICO STATE ENTERPRISES

Payee UEI: C4VMQLSU1LF4
Payee Name: CHICO STATE ENTERPRISES

If any of the above information is not correct, please contact a Payee Customer Support Representative at 1-888-336-8930. Please send all the correspondence relating to the payee or bank information changes to the following address:

U.S. Department of Education
550 12th Street, SW
Room6087
Washington, DC 20202

Attn: Stephanie Barnes
Phone: 202-245-8006

## SPECIFIC GRANT TERMS AND CONDITIONS FOR
## FINANCIAL AND PERFORMANCE REPORTS

**PERFORMANCE REPORTS:**

**(1) FINAL REPORTS -ALL RECIPIENTS** are required to submit a final performance report within 120 days after the expiration or termination of grant support in accordance with submission instructions provided in box 10 of the Grant Award Notification (GAN), or through another notification provided by the Department of Education (Department) (2 CFR § 200.329(c)).

**(2) ANNUAL, QUARTERLY, or SEMIANNUAL REPORTS -ALL RECIPIENTS** of a multi-year discretionary award must submit an annual Grant Performance Report (34 CFR § 75.118). The annual performance report shall provide the most current performance and financial expenditure information that is sufficient to meet the reporting requirements of 2 CFR §§ 200.328, 200.329, and 34 CFR § 75.720.

Your education program contact will provide you with information about your performance report submissions, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification provided by the Department. The grant term or condition in box 10 on the GAN or another notification may reflect any of the following:

1. That a performance report is due before the next budget period begins. The report should contain current performance and financial expenditure information for this grant. It will either identify the date the performance report is due or state that the Department will provide additional information about this report, including due date, at a later time.

2. That an interim performance report is required because ofthe nature of the award or because of statutory or regulatory provisions governing the program under which this award is made, and that the report is due more frequently than annually as indicated, e.g., due quarterly and submitted within 30 days after the end of each quarter, or due semiannually and submitted within 30 days after the end of each 6-month period (2 CFR § 200.329(c)(l)).

3. That other reports are required, e.g., program specific reports required in a program's statute or regulation.

**(3) FINANCIAL REPORTS - SOME RECIPIENTS:**

If a financial report is required, your education program contact will provide you with information about your financial report submission, including the due date, as a grant term or condition in box 10 on the GAN, or through another notification.

A Standard Form (SF) 425 Federal Financial Report (FFR) is required if:

1. A grant involves cost sharing, and the ED 524B, which collects cost sharing information, is not submitted or a program-specific report approved by U.S. Office of Management and Budget (0MB) does not collect cost sharing information;
2. Program income was earned;

3.  Indirect cost information is to be reported and the ED 524B was not used or a program-specific report approved by 0MB does not collect indirect cost information;
4.  Program regulations or statute require the submission of the FFR; or
5.  Specific Award Conditions, or specific grant or subgrant conditions for designation of "high risk," were imposed in accordance with 2 C.F.R. part <u>200.208</u> and part <u>3474.10</u> and required the submission of the FFR.

If the FFR is required, the notification may indicate one of the following (see the form and its instructions at <u>Standard Form (SF) 425 Federal Financial Report (FFR)</u>):

1.  Quarterly - FFRs are required for reporting periods ending on 12/31, 03/31, 06/30, 09/30, and are due within 30 days after each reporting period.

2.  Semi-annual - FFRs are required for reporting periods ending on 03/31 and 09/30, and are due within 30 days after each reporting period.

3.  Annual - FFRs are required for reporting period ending 09/30, and is due within 30 days after the reporting period.

4.  Final - In coordination with the submission of final performance reports, FFRs are due within 120 days after the project or grant period end date (2 CFR <u>200.328).</u>

When completing an FFR for submission, the following must be noted:

1.  *Multiple Grant Reporting Using SF 425A Prohibited:* While the FFR is a governmentwide form that is designed for single grant and multiple grant award reporting, the Department's policy is that multiple grant award reporting is not permitted for Department grants. Thus, a Department grantee that is required to submit an FFR in accordance with any of the above referenced selections must complete and submit one FFR for each of its grants. Do not use the FFR attachment (Standard Form 425A), which is available for reporting multiple grants, for reporting on Department grants. As such, references to multiple grant reporting and to the FFR attachment in items 2, 5 and 10 of the FFR are not applicable to Department grantees. With regards to item 1 of the note found in the FFR Instructions, a grantee must complete lO(a) through lO(o) for each of its grants. The multiple award, multiple grant, and FFR attachment references found in items 2, 5, 6, before lO(a), in item lO(b), before lO(d), before lO(i) and before 10(1) of the Line Item Instructions for the FFR are not applicable to Department grants.

2.  *Program Income:* Unless disallowed by statute or regulation, a grantee will complete item lO(m) or l0(n) in accordance with the options or combination of options as provided in 2 CFR Part <u>200.307.</u> A grantee is permitted, in accordance with 2 CFR Part <u>200.307,</u> to add program income to its Federal share to further eligible project or program objectives, use program income to finance the non-Federal share of the project or program; and deduct program income from the Federal share of the total project costs.

3.  *Indirect Costs:* A grantee will complete item II(a) by listing the indirect cost rate type identified on its indirect cost rate agreement, as approved by its cognizant agency for indirect costs.

A Department grantee that does not have an indirect cost rate agreement approved by its cognizant agency for indirect costs, and that is using the Department approved (beyond the 90-day temporary period) temporary indirect cost rate of 10% of budgeted direct salaries and wages, or the de minimis rate of 10% of modified total direct cost (MTDC) must list its indirect cost rate in II(a) as a Department Temporary Rate or De Minimis Rate.  The de minimis rate of 10% of MTDC consists of:

> All direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $25,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships,  participant support costs and the portion of each subaward in excess of $25,000. Other items, including contract costs in excess of $25,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (see definition of MTDC at 2 CFR § 200.1).

A training program grantee whose recovery of indirect cost limits indirect cost recovery to 8% of MTDC or the grantees negotiated indirect cost rate, whichever is less in accordance with EDGAR § 75.562 (c), must list its rate in II(a) as a Department Training Grant Rate.  The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States[1] as defined in 2 CFR § 200.1

A restricted program grantee must list its rate as a Restricted Indirect Cost Rate in II(a).  A restricted  program  (i.e., programs with statutory  supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 - 76.569. is not less than 8% MTDC.  A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate.  Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary  rate until a restricted indirect cost rate is negotiated.  If a restricted program grantee elects to utilize the temporary  rate, it  must list its rate as a Department Temporary Rate in II(a).

Grantees with indirect cost rates prescribed in program statute or regulation must list their rate as a Rate Required in Program Statute or Regulation in II(a).  Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery.

For detailed information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates see GAN ATTACHMENT 4.

4. *Supplemental Pages:* If grantees need additional space to report financial information, beyond what is available within the FFR, they should provide supplemental pages. These additional pages must indicate the following information at the top of each page: the PR/Award Number

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

**GAN ATTACHMENT 2**
**Revised 03/2021**

also known as the Federal Identifying Number or FAIN, recipient organization, Unique Entity Identifier, Employer Identification Number (EIN), and period covered by the report.

## AN OVERVIEW OF SINGLE AUDIT REQUIREMENTS OF STATES, LOCAL GOVERNMENTS, AND NONPROFIT ORGANIZATIONS

This GAN ATTACHMENT is **not** applicable to for-profit organizations.  For-profit organizations comply with audit requirements specified in block 10 of their Grant Award Notification **(GAN).**

**Summary of Single Audit Requirements for States, Local Governments and Nonprofit Organizations:**

1.  Single Audit.  A non-Federal entity (a State, local government, Indian tribe, Institution of Higher Education (IHE)1, or nonprofit organization) that expends $750,000 or more during the non-Federal entity's fiscal year in Federal awards must have a single audit conducted in accordance with 2 CFR 200.501, "Audit Requirements," except when it elects to have a program specific audit conducted.

2.  Program-specific audit election.  When an auditee expends Federal awards under only one Federal program (excluding research and development (R&D)), and the Federal program's statutes, regulations, or the terms and conditions of the Federal award do not require a financial statement audit of the auditee, the auditee may elect to have a program-specific audit conducted.  A program-specific audit may not be elected for R&D unless all of the Federal awards expended were received from the same Federal agency, or the same Federal agency and the same pass-through entity, and that Federal agency, or pass-through entity in the case of a subrecipient, approves in advance a program-specific audit.

3.  Exemption when Federal awards expended are less than $750,000.  A non-Federal entity that expends less than $750,000 during the non-Federal entity's fiscal year in Federal awards is exempt from Federal audit requirements for that year, except as noted in 2 CFR 200.503, but records must be available for review or audit by appropriate officials of the Federal agency, pass-through entity, and Government Accountability Office (GAO). Generally, grant records must be maintained for a period of three years after the date of the final expenditure report (2 CFR § 200.334)

4.  Federally Funded Research and Development Centers (FFRDC).  Management of an auditee that owns or operates a FFRDC may elect to treat the FFRDC as a separate entity.

5.  Report Submission.  To meet audit requirements of U.S. Office of Management and Budget (0MB) Uniform Guidance: Cost Principles, Audit, and Administrative Requirements for Federal Awards (Uniform Guidance), grantees must submit all audit documents required by Uniform Guidance 2 CFR 200.512, including Form SF-SAC: Data Collection Form electronically to the Federal Audit Clearinghouse at:

---

1 As defined under the Higher Education Act of 1965, as amended (HEA) section 101.

https://facides.census.gov/Account/Login.aspx.

The audit must be completed, and the data collection form and reporting package must be submitted within the earlier of 30 calendar days after receipt of the auditor's report(s), or nine months after the end of the audit period. If the due date falls on a Saturday, Sunday, or Federal holiday, the reporting package is due the next business day. Unless restricted by Federal statutes or regulations, the auditee must make copies available for public inspection. Auditees and auditors must ensure that their respective parts of the reporting package do not include protected personally identifiable information. (2 CFR 200.512)

Grantees are strongly urged to obtain the "OMB Compliance Supplement" and to contact their cognizant agency for single audit technical assistance.

The designated cognizant agency for single audit purposes is "the Federal awarding agency that provides the predominant amount of direct funding to the recipient." Grantees should obtain a copy of the 0MB Compliance supplement. This supplement will be instructive to both grantees and their auditors. Appendix III ofthe supplement provides a list of Federal Agency Contacts for Single Audits, including addresses, phone numbers, fax numbers, and e-mail addresses for technical assistance.

For single audit-related questions, if the U.S. Department of Education is the cognizant agency, grantees should contact the Non-Federal Audit Team in the Department's Office of Inspector General, at oignon-federalaudit@ed.gov. Additional resources for single audits are also available on the Non-Federal Audit Team's website at https://www2.ed.gov/about/offices/list/oig/nonfed/index.html. For programmatic questions, grantees should contact the education program contact shown on the Department's GAN.

 Grantees can obtain information on single audits from:

The 0MB website at www.omb.gov. Look under Office of Management and Budget (in right column) then click Office of Federal Financial Management (to obtain 0MB Compliance Supplement). The SF-SAC: Data Collection Form can be found at the Federal Audit Clearinghouse at: https://facides.census.gov/Files/2019-2021%20Checklist%201nstructions%20and%20Form.pdf.

The American Institute of Certified Public Accountants (AICPA) has illustrative 0MB Single Audit report examples that might be of interest to accountants, auditors, or financial staff at www.aicpa.org.

**GAN ATTACHMENT 6**
**Revised 03/2021**

## REQUEST FOR APPROVAL OF PROGRAM INCOME

In projects that generate program income, the recipient calculates the amount of program income according to the guidance given in 2 CFR Part 200.307.

**\*\*\* IF YOU RECEIVED YOUR GRANT AWARD NOTIFICATION ELECTRONICALLY AND YOU ARE SUBJECT TO ANY OF THE RESTRICTIONS IDENTIFIED BELOW, THE RESTRICTION(S) WILL APPEAR IN BOX 10 ON YOUR GRANT AWARD NOTIFICATION AS A GRANT TERM OR CONDITION OF THE AWARD. \*\*\***

Unless checked below as NOT ALLOWED, the recipient may exercise any of the options or combination of options, as provided in 2 CFR Part 200.307, for using program income generated in the course of the recipient's authorized project activities:

___     Not Allowed  Adding program income to funds committed to the project by the Secretary and recipient and using it to further eligible project or program objectives;

Not Allowed  Using program income to finance the non-Federal share of the project or program; and

Not Allowed  Deducting program income from the total allowable cost to determine the net allowable costs.

**GAN ATTACHMENT 8**
**Revised 03/2021**

## TRAFFICKING IN PERSONS

The Department of Education adopts the requirements in the Code of Federal Regulations at 2 CFR <u>175</u> and incorporates those requirements into this grant through this condition. The grant condition specified in 2 CFR <u>175.15(b)</u> is incorporated into this grant with the following changes. Paragraphs a.2.ii.B and b.2. ii. are revised to read as follows:

> "a.2.ii.B. Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 34 CFR part **85."**

> "b.2. ii. Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 34 CFR part 85."

Under this condition, the Secretary may terminate this grant without penalty for any violation of these provisions by the grantee, its employees, or its subrecipients.

**GAN ATTACHMENT- 9**
**Revised 03/2021**

**FEDERAL FUNDING ACCOUNTABILITY TRANSPARENCY ACT**
**REPORTING SUBAWARDS AND EXECUTIVE COMPENSATION**

The Federal Funding Accountability and Transparency Act (FFATA) is designed to increase transparency and improve the public's access to Federal government information. To this end, FFATA requires that Department of Education (Department) grant recipients:

1. Report **first-tier subawards** made under Federal grants that are funded at $30,000 or more that meet the reporting conditions as set forth in this grant award term;
2. Report their executives' compensation for all new Federal grants that are funded at $30,000 and that meet the reporting conditions as set forth in this grant award term; and
3. Report executive compensation data for their **first-tier subrecipients** that meet the reporting conditions as set forth in this grant award term.

For FFATA reporting purposes, the Department grant recipient is the entity listed in box 1 ofthe Grant Award Notification.

Only **first-tier subawards** made by the Department grant recipient to its **first-tier subrecipients** and the **first-tier subrecipients'** executive compensation are required to be reported in accordance with FFATA.

*Subaward, Subrecipient, Recipient, Total Compensation, Executives,* and other key terms, are defined within item 5, Definitions, ofthis grant award term.

This grant award term is issued in accordance with 2 CFR Part 170-Reporting Subaward And Executive Compensation Information.

1. ***Reporting of First-tier Subawards*** -

   a. *Applicability and what to report.*

      Unless you are exempt as provided item 4, Exemptions, of this grant award term, you must report each obligation that **equals or exceeds $30,000** in Federal funds for a first-tier subaward to a non-Federal entity or Federal agency.

      You must report the information about each obligating action that are specified in the submission instructions posted at FSRS.

   b. *Where and when to report.*

      The Department grant recipient must report each obligating action described in paragraph **1.a.** of this award term to FSRS.

      Report subaward information no later than the end ofthe month following the month in which the subaward obligation was made. For example, if the obligation was made on November 7, 2020, the obligation must be reported by no later than December 31, 2020.

2. ***Reporting Total Compensation of the Department's Grant Recipients' Executives*** -

1

a.  *Applicability and what to report.*

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if-

The total Federal funding authorized to date under this Federal award **equals or exceeds $30,000;**

ii    In the preceding fiscal year, you received-

   i.  80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

   ii.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and,**

   iii.  The public does not have access to  information  about the compensation ofthe executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.  (To determine if the public has access to  the compensation information, see the U.S. Security and Exchange Commission total compensation filings at SEC Investor.gov Executive Compensation.)

b.  *Where and when to report.*

You must report executive total compensation described in paragraph **2.a.** of this grant award term:

   i.  As part of your registration profile at SAM.gov.

   ii.  By the end of  the month following the month in which this award is made (for example, if the obligation was made on November 7, 2020 the executive compensation must be reported by no later than December  31, 2020), and annually thereafter.

**3.  *Reporting of Total Compensation of Subrecipient Executives* -**

a.  *Applicability and what to report.*

Unless you are exempt as provided in item 4, Exemptions, of this award term, for each first-tier **non-Federal entity** subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if-

   i.  In the subrecipient's preceding fiscal year, the subrecipient  received-

A.  80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), **and**

B.  $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); **and,**

C.  The public does not have access to information about the compensation ofthe executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at SEC Investor.gov Executive Compensation.)

b.  *Where and when to report.*

You must report subrecipient executive total compensation described in paragraph **3.a.** of this grant award term:

i.  In FSRS. You must include a condition on subawards that requires the subrecipients to timely report the information required under paragraph **3.a.** to you the prime awardee, or in the SAM.gov. Subrecipient executive compensation entered in SAM.gov by the subrecipient will pre-populate in FSRS, so you do not have to report when subrecipients enter this information in SAM.gov. Subrecipient executive compensation not entered in SAM.gov by the subrecipient is reported in FSRS by you the Department grant recipient.

ii.  By the end of the month following the month during which you make the subaward. For example, if the subaward obligation was made on November 7, 2020 the subrecipient's executive compensation must be reported by no later than December 31, 2020.

**4.  *Exemptions* -**

a.  If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i.  Subawards, and

ii.  The total compensation of the five most highly compensated executives of any **subrecipient.**

**5.  *Definitions* -**

a.  For purposes of this award term:

i.  Federal *Agency* means a Federal agency as defined at 5 U.S.C. 551(1) and further clarified by 5 U.S.C. 552(f).

ii.  Non-Federal *Entity* means all of the following, as defined in 2 CFR part 25:

A Governmental organization, which is a State, local government, or Indian tribe;

A foreign public entity;

A domestic or foreign nonprofit organization; and,

A domestic or foreign for-profit organization

iii.    *Executive* means officers, managing partners, or any other employees in management positions.

iv.    *Obligation,* when used in connection with a non-Federal entity's utilization of funds under a Federal award, means orders placed for property and services, contracts and subawards made, and similar transactions during a given period that require payment by the non-Federal entity during the same or a future period.

v.    *Subaward:*

This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

The term does not include your procurement of property and services (such as payments to a contractor, small purchase agreements, vendor agreements, and consultant agreements) that are needed for the benefit of the prime awardee to carry out the project or program (for further explanation, see 2 CFR 200.331). For example, the following are not considered subawards:

> *Cleaning Vendors:* Vendors that are hired by a grantee to clean its facility.
> *Payroll Services Vendors:* Vendors that carryout payroll functions for the grantee.
> *Information Technology Vendors:* Vendors that provide IT support to grant staff.

Payments to individuals that are beneficiaries of Federal programs are not considered subawards.

A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

v.    *Subrecipient* means a non-Federal entity or Federal agency that:

Receives a subaward from you (the recipient) under this award; and

Is accountable to you for the use of the Federal funds provided by the subaward.

In accordance with its subaward, uses the Federal funds to carry out a program for a public purpose specified in authorizing statute, as opposed to providing goods or services for the benefit of the Department prime awardee.

vii.   *Recipient* means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program. The term recipient does not include subrecipients.  See also §200.69 Non-Federal entity.

viii.   *Total compensation* means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

Salary and bonus.

Awards of stock, stock options, and stock appreciation rights.  Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

Earnings for services under non-equity incentive plans.  This does not include group life, health, hospitalization, or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

Change in pension value.  This is the change in present value of defined benefit and actuarial pension plans.

Above-market earnings on deferred compensation which is not tax-qualified.

Other compensation, if the aggregate value of all such other compensation (e.g., severance, termination payments, value of life insurance paid on behalf of the employee, perquisites, or property) for the executive exceeds $10,000.

**GAN ATTACHMENT 11**
**Revised 03/2021**

## SPECIFIC CONDITIONS FOR DISCLOSING
## FEDERAL FUNDING IN PUBLIC ANNOUNCEMENTS

When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, U.S. Department of Education grantees shall clearly state:

1) the percentage of the total costs of the program or project which will be financed with Federal money;

2) the dollar amount of Federal funds for the project or program; and

3) the percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

Recipients must comply with these conditions under Division H, Title V, Section SOS of Public Law 116-260, Consolidated Appropriations Act, 2021.

1

**GAN ATTACHMENT 12**
**Revised 03/2021**

**PROHIBITION OF TEXT MESSAGING AND EMAILING WHILE DRIVING
DURING OFFICIAL FEDERAL GRANT BUSINESS**

Federal grant recipients, sub recipients and their grant personnel are prohibited from text messaging while driving a government owned vehicle, or while driving their own privately-owned vehicle during official grant business, or from using government supplied electronic equipment to text message or email when driving.

Recipients must comply with these conditions under Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," October 1, 2009.

**REGISTRATION OF UNIQUE ENTITY IDENTIFIER (UEI) NUMBER AND TAXPAYER IDENTIFICATION NUMBER (TIN) IN THE SYSTEM FOR AWARD MANAGEMENT (SAM)**

The U.S. Department of Education (Department) Grants Management System (GS) disburses payments via the U.S. Department of Treasury (Treasury).  The U.S. Treasury requires that we include your Tax Payer Identification Number (TIN) with each payment.   Therefore, in order to do business with the Department you must have a registered Unique Entifier Identifier (UEI) and TIN number with the SAM, the U.S. Federal Government's primary registrant database.  If the payee UEI number is different than your grantee UEI number, both numbers must be registered in the SAM. Failure to do so will delay the receipt of payments from the Department.

A TIN is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS. A Social Security number (SSN) is issued by the SSA whereas all other TINs are issued by the IRS.

The following are all considered TINs according to the IRS.

- Social Security Number "SSN"
- Employer Identification Number "EIN"
- Individual Taxpayer Identification Number "ITIN"
- Taxpayer Identification Number for Pending U.S. Adoptions "ATIN"
- Preparer Taxpayer Identification Number "PTIN"

If your UEI number is not currently registered with the SAM, you can easily register by going to www.sam.gov. Please allow 3-5 business days to complete the registration process.  If you need a new TIN, please allow 2-5 weeks for your TIN to become active.  If you need assistance during the registration process, you may contact the SAM Federal Service Desk at 866-606-8220.

If you are currently registered with SAM, you may not have to make any changes.  However, please take the time to validate that the TIN associated with your UEI is correct.

If you have any questions or concerns, please contact the GS Hotline at 888-336-8930.

### SYSTEM FOR AWARD MANAGEMENT AND UNIVERSAL IDENTIFIER REQUIREMENTS

**1.   Requirement for System for Award Management (SAM)**

Unless you are exempted from this requirement under 2 CFR 25.110, you are, in accordance with your grant program's Notice Inviting Applications, required to maintain an active SAM registration with current information about your organization, including information on your immediate and highest level owner and subsidiaries, as well as on all predecessors that have been awarded a Federal contract or grant within the last three years, if applicable, at all times during which you have an active Federal award or an application or plan under consideration by a Federal awarding agency.  To remain registered in the SAM database after your initial registration, you are required to review and update your information in the SAM database on an annual basis from the date of initial registration or subsequent updates to ensure it is current, accurate and complete.

**2.   Requirement for Unique Entity Identifier (UEI) Numbers**

If you are authorized to make subawards under this award, you:

1.   Must notify potential subrecipients that they may not receive a subaward from you unless they provided their UEI number to you.
2.   May not make a subaward to a subrecipient when the subrecipient fails to provide its UEI number to you.

**3.   Definitions**

For purposes of this award term:

1.   System for Award Management (SAM) means the Federal repository into which a recipient must provide information required for the conduct of business as a recipient.  Additional information about registration procedures may be found at the SAM internet site (currently at https://www.sam.gov).

2.   Unique Entity Identifier (UEI) means the identifier assigned by SAM registration to uniquely identify business entities.

3.   Recipient means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program.  The term recipient does not include subrecipients.  See 2 CFR 200.86.

4.   Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to carry out part of a Federal award received by the pass-through entity.  It does not include payments to a contractor or payments to an individual that is a beneficiary of a Federal program.  A subaward may be provided through any form of legal agreement, including an agreement that the pass-through entity considers a contract. See 2 CFR 200.92.

5.  Subrecipient means a non-Federal entity that receives a subaward from a pass-through entity to carry out part of a Federal program; but does not include an individual that is a beneficiary of such program.  A subrecipient may also be a recipient of other Federal awards directly from a Federal awarding agency. See 2 CFR 200.93.

## PARTICIPATION OF FAITH-BASED ORGANIZATIONS

1. A faith-based organization that participates in this program retains its independence from the Government and may continue to carry out its mission consistent with religious freedom and conscience protections in Federal law.

2. A faith-based organization may not use direct Federal financial assistance from the Department to support or engage in any explicitly religious activities except when consistent with the Establishment Clause of the First Amendment and any other applicable requirements. Such an organization also may not, in providing services funded by the Department, or in outreach activities related to such services, discriminate against a program beneficiary or prospective program beneficiary on the basis of religion, a religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

3. If a grantee under a discretionary grant program of the Department has the authority under the grant to select a private organization to provide services supported by direct Federal financial assistance under the program by subgrant, contract, or other agreement, the grantee must ensure compliance with applicable Federal requirements governing contracts, grants, and other agreements with faith-based organizations, including, as applicable, (Education Department General Administrative Regulations) EDGAR §§ 75.52 and 75.532, Appendices A and B to 34 C.F.R. Part 75, and 2 C.F.R. § 3474.15 (see EDGAR§ 75.714).

**WRITTEN NOTICE OF BENEFICIARY PROTECTIONS**

In accordance with the Education Department General Administrative Regulations (EDGAR), 34 C.F.R. § 75.712, all grantees providing social services under a Department program supported by direct Federal financial assistance (e.g., programs that provide or support employment, independent living, education, or related services to individuals or groups of individuals) must give written notice to a beneficiary or prospective beneficiary of certain protections.

The written notice that an organization uses to notify beneficiaries or prospective beneficiaries of certain religious non-discrimination protections must include language substantially similar to that in Appendix C to 34 C.F.R. Part 75. Grantees have discretion regarding how to provide the notice, which may include providing the notice directly to each beneficiary, posting it on the grantee's website, or other means. A grantee or subgrantee that participates in multiple Department programs may provide a single notice covering all applicable programs. Additionally, grantees must ensure that the notice is accessible to individuals with disabilities and limited English proficient individuals as required by law. **Unless notified by the applicable program office, a grantee is not required to include in the notice the information in paragraph (5) of Appendix C to 34 C.F.R. Part 75 , i.e., the opportunity of a beneficiary to receive information about other similar providers.**

**Appendix C to 34 C.F.R. Part 75**

Name of Organization:

Name of Program:

Contact Information for Program Staff: [provide name, phone number, and email address, if appropriate]

Because this program is supported in whole or in part by financial assistance from the U.S. Department of Education, we are required to provide you the following information:

(1) We may not discriminate against you on the basis of religion, a religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice.

(2) We may not require you to attend or participate in any explicitly religious activities (including activities that involve overt religious content such as worship, religious instruction, or proselytization) that may be offered by our organization, and any participation by you in such activities must be purely voluntary.

(3) We must separate in time or location any privately funded explicitly religious activities (including activities that involve overt religious content such as worship, religious instruction, or proselytization) from activities supported with direct Federal financial assistance.

(4) You may report violations of these protection, including any denials of services or benefits by an organization, by filing a written complaint with the U.S. Department of Education at BeneficiaryNoticeComplaints@ed.gov.

[When required by the Department, the notice must also state:] (5) If you would like information about whether there are any other federally funded organizations that provide the services available under this program in your area, please contact the awarding agency.

This written notice must be given to you before you enroll in the program or receive services from the program, unless the nature of the service provided, or exigent circumstances make it impracticable to provide such notice before we provide the actual service. In such an instance, this notice must be given to you at the earliest available opportunity.

## KEY FINANCIAL MANAGEMENT REQUIREMENTS FOR DISCRETIONARY GRANTS AWARDED BY THE DEPARTMENT OF EDUCATION

The Department expects grantees to administer Department grants in accordance with generally accepted business practices, exercising prudent judgment so as to maintain proper stewardship of taxpayer dollars. This includes using fiscal control and fund accounting procedures that insure proper disbursement of and accounting for Federal funds. In addition, grantees may use grant funds only for obligations incurred during the funding period.

Title 2 ofthe Code of Federal Regulations Part 200, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards," establishes requirements for Federal awards made to non-Federal entities. The Education Department General Administrative Regulations in 34 CFR (EDGAR) 75, 76, 77, 79, 81, 82, 84, 86, 97, 98, and 99 contain additional requirements for administering discretionary grants made by this Department. The most recent version of these regulations may be accessed at the following URLs:

The Education Department General Administrative Regulations (EDGAR)

2 CFR Part 200 Uniform Administrative Requirements. Cost Principles. and Audit Requirements for Federal Awards

The information on page 2, "Selected Topics in Administering Department Discretionary Grants," highlights major administrative requirements of 2 CFR Part 200. In addition, a few of the topics discuss requirements that the Department imposes on its discretionary grantees under EDGAR, Part 75 (Direct Grants). The specific sections of 2 CFR Part 200 and of EDGAR that address the topics discussed are shown in parentheses. The Department urges grantees to read the full text of these and other topics in EDGAR and in 2 CFR Part 200.

Grantees are reminded that a particular grant might be subject to additional requirements of the authorizing statute for the program that awarded the grant and/or any regulations issued by the program office. Grantees should become familiar with those requirements as well, because program-specific requirements might differ from those in 2 CFR Part 200 and in EDGAR.

The Department recommends that the project director and the fiscal management staff of a grantee organization communicate frequently with each other about the grant budget. Doing so will help to assure that you use Federal funds only for those expenditures associated with activities that conform to the goals and objectives approved for the project.

Grantees may direct any questions regarding the topics discussed on page 2, "Selected Topics in Administering Department Discretionary Grants,"or about any other aspect of administering your grant award to the Department program staff person named in Block 3 of the Grant Award Notification.

**SELECTED TOPICS IN ADMINISTERING DEPARTMENT DISCRETIONARY GRANTS**

l.    **Financial Management Systems (2 CFR Part 200.302)**

In general, grantees are required to have financial management systems that:

* provide for accurate, current, and complete disclosure of results regarding the use of funds under grant projects;
* provide adequate source documentation for Federal and non-Federal funds used under grant projects;
* contain procedures to determine the allowability, allocability, and reasonableness of obligations and expenditures made by the grantee; and
* enable the grantee to maintain effective internal control and fund accountability procedures, e.g., requiring separation of functions so that the person who makes obligations for the grantee is not the same person who signs the checks to disburse the funds for those obligations.

State systems must account for funds in accordance with State laws and procedures that apply to the expenditure of and the accounting for a State's own funds. A State's procedures, as well as those of its subrecipients and cost-type contractors, must be sufficient to permit the preparation of reports that may be required under the award as well as provide the tracing of expenditures to a level adequate to establish that award funds have not been used in violation of any applicable statutory restrictions or prohibitions.

ll.    **Federal Payment (2 CFR Part 200.305)**

Under this part --

* the Department pays grantees in advance of their expenditures if the grantee demonstrates a willingness and ability to minimize the time between the transfer of funds to the grantee and the disbursement of the funds by the grantee;
* grantees repay to the Federal government interest earned on advances; and
* grantees, generally, must maintain advance payments of Federal awards in interest bearing accounts.

In general, grantees should make payment requests frequently, only for small amounts sufficient to meet the cash needs of the immediate future.

The Department has recently encountered situations where grantees failed to request funds until long after the grantee actually expended its own funds for the costs of its grant. Grantees need to be aware that, by law, Federal funds are available for grantees to draw down for only a limited period of time, after which the funds revert to the U.S. Treasury. In some cases grantees have requested funds too late for the Department to be able to pay the grantees for legitimate costs incurred during their project periods.

The Department urges financial managers to regularly monitor requests for payment under their grants to assure that Federal funds are drawn from the Department GS Payment System at the time those funds are needed for payments to vendors and employees.

III.    **Personnel (EDGAR§§ 75.511-75.519 and 2 CFR Part 200 Subpart D and E)**

The rules governing personnel costs are located in EDGAR Part 75 and 2 CFR Part 200 Subparts D and E.  Part 75 covers issues such as paying consultants with grant funds, prohibiting dual compensation of staff, and waiving the requirement for a full-time project director.  The rules clarifying changes in key project staff are located in 2 CFR Part 200.308 (c)(2).  General rules governing reimbursement of salaries and compensation for staff working on grant projects are addressed in the cost principles in 2 CFR Part 200 Subpart D and E.  In all cases, payments of any type to personnel must be supported by complete and accurate records of employee time and effort.  For those employees that work on multiple functions or separately funded programs or projects, the grantee must also maintain time distribution records to support the allocation of employee salaries among each function and separately funded program or project.

IV.    **Cost Principles (2 CFR Part 200 Subpart E)**

All costs incurred under any grant are subject to the cost principles found in 2 CFR Part 200 Subpart E.  The cost principles provide lists of selected items of allowable and unallowable costs, and must be used in determining the allowable costs of work performed under the grant.

V.    **Procurement Standards (2 CFR Part 200.317-327)**

Under 2 CFR Part 200.317, States are required to follow the procurement rules the States have established for purchases funded by non-Federal sources.  When procuring goods and services for a grant's purposes, all other grantees may follow their own procurement procedures, but only to the extent that those procedures meet the minimum requirements for procurement specified in the regulations.  These requirements include written competition procedures and codes of conduct for grantee staff, as well as requirements for cost and price analysis, record-keeping and contractor compliance with certain Federal laws and regulations.  These regulations also require grantees to include certain conditions in contracts and subcontracts, as mandated by the regulations and statutes.

VI.    **Indirect Costs (EDGAR §§75.560-564 and 2 CFR Part 200.414)**

In addition to the information presented beslow, see GAN ATTACHMENT 4 for addional information including restrictions related to temporary, de minimis, training, restricted, and program prescribed indirect cost rates.

A.  Unrestricted Indirect Cost Rate

To utilize an unrestricted indirect cost rate, a grantee must have an indirect cost agreement with its cognizant agency, submit an indirect cost rate proposal to its cognizant agency for indirect

costs (cognizant agency) within 90 days after the award of this grant or elect to utilize the de minimis rate under 2 CFR § 200.414(f) or the temporary indirect cost rate (subject to limitations described below).

The grantee must provide proof of its negotiated indirect cost rate agreement to the Department as soon as it has signed such an agreement with its cognizant agency.

B.  Temporary Indirect Cost Rate

A grantee that does not have a current negotiated indirect cost rate agreement may recover indirect costs at a temporary rate, which is limited to 10% of budgeted direct salaries and wages (See 34 CFR § 75.560(c)); or it may choose not to charge indirect costs to the grant. The temporary rate can only be used for 90 days unless the exceptional circumstances apply under 34 CFR § 75.560(d)(2).

Ifthe grantee has not submitted its indirect cost proposal to its cognizant agency within the 90-day period, it may no longer recover indirect costs utilizing the temporary indirect cost rate until it has negotiated an indirect cost rate agreement with its cognizant agency. Once a grantee obtains a federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

C.  De minimis Indirect Cost Rate

Institutions of Higher Education (IHEs), federally-recognized Indian Tribes, State and Local Governments[1] receiving less than $35 million in direct federal funding, and nonprofit organizations, if they do not have a current negotiated (including provisional) rate, and are not subject to the Department's training rate or restricted rate (supplement-not-supplant provisions) may elect to charge a de minimis indirect cost rate of 10% of modified total direct costs (MTDC). This rate may be used indefinitely.

MTDC consists of all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and subawards and contracts up to the first $25,000 of each subaward (i.e., subgrant). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $25,000. Other items, including contract costs in excess of $25,000, may be excluded when necessary to avoid a serious inequity in the distribution of indirect costs (see definition of MTDC at 2 CFR § 200.1).

Additionally, the de minimis rate may not be used by grantees that are subject to the Department's training indirect cost rate (34 CFR § 75.562) or restricted indirect cost rate. The de minimis rate may be used indefinitely. However, if a grantee chooses to use the de minimis rate to recover indirect costs, it must do so for all of its Federal awards until such time as the grantee negotiates an indirect cost rate with its cognizant agency. Once a grantee obtains a federally recognized indirect cost rate that is applicable to this grant, the grantee may use that indirect cost rate to claim indirect cost reimbursement.

---

[1] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.

D.   Programs with a Supplement-not-supplant requirement (restricted indirect cost rate)

A restricted program (i.e., programs with statutory supplement-not-supplant requirements) grantee must utilize a restricted indirect cost rate negotiated with its cognizant agency for indirect costs, or may elect to utilize a restricted indirect cost rate of 8% MTDC if their negotiated restricted indirect cost rate calculated under 34 CFR 75.563 and 76.564 - 76.569, is not less than 8% MTDC. A State or local government[2] that is a restricted program grantee may not elect to utilize the 8% MTDC rate. Additionally, restricted program grantees may not utilize the de minimis rate, but may utilize the temporary rate until a restricted indirect cost rate is negotiated.

E.   Training Grant Indirect Cost Rate

If the grantee is a training grant recipient and is not a State, local, or Tribal government[3], the grantee must negotiate a rate under 34 CFR 75.562. This provision limits indirect cost recovery to 8% of modified total direct costs or the grantees negotiated indirect cost rate, whichever is less.

The recovery using the training grant indirect cost rate is subject to the following limitations:

  i.    The lesser of the 8% indirect cost rate or negotiated indirect cost rate also applies to sub-awards that fund training.
  ii.   The 8% limit does not apply to agencies of Indian tribal governments, local governments, and States as defined in 2 CFR § 200.1, respectively.
  iii.  Indirect costs in excess of the 8% limit may not be charged directly, used to satisfy matching or cost-sharing requirements, or charged to another Federal award.
  iv.   A grantee using the training rate of **8% is** required to have documentation available for audit that shows that its negotiated indirect cost rate is at least 8%.

F.   Program-Specific Indirect Cost Rate

Grantees are required to follow program-specific statutory or regulatory requirements that mandate either indirect cost rate type or maximum administrative costs recovery instead of the general requirements described here.

**VII.    Audit Requirements (2 CFR Part 200 Subpart F)**

2 CFR 200 Subpart F requires that grantees that are non-Federal entities (a State, local government, Indian tribe, IHE, or nonprofit organization that carries out a Federal award as a recipient or subrecipient) obtain a non-Federal audit of their expenditures under their Federal grants if the grantee expends more than $750,000 in Federal funds in one fiscal year. 2 CFR Part 200 Subpart F contains the requirements imposed on grantees for

---

[2] Note that a State-funded institution of higher education is not considered a "State government" for these purposes.
[3] Note that a State-funded institution of higher education is not considered a "State government" for these purposes; and a Tribal college or university funded by a federally-recognized Tribe is not considered a Tribe for these purposes.

audits done in connection with the law.

The Department recommends hiring auditors who have specific experience in auditing Federal awards under the regulations and the Compliance Supplement.

## VIII.    Other Considerations

Some other topics of financial management covered in 2 CFR Part 200 that might affect particular grants include program income (2 CFR Part 200.307), cost sharing or matching (2 CFR Part 200.306), property management requirements for equipment and other capital expenditures (2 CFR Parts 200.313, 200.439).

## MEMORANDUM TO ED DISCRETIONARY GRANTEES

You are receiving this memorandum to remind you of Federal requirements, found in 2 CFR Part 200, *Uniform Administrative Requirements, Cost Principles, and Audit Requirements,* regarding cash drawdowns under your grant account.

For any cash that you draw from your Department of Education *(the* Department) grant account, you must:

• draw down only as much cash as is necessary to meet the immediate needs of the grant project;
• keep to the minimum the time between drawing down the funds and paying them out for grant activities; and
• return to the Government the interest earned on grant funds deposited in interest-bearing bank accounts except for a small amount of interest earned each year that your entity is allowed to keep to reimburse itself for administrative expenses).

In order to meet these requirements, you are urged to:

• take into account the need to coordinate the timing of drawdowns with prior internal clearances (e.g., by boards, directors, or other officials) when projecting immediate cash needs so that funds drawn down from ED do not stay in a bank account for extended periods of time while waiting for approval;
• monitor the fiscal activity (drawdowns and payments) under your grant on a continuous basis;
• plan carefully for cash flow in your grant project during the budget period and review project cash requirements before each drawdown; and
• pay out grant funds for project activities as soon as it is practical to do so after receiving cash from the Department.

Keep in mind that the Department monitors cash drawdown activity for all grants. Department staff will contact grantees who appear to have drawn down excessive amounts of cash under one or more grants during the fiscal quarter to discuss the particular situation. For the purposes of drawdown monitoring, the Department will contact grantees who have drawn down 50% or more of the grant in the first quarter, 80% or more in the second quarter, and/or 100% of the cash in the third quarter of the budget period. However, even amounts less than these thresholds could still represent excessive drawdowns for your particular grant activities in any particular quarter. Grantees determined to have drawn down excessive cash will be required to return the excess funds to the Department, along with any associated earned interest, until such time as the money is legitimately needed to pay for grant activities. If you need assistance with returning funds and interest, please contact the Department's GS Hotline by calling 1-888-336-8930.

Grantees that do not follow Federal cash management requirements and/or consistently appear on the Department's reports of excessive drawdowns could be:

• subjected to specific award conditions or designated as a "high-risk" grantee [2 CFR Part 200.208 and 2 CFR 3474.101, which could mean being placed on a "cash-reimbursement" payment method (i.e., a grantee would experience the inconvenience of having to pay for grant activities with its own money and waiting to be reimbursed by the Department afterwards);

- subject to further corrective action;
- denied selection for funding on future ED grant applications [EDGAR 75.217(dH3Hii)]; and/or
- debarred or suspended from receiving future Federal awards from any executive agency of the Federal government.

You are urged to read 2 CFR Part 200.305 to learn more about Federal requirements related to grant payments and to determine how to apply these requirements to any subgrantees. You are urged to make copies of this memorandum and share it with all affected individuals within your organization.

GAN ENCLOSURE 3
**Revised 03/2021**

## THE USE OF GRANT FUNDS FOR CONFERENCES AND MEETINGS

You are receiving this memorandum to remind you that grantees must take into account the following factors when considering the use of grant funds for conferences and meetings:

- Before deciding to use grant funds to attend or host a meeting or conference, a grantee should:
    - o Ensure that attending or hosting a conference or meeting is consistent with its approved application and is reasonable and necessary to achieve the goals and objectives of the grant;
    - o Ensure that the primary purpose of the meeting or conference is to disseminate technical information, (e.g., provide information on specific programmatic requirements, best practices in a particular field, or theoretical, empirical, or methodological advances made in a particular field; conduct training or professional development; plan/coordinate the work being done under the grant); and
    - o Consider whether there are more effective or efficient alternatives that can accomplish the desired results at a lower cost, for example, using webinars or video conferencing.
- Grantees must follow all applicable statutory and regulatory requirements in determining whether costs are reasonable and necessary, especially the Cost Principles for Federal grants set out at 2 CFR Part 200 Subpart E of the, "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards." In particular, remember that:
    - o Federal grant funds cannot be used to pay for alcoholic beverages; and
    - o Federal grant funds cannot be used to pay for entertainment, which includes costs for amusement, diversion, and social activities.
- Grant funds may be used to pay for the costs of attending a conference. Specifically, Federal grant funds may be used to pay for conference fees and travel expenses (transportation, per diem, and lodging) of grantee employees, consultants, or experts to attend a conference or meeting if those expenses are reasonable and necessary to achieve the purposes of the grant.
    - o When planning to use grant funds for attending a meeting or conference, grantees should consider how many people should attend the meeting or conference on their behalf. The number of attendees should be reasonable and necessary to accomplish the goals and objectives of the grant.
- A grantee hosting a meeting or conference may not use grant funds to pay for food for conference attendees unless doing so is necessary to accomplish legitimate meeting or conference business.
    - o A working lunch is an example of a cost for food that might be allowable under a Federal grant if attendance at the lunch is needed to ensure the full participation by conference attendees in essential discussions and speeches concerning the purpose ofthe conference and to achieve the goals and objectives of the project.
- A meeting or conference hosted by a grantee and charged to a Department grant must not be promoted as a U.S. Department of Education conference. This means that the seal of the U.S. Department of Education must not be used on conference materials or signage without Department approval.

- o All meeting or conference materials paid for with grant funds must include appropriate disclaimers, such as the following:

  > The contents of this (insert type of publication; e.g., book, report, film) were developed under a grant from the Department of Education.  However, those contents do not necessarily represent the policy ofthe Department of Education, and you should not assume endorsement by the Federal Government.

- Grantees are strongly encouraged to  contact their project officer with any questions or concerns about whether  using grant funds for a meeting or conference  is allowable prior to committing grant funds for such purposes.
  - o A short conversation could help avoid a costly and embarrassing mistake.
- Grantees are responsible for the proper use of their grant awards and may have to repay funds to the Department if they violate the rules on the use of grant funds, including the rules for meeting- and conference-related expenses.

## MEMORANDUM TO REMIND DEPARTMENT OF EDUCATION GRANTEES OF EXISTING CASH MANAGEMENT REQUIREMENTS CONCERNING PAYMENTS

The Department of Education (Department) requires that its grantees adhere to existing cash management requirements concerning payments and will ensure that their subgrantees are also aware of these policies by providing them relevant information.  A grantee's failure to  comply with cash management  requirements  may result in an improper  payment  determination  by the Department in accordance with the <u>Payment Integrity Information Act (PIIA) of 2019.</u>

There are three categories of payment requirements that apply to the drawdown of funds from grant accounts at the Department.  The first two types of payments are subject to the requirements in the Treasury Department regulations implementing the Cash Management Improvement Act (CMIA) of 1990, 31 U.S.C.6513, and the third is subject to the requirements in the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for  Federal Awards* (Uniform Guidance) at 2 CFR part 200,[1] as follows:

1.   Payments to  a State under programs that are covered by a State's Treasury State Agreement (TSA);

2.   Payments to  States under programs that are not covered by a TSA; and

3.   Payments to  other non-Federal entities, including nonprofit organizations and local governments.

### CMIA Requirements  Applicable to Programs included in **a TSA**

Generally, under the Treasury Department regulations implementing the CMIA, only major assistance programs (large-dollar programs meeting thresholds in 31 CFR § 205.5) are included in a State's written TSA. See 31 CFR § 205, subpart A.  Programs included in a TSA must use approved funding techniques and both States and the Federal government are subject to interest liabilities for late payments. State interest liabilities accrue from the day federal funds are credited to  a State account to the day the State pays out the federal funds for federal assistance program purposes. 31 CFR § 205.15.  If a State makes a payment  under  a Federal assistance program before funds for that payment  have been transferred to the State, Federal Government  interest  liabilities accrue from the date of the State payment until the Federal funds for that payment have been deposited to the State account. 31 CFR § 205.14.

### CMIA Requirements Applicable to Programs Not Included in **a TSA**

Payments to  States under programs not covered by a State's TSA are subject to  subpart B of Treasury's regulations in 31CFR § 205.  These regulations provide that a State must minimize the time between the drawdown  of funds from  the federal government  and their  disbursement  for approved  program activities.  The timing and amount of funds transfers must be kept to a minimum and be as close as is administratively feasible to  a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs. 31 CFR § 205.33(a).  States should exercise sound cash management in funds transfers to subgrantees.

---

[1] The Department adopted the Uniform Guidance as regulations of the Department at 2 CFR part 3474.

Under subpart B, neither the States nor the Department owe interest to the other for late payments. 31 CFR § 205.33(b). However, if a State or a Federal agency is consistently late in making payments, Treasury can require the program to be included in the State's TSA. 31 CFR § 205.35.

**Fund transfer requirements for grantees other than State governments and subgrantees**

The transfer of Federal program funds to grantees other than States and to subgrantees are subject to the payment and interest accrual requirements in the Uniform Guidance at 2 CFR § 200.305(b). These requirements are like those in subpart B of the Treasury Department regulations in 31 CFR part 205, requiring that "payments methods must minimize the time elapsing between the transfer of funds from the United States Treasury or the pass-through entity and the disbursement by the non-Federal entity." 2 CFR § 200.305(b) introduction.

The Federal Government and pass-through entities must make payments in advance of expenditures by grantees and subgrantees if these non-Federal entities maintain, or demonstrate the willingness to maintain, written procedures "that minimize the time elapsing between the transfer of funds and disbursement by the non-Federal entity, and financial management systems that meet the standards for fund control and accountability." 2 CFR § 200.305(b)(l). If a grantee or subgrantee cannot meet the criteria for advance payments, a Federal agency or pass-through entity can pay that entity through reimbursement. See 2 CFR § 200.305(b)(l) and (4) for more detailed description of the payment requirements and the standards for requiring that payments be made by reimbursement.

Non-Federal entities must maintain advance payments in interest bearing accounts unless certain conditions exist. See 2 CFR § 200.305(b)(8) for those conditions. The requirements regarding interest accrual and remittance follow:

Grantees and subgrantees must annually remit interest earned on federal advance payments except that interest earned amounts up to $500 per year may be retained for administrative expense. Any additional interest earned on Federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. 2 CFR § 200.305(b)(9)(i) and (ii).

1. When returning interest through ACH Direct Deposit or Fedwire, grantees must include the following in their return transaction:

   • PMS Account Number (PAN). NOTE: The PAN is the same series of alpha-numeric characters used for payment request purposes (e.g.: C1234Gl).
   • PMS document number.
   • The reason for the return (e.g., interest, part interest part other, etc.).
   • An explanation stating that the refund is for interest payable to the Department of Health and Human Services, and the grant number(s) for which the interest was earned.

   a. U.S. Department of Education grantees are generally located and operate domestically and return interest domestically. Below is PSC ACH account information for interest returned

domestically.  For international ACH interest returned, account information is available at:
Returning Funds/Interest.

- PSC ACH Routing Number is: 051036706
- PSC DFI Accounting Number: 303000
- Bank Name: Credit Gateway - ACH Receiver
- Location: St. Paul, MN

   b. Service charges may be incurred from a grantee's financial institution when a Fedwire to
       return interest is initiated.  For FedWire returns, Fedwire account information is as follows:

- Fedwire Routing Number: 021030004
- Agency Location Code (ALC): 75010501
- Bank Name: Federal Reserve Bank
- Treas NYC/Funds Transfer Division
- Location: New York, NY

2. Interest may be returned by check using only the U.S. Postal Service; however, returning
   interest via check may take 4-6 weeks for processing before a check payment may be applied to
   the appropriate PMS account.

   a. Interests returned by check are to be mailed (USPS only) to:

- HHS Program Support Center
  PO Box 979132
  St. Louis, MO 63197

A brief statement explaining the nature of the return must be included.

   b. To return interest on a grant not paid through the PMS, make the check payable to the
       Department of Health and Human Services, and include the following with the check:

- An explanation stating that the refund is for interest
- The name of the awarding agency
- The grant number(s) for which the interest was earned
- The return should be made payable to:  Department of Health and Human Services.

3. For detailed information about how to return interest, visit the PSC Retuning Funds/Interest
   page at: <u>Returning Funds/Interest</u>

Grantees, including grantees that act as pass-through entities and subgrantees have other
responsibilities regarding the use of Federal funds.  For example, all grantees and subgrantees must
have procedures for determining the allowability of costs for their awards.  We highlight the following
practices related to the oversight of subgrantee compliance with the financial management
requirements in the Uniform Guidance that will assist State grantees (pass-through entities) in meeting
their monitoring responsibilities.  Under 2 CFR § 200.332, pass-through entities must -

1. Evaluate each subrecipient's **risk** of noncompliance with Federal statutes, regulations, and the terms and conditions of the subaward for purposes of determining the appropriate subrecipient monitoring.

2. Monitor the performance and fiscal activities of the subrecipient to ensure that the subaward is used for authorized purposes, in compliance with Federal statutes, regulations, and the terms and conditions of the subaward; and that subaward performance goals are achieved.

A small number of Department grant programs have program-specific cash management and payment requirements based on the authorizing legislation or program regulations. These program-specific requirements may supplement or override general cash management or payment requirements. If you have any questions about your specific grant, please contact the Education Program Contact listed in Block 3 of your Grant Award Notification.

**RECIPIENTS OF DEPARTMENT OF EDUCATION GRANTS AND COOPERATIVE AGREEMENTS
FREQUENTLY ASKED QUESTIONS ON CASH MANAGEMENT**

**Q**     **What are the Federal Laws and Regulations Regarding Payments to the States?**

**A**     The *Cash Management Improvement Act of 1990* (CM/A) establishes interest liabilities for the Federal and State governments when the Federal Government makes payments to the States. See 31 U.S.C. 3335 and 6503. The implementing regulations are in Title 31 of the Code of Federal Regulations (CFR), Part 205, https:ljwww.ecfr.gov/cgi-bin/text-idx?tp1=/ecfrbrowsellitle31/31cfr205 main_02.tpl. Non-Federal entities other than States follow the rules on Federal payments set out in 2 CFR 200.305.

**Q**     **What is a Treasury-State Agreement (TSA)?**

**A**     A TSA documents the accepted funding techniques and methods for calculating interest agreed upon by the U.S. Department of the Treasury (Treasury) and a State. It identifies the Federal assistance programs that are subject to interest liabilities under the CMIA. The CMIA regulations specify a number of different funding techniques that may be used by a State but a State can negotiate with the Treasury Department to establish a different funding technique for a particular program. A TSA is effective until terminated and, if a state does not have a TSA, payments to the State are subject to the default techniques in the regulations that Treasury determines are appropriate.

**Q**     **What are the CMIA requirements for a program subject to a Treasury-State Agreement?**

**A**     Payments to a State under a program of the Department are subject to the interest liability requirements ofthe CMIA if the program is included in the State's Treasury-State Agreement (TSA) with the Department of Treasury. If the Federal government is late in making a payment to a State, it owes interest to the State from the time the State spent its funds to pay for expenditure until the time the Federal government deposits funds to the State's account to pay for the expenditure. Conversely, if a State is late in making a payment under a program of the Department, the State owes interest to the Federal government from the time the Federal government deposited the funds to the State's account until the State uses those funds to make a payment. For more information, GAN Enclosure 4.

**Q**     **What are the CMIA requirements for a program that is not subject to a Treasury-State Agreement?**

**A**     If a program is not included in the State's TSA, neither the State nor the Federal government are liable for interest for making late payments. However, both the Federal government and the State must minimize the time elapsing between the date the State requests funds and the date that the funds are deposited to the State's accounts. The State is also required to minimize the time elapsed between the date it receives funds from the Federal government and the date it makes a payment under the program, Also, the Department must minimize the amount of funds transferred to a State to only that needed to meet the immediate cash needs of the State. The timing and amount of funds transferred must be as close as is administratively feasible to a State's actual cash outlay for direct program costs and the proportionate share of any allowable indirect costs.

**Q**     **What if there is no TSA?**

**A**  When a State does not have a TSA in effect, default procedures in 31 CFR, part 205 that the Treasury Department determines appropriate apply.  The default procedures will prescribe efficient funds transfer procedures consistent with State and Federal law and identify the covered Federal assistance programs and designated funding techniques.

**Q**  **Who is responsible for Cash Management?**
**A**  Grantees and subgrantees that receive grant funds under programs of the Department are responsible  for maintaining internal controls regarding the management  of Federal program funds under the Uniform Guidance in 2 CFR 200.302 and 200.303.  In addition, grantees are responsible for ensuring that subgrantees are aware of the cash management and requirements in 2 CFR part 200, subpart D.

**Q**  **Who is responsible for monitoring cash drawdowns to ensure compliance with cash management policies?**
**A**  Recipients must monitor their own cash drawdowns **and** those of their subrecipients to assure substantial compliance to the standards of timing and amount of advances.

**Q**  **How soon may I draw down funds from the GS grants management  system?**
**A**  Grantees are required to  minimize the amount  of time between the drawdown and the expenditure of funds from their bank accounts.  (See 2 CFR 200.305(b).)  Funds must be drawn only to meet a grantee's immediate cash needs for each individual grant.  The GS screen displays the following message:

**By submitting this payment request, I certify to the best of my knowledge and belief that the request is based on true, complete, and accurate information. I further certify that the expenditures and disbursements made with these funds are for the purposes and objectives set forth in the applicable Federal award or program participation agreement, and that the organization on behalf of which this submission is being made is and will remain in compliance with the terms and conditions of that award or program participation agreement. I am aware that the provision of any false, fictitious, or fraudulent information, or the omission of any material fact, may subject me, and the organization on behalf of which this submission is being made, to criminal, civil, or administrative penalties for fraud, false statements, false claims, or other violations. (U.S. Code Title 18, Section 1001; Title 20, Section 1097; and Title 31, Sections 3729-3730 and 3801-3812}**

**Q**  **How may I use Federal funds?**
**A**  Federal funds must be used as specified in the Grant Award Notification (GAN) and the approved application  or State plan for allowable direct costs of  the grant and an allocable portion of indirect costs, if authorized.

**Q**  **What are the consequences to recipients/subrecipients for not complying with terms of the grant award?**
**A**  If  a recipient or subrecipient  materially fails to  comply with any term of an award, whether stated in a Federal statute or regulation, including those in 2 CFR part 200, an assurance, the GAN, or elsewhere, the awarding agency may in accordance with 2 CFR 200.339 take one or more of the following actions:

1. Temporarily withhold cash payments pending correction of the deficiency by the non-Federal entity or more severe enforcement action by the Federal awarding agency or pass-through entity.
2. Disallow (that is, deny both use of funds and any applicable matching credit for) all or part of the cost of the activity not in compliance.
3. Wholly or partly suspend or terminate the Federal award.
4. Initiate suspension or debarment proceedings as authorized under 2 CFR part 180 and Federal award agency regulations (or in the case of a pass-through be initiated by a Federal awarding agency).
5. Withhold further Federal awards for the project or program.
6. Take other remedies that may be legally available.

**Q**  **Who is responsible for determining the amount of interest owed to the Federal government?**

**A**  As set forth in 31 CFR 205.9, the method used to calculate and document interest liabilities is included in the State's TSA. A non-State entity must maintain advances of Federal funds in interest-bearing accounts unless certain limited circumstance apply and remit interest earned on those funds to the Department of Health and Human Services, Payment Management System annually. See 2 CFR 200.305.

**Q**  **What information should accompany my interest payment?**

**A**  In accordance with 2 CFR 200.305(b)(9), interest in access of $500.00 earned on Federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment.

For returning interest on Federal awards paid through PMS, the refund should:
(a) Provide an explanation stating that the refund is for interest;
(b) List the PMS Payee Account Number(s) (PANs);
(c) List the Federal award number(s) for which the interest was earned; and
(d) Make returns payable to: Department of Health and Human Services.

For returning interest on Federal awards not paid through PMS, the refund should:
(a) Provide an explanation stating that the refund is for interest;
(b) Include the name of the awarding agency;
(c) List the Federal award number(s) for which the interest was earned; and
(d) Make returns payable to: Department of Health and Human Services.

For additional information about returning interest see GAN ATTACHMENT 4.

**Q**  **Are grant recipients/subrecipients automatically permitted to draw funds in advance of the time they need to disburse funds in order to liquidate obligations?**

**A**  The payment requirements in 2 CFR 200.305(b) authorize a grantee or subgrantee to request funds in advance of expenditures if certain conditions are met. However, if those conditions are not met, the Department and a pass-through agency may place a payee on reimbursement.

GAN ATTACHMENT 5
Revised 03/2021

**Q**    **For formula grant programs such as ESEA Title** I, **for which States distribute funds to LEAs, may States choose to pay LEAs on a reimbursement basis?**

**A**     A subgrantee must be paid in advance if it meets the standards for advance payments in 2 CFR 200.305(b)(l)  but if the subgrantee cannot meet those standards, the State may put the subgrantee on reimbursement  payment.  See 2 CFR 200.305(b).


**Q**    **Will the Department issue special procedures** in **advance if GS plans to shut down for 3 days or more?**

**A**    Yes, before any shutdown of GS lasting three days or more, the Department issues special guidance for drawing down funds during the shut down.  The guidance will include cash management improvement act procedures for States and certain State institutions of higher education and procedures for grants (including Pell grants) that are not subject to CMIA.

EXHIBIT B

S336S240026
Jennifer Oloff-Lewis
Chico State Enterprises
400 W. First Street
Chico, CA 95929

S336S240026

Mary Sidney
Chico State Enterprises
25 Main St., Suite 103
Chico, CA 95928

S336S240026

**US  Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

| 1 RECIPIENT NAME | 2 AWARD INFORMATION |
|---|---|
| Chico State Enterprises<br>25 Main St., Suite 103<br>Chico, CA 95928 | PR/AWARD NUMBER    S336S240026<br>ACTION NUMBER    3<br>ACTION TYPE    Administrative<br>AWARD TYPE    Discretionary |

| 3 PROJECT STAFF | ,4 PROJECT TITLE |
|---|---|
| RECIPIENT PROJECT DIRECTOR<br>Jennifer Oloff-Lewis    (530) 898-5184<br>joloff-<br>lewis@csuchico.edu<br>EDUCATION PROGRAM CONTACT<br>Louis Edwards    (202) 453-6778<br>LOUIS.EDWARDS@ED.GOV<br>EDUCATION PAYMENT HOTLINE<br>G5 PAYEE HELPDESK    888-336-8930<br>obssed@servicenowservices.com | 84.336S<br>The Belong, Engage, Support, Transform (BEST) Project |

**5 KEY PERSONNEL**

| NAME | TITLE | LEVEL OF EFFORT |
|---|---|---|
| Jennifer Oloff-Lewis | Project Director | 0% |

**6 AWARD PERIODS**

BUDGET PERIOD    10101/2024 - 0211212025
PERFORMANCE  PERIOD    10101/2024 - 0211212025

FUTURE BUDGET PERIODS

*NIA*

**7 AUTHORIZED FUNDING**

| THIS ACTION | *NIA* |
|---|---|
| BUDGET PERIOD | $1,997,037.00 |
| PERFORMANCE PERIOD | $1,997,037.00 |

**8 ADMINISTRATIVE INFORMATION**

| UEI | C4VMQLSU1LF4 |
|---|---|
| REGULATIONS | EDGAR AS APPLICABLE<br>2 CFR AS APPLICABLE |
| ATTACHMENTS | *NIA* |

**g LEGISLATIVE AND FISCAL DATA**

| AUTHORITY: | PL P.L. 110-315 TITLE II HIGHER EDUCATION ACT, AS AMENDED |
|---|---|
| PROGRAM TITLE: | TEACHER QUALITY ENHANCEMENT GRANTS FOR STATE AND PAR1NERSH1PS |
| CFDA/SUBPROGRAM NO: | 84.336S |

S336S240026



**US Department of Education**
**Washington, D.C. 20202**

# GRANT AWARD NOTIFICATION

**10**

| | |
|---|---|
| PR/AWARD NUMBER: | S336S240026 |
| RECIPIENT NAME: | Chico State Enterprises |
| GRANTEE NAME: | CHICO STATE ENTERPRISES |
| | 25 MAIN ST UNIT 203, |
| | CHICO, CA 95928 - 5388 |
| PROGRAM INDIRECT COST TYPE: | Restricted |
| PROJECT INDIRECT COST RATE: | 8% |

TERMS AND CONDITIONS

(1)  THE BUDGET PERIOD AND PERFORMANCE PERIOD FOR IBIS PROJECT ARE CHANGED TO THE
DATES IN BLOCK 6. NO ADDITIONAL  FUNDS ARE PROVIDED BY THIS ACTION.

(2)  The grant is deemed to be inconsistent with, and no longer effectuates, Department priorities. See 2 C.F.R. 200.340(a)
(4); see also 34 C.F.R. 75.253.

# TINA WOOD

Digitally signed by TINA WOOD
Date: 2025.02.12 09:58:12 -05'00'

**AUTHORIZING OFFICIAL**                                    **DATE**

Ver.1

# EXPLANATION OF BLOCKS ON THE GRANT AWARD NOTIFICATION

**For Discretionary, Formula and Block Grants**    (See Block 2 of the Notification)

**1. RECIPIENT NAME** - The legal name of the recipient or name of the primary organizational unit that was identified in the application, state plan or other documents required to be submitted for funding by the grant program.

**2. AWARD INFORMATION** -  Unique items of information that identify this notification.

   **PR/AWARD NUMBER-**  A unique, identifying number assigned by the Department to each application. On funded applications, this is commonly known as the "grant numbe • or "document number." The PR/Award Number is also known as the Federal Award Identifying Number, or FAIN.

   **ACTION NUMBER** -  A numeral that represents the cumulative number of steps taken by the Department to date to establish or modify the award through fiscal or administrative means. Action number "01" will always be "NEW AWARD"

   **ACTION TYPE** -  The nature of this notification (e.g., NEW AWARD, CONTINUATION, REVISION, ADMINISTRATIVE)

   **AWARD TYPE** -   The particular assistance category in which funding for this award is provided, i.e., DISCRETIONARY, FORMULA, or BLOCK. If this award was made under a Research and Development grant program, the terms RESEARCH AND DEVELOPMENT will appear under DISCRETIONARY, FORMULA OR BLOCK.

**3. PROJECT STAFF** -  This block contains the names and telephone numbers of the U.S. Department of Education and recipient staff who are responsible for project direction and oversight.

   **\*RECIPIENT PROJECT DIRECTOR** -  The recipient staff person responsible for administering the project. This person represents the recipient to the U.S. Department of Education.

   **EDUCATION PROGRAM CONTACT** -  The U.S. Department of Education staff person responsible for the programmatic, administrative and businessmanagement concerns of the Department.

   **EDUCATION PAYMENT CONTACT** -   The U.S. Department of Education staff person responsible for payments or questions concerning electronic drawdown and financial expenditure reporting.

**4. PROJECT TITLE AND CFDA NUMBER** -  Identifies the Catalog of Federal Domestic Assistance (CFDA) subprogram title and the associated subprogram number.

**5. \* KEY PERSONNEL** - Name, title and percentage (%) of effort the key personnel identified devotes to the project.

**6. AWARD PERIODS** -   Project activities and funding are approved with respect to three different time periods, described below:

   **BUDGET PERIOD** -  A specific interval of time for which Federal funds are being provided from a particular fiscal year to fund a recipient's approved activities and budget. The start and end dates of the budget period are shown.

   **PERFORMANCE PERIOD** -  The complete length of time the recipient is proposed to be funded to complete approved activities. A performance period may contain one or more budget periods.

   **\*FUTURE BUDGET PERIODS** -  The estimated remaining budget periods for multi-year projects and estimated funds the Department proposes it will award the recipient provided substantial progress is made by the recipient in completing approved activities, the Department determines that continuing the project would be in the best interest of the Government, Congress appropriates sufficient funds under the program, and the recipient has submitted a performance report that provides the most current performance information and the status of budget expenditures.

**7. AUTHORIZED FUNDING** -  The dollar figures in this block refer to the Federal funds provided to a recipient during the award periods.

   **\*THIS ACTION** - The amount of funds obligated (added) or de-obligated (subtracted) by this notification.

   **\*BUDGET PERIOD** - The total amount of funds available for use by the grantee during the stated budget period to this date.

   **\*PERFORMANCE PERIOD** - The amount of funds obligated from the start date of the first budget period to this date.

   **RECIPIENT COST SHARE** -   The funds, expressed as a percentage, that the recipient is required to contribute to the project, as defined by the program legislation or regulations and/or terms and conditions of the award.

   **RECIPIENT NON-FEDERAL AMOUNT** - The amount of non-federal funds the recipient must contribute to the project as identified in the recipient's application. When non-federal funds are identified by the recipient where a cost share is not a legislation requirement, the recipient will be required to provide the non-federal funds.

**8. ADMINISTRATIVE INFORMATION** -   This information is provided to assist the recipient in completing the approved activities and managing the project in accordance with U.S. Department of Education procedures and regulations.

   **UEI** -       The UEI, issued in SAM.gov, is a unique 12 character organization identifier assigned to each recipient for payment purposes.

**\*REGULATIONS** -   Title 2 of the Code of Federal Regulations(CFR), Part 200 as adopted at 2 CFR 3474; the applicable parts of the Education Department General Administrative Regulations (EDGAR), specific program regulations (if any), and other titles of the CFR that govern the award and administration of this grant.

**\*ATTACHMENTS** -   Additional sections of the Grant Award Notification that discuss payment and reporting requirements, explain Department procedures, and add special terms and conditions in addition to those established, and shown as clauses, in Block 10 of the award. Any attachments provided with a notification continue in effect through the project period until modified or rescinded by the Authorizing Official.

**9. LEGISLATIVE AND FISCAL DATA** -   The name of the authorizing legislation for this grant, the CFDA title of the program through which funding is provided, and U.S. Department of Education fiscal information.

**FUND CODE, FUNDING YEAR, AWARD YEAR, ORG.CODE, PROJECT CODE, OBJECT CLASS** - The fiscal information recorded by the U.S. Department of Education's Grants Management System (GS) to track obligations by award.

**AMOUNT** -   The amount of funds provided from a particular appropriation and project code. Some notifications authorize more than one amount from separate appropriations and/or project codes. The total of all amounts in this block equals the amount shown on the line, "THIS ACTION" (See "AUTHORIZED FUNDING" above (Block 7)).

**10. TERMS AND CONDITIONS** -   Requirements of the award that are binding on the recipient.

**\*PARTICIPANT NUMBER** -   The number of eligible participants the grantee is required to serve during the budget year.

**\*GRANTEE NAME** -   The entity name and address registered in the System for Award Management (SAM). This name and address is tied to the UEI registered in SAM under the name and address appearing in this field. This name, address and the associated UEI is what is displayed in the SAM Public Search.

**\*PROGRAM INDIRECT COST TYPE** -   The type of indirect cost permitted under the program (i.e. Restricted, Unrestricted, or Training).

**\*PROJECT INDIRECT COST RATE** -   The indirect cost rate applicable to this grant.

**\*AUTHORIZING OFFICIAL** -   The U.S. Department of Education official authorized to award Federal funds to the recipient, establish or change the terms and conditions of the award, and authorize modifications to the award

**FOR FORMULA AND BLOCK GRANTS ONLY:**
**(See also Blocks 1, 2, 4, 6, 8, 9 and 10 above)**
**3. PROJECT STAFF** -  The U.S. Department of Education staff persons to be contacted for programmatic and payment questions.

**7. AUTHORIZED FUNDING**

**CURRENT AWARD AMOUNT** -   The amount of funds that are obligated (added) or de-obligated (subtracted) by this action.

**PREVIOUS CUMULATIVE AMOUNT** -   The total amount of funds awarded under the grant before this action.

**CUMULATIVE AMOUNT** -   The total amount of funds awarded under the grant, this action included.

**10. AFFILIATE** -  If an affiliate digital signature appears on this GAN, it is the digital signature belonging to the individual delegated the authority to affix the Authorizing Official's signature to the GAN.

\* This item differs or does not appear on formula and block grants.

EXHIBIT C



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SECONDARY AND ELEMENTARY EDUCATION
OFFICE OF ADMINISTRATION

Jennifer Oloff-Lewis
Project Director
CHICO STATE ENTERPRISES
400 W. First Street
Chico, CA 95929

RE: Grant Award Termination

Dear Jennifer Oloff-Lewis

This letter provides notice that the United States Department of Education is terminating your federal award, S336S240026_____. *See* 2 C.F.R. § 200.340-43; *see also* 34 C.F.R. § 75.253.

It is a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States. The Acting Secretary of Education has determined that, per the Department's obligations to the constitutional and statutory law of the United States, this priority includes ensuring that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ("DEI") initiatives or any other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic. Illegal DEI policies and practices can violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education. In addition to complying with the civil rights laws, it is vital that the Department assess whether all grant payments are free from fraud, abuse, and duplication, as well as to assess whether current grants are in the best interests of the United States.

The grant specified above provides funding for programs that promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; that violate either the letter or purpose of Federal civil rights law; that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States. The grant is therefore inconsistent with, and no longer effectuates, Department priorities. *See* 2 C.F.R. § 200.340(a)(4); *see also* 34 C.F.R. § 75.253. Therefore, pursuant to, among other authorities, 2 C.F.R. § 200.339-43, 34 C.F.R. § 75.253, and the termination provisions in your grant award, the Department hereby terminates grant No. S336S240026_____ in its entirety effective 2/12/25_____.

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

If you wish to object to or challenge this termination decision, you must submit information and documentation supporting your position in writing within 30 calendar days of the date of this termination notice. Objections and challenges must be sent by email and first-class mail and addressed to the component head that oversees the grantmaking unit, which will typically be the Assistant Secretary of that unit. In this case, please address your objection or challenge to Ruth Ryder, Acting Assistant Secretary; Office of Elementary and Secondary Education; 400 Maryland Ave., SW; Washington, D.C. 20202; ruth.ryder@ed.gov.

Your appeal should contain the following:
1. a copy of the written notice of termination;
2. the date you received written notice of termination;
3. a brief statement of your argument and the disputed factual, legal, or other issues;
4. the amount of funds or costs in dispute, if any; and
5. any other relevant documents.

*See id.* § 200.342.

Costs incurred by you after this termination are allowable only if (a) those costs were properly incurred by you before the effective date of this termination, and not in anticipation of it; and (b) those costs would be allowable if your federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect. *See* 2 C.F.R. § 200.343. You are encouraged to carefully review and discharge your closeout responsibilities set forth in 2 C.F.R. § 200.344-45 and your award agreement. Those responsibilities include, but are not limited to, your obligation to "promptly refund any unobligated funds" that have been paid out but "are not authorized to be retained." *See* 2 C.F.R. § 200.344(g). Failure to do so will result in the Department filing a report documenting your "material failure to comply with the terms and conditions of" this award on SAM.gov and taking any other appropriate enforcement actions. *See id.* § 200.344(i).

Finally, you are reminded of your duties under your agreement and Department of Education guidance regarding retention of grant records for at least three years.

Respectfully,

MARK
WASHINGTON    Digitally signed by MARK
WASHINGTON
Date: 2025.02.12
13:23:51 -05'00'

Deputy Assistant Secretary for Management and Planning

cc: Ruth Ryder

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*