IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. DEP'T OF EDUCATION, *et al.*, <br><br> *Defendants.* | Civil Action No. 25-10548-MJJ |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL**

  Defendants respectfully seek an emergency stay pending appeal of the Court's ruling of March 10. The Court ordered Defendants to rescind, within 24 hours, the terminations of grants worth hundreds of millions of dollars. Defendants have done so, in compliance with the order. But taking that step means grantees can draw down the remaining grant funds immediately—and once those funds are taken and spent, Defendants will have little to no recourse to recover them, even if they prevail in this litigation. And, respectfully, Defendants are very likely to prevail. Beyond the jurisdictional and legal arguments that Defendants presented orally, this Court's order is premised on a basic and demonstrable factual error. While the Court believed that the terminations at issue were determined without individualized consideration, the reality is that each grant was reviewed on its own terms, and the Secretary and her senior staff engaged in grant-by-grant consideration that resulted in termination of most—but not all—of the current grants under the relevant programs. That fact undercuts the premise of the Court's Administrative Procedure Act (APA) holding, which was the sole ground for the finding that Plaintiffs were likely to succeed on the merits.

1

In short, after waiting weeks before filing suit, Plaintiffs induced the Court to issue a highly expedited ruling, without the benefit of a written response from the government, and that ruling rests on a core factual error (in addition to other errors of law). Yet, by virtue of that ruling, grantees now have immediate access to tens of millions of dollars to spend on grants that the Secretary of Education has determined are at war with her policy goals and priorities. Under these circumstances, the Court should stay its ruling pending appeal, and allow for these important issues to be aired and adjudicated in a more orderly fashion.

## BACKGROUND

Plaintiff States (California, Massachusetts, New Jersey, Colorado, Illinois, Maryland, New York, and Wisconsin) filed suit against Secretary of Education Linda McMahon and former Acting Secretary of Education Denise Carter, in their official capacities, and the U.S. Department of Education ("Department"). Plaintiffs allege that, starting on February 7, 2025, the Department unlawfully terminated grants awarded under the Teacher Quality Partnership ("TQP") Program and Supporting Effective Educator Development ("SEED") Grant Program in violation of the APA.

On the same day they filed their Complaint, Plaintiffs moved for a temporary restraining order, ECF 2. The Court did not invite Defendants to submit a response but instead set a hearing for March 10, 2025, and granted relief later that day, ordering Defendants to undo the termination of any previously-awarded grants for recipients located in the Plaintiff States, and to refrain from terminating those grants or suspending or withholding any funds under the grants. ECF 41.

Defendants have complied, as indicated in last night's status report, but also have appealed the Court's order and are requesting an emergency stay pending appeal from the First Circuit. Defendants now also respectfully move the Court to stay its TRO order pending appeal. *See* Fed. R. App. Proc. 8(a).

## ARGUMENT

This Court should stay its order because Defendants are likely to succeed on appeal and will face irreparable harm absent a stay—whereas a short delay in accessing grant funds will not irreparably harm Plaintiffs, who waited approximately a month before bothering to sue. "[T]he factors regulating the issuance of a stay are . . . (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Here, each of the factors favor a stay.

**A. Likelihood of Success on the Merits.** This Court's order concluded that Plaintiffs were likely to succeed in the APA claims because the terminations did not reflect sufficiently individualized consideration. But even setting aside all of the legal hurdles to those claims, the factual premise is simply false. The Department of Education conducted a particularized review of TQP and SEED grants; as part of that review, over the course of a week, seven personnel "reviewed applications to determine whether they included objectionable material associated with DEI, such as cultural responsiveness, systemic privilege, racial justice, social justice, and anti-racism." Oglesby Decl. ¶¶ 6-9. Consistent with its broad authority to determine whether an "award no longer effectuates the program goals or agency priorities" (2 C.F.R. § 200.340), the "Department determined that the programs at issue here incorporated DEI, reviewed the terms and conditions of the grants at issue to ensure they permitted termination, and concluded that funding for these grants must cease based on the Acting Secretary's Directive." Oglesby Decl. ¶ 19. The Department is empowered to determine how to allocate the funds that Congress appropriated for these programs, and the Department permissibly determined—on an individualized basis—that the terminated grants were not consistent with its policy goals.

The Court's assertion that the Department's review was categorical is thus incorrect. Had the Government been afforded more time to respond to Plaintiffs' motion—again, a motion they filed weeks after the grants were terminated—then it would have submitted this information. With these facts now in the record, however, it is impossible to deny that Defendants are likely to prevail on appeal.

And again, that is taking the Court's reasoning on its own terms. There are also, respectfully, significant errors in the APA framework and analysis.

*First*, it was fundamental error to subject the Department's termination decisions to arbitrary-and-capricious review at all, because such decisions are committed to agency discretion by law and constrained only by the terms of the operative statutes, regulations, and funding instruments.

In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded, and to instead reallocate those funds to other programs, was committed to agency discretion by law and thus not reviewable under the APA's reasoned decisionmaking standards. *See id*. at 185-88. The "allocation of funds" is an "administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id*. at 192. Such an allocation, "requires 'a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program 'at all.'" *Id*. at 193. So long as the agency abides by the relevant statutes (and whatever obligations it may impose on itself through regulation or the relevant grant instrument), the APA "gives the courts no leave to intrude." *Id*.

4

*Lincoln* itself addressed lump-sum appropriations, but courts agree that its logic extends to funding programs that leave to the agency "the decision about how the moneys" for a particular program "could best be distributed consistent with" the statute. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). Such decisions, too, "clearly require[] a complicate balancing of a number of factors which are peculiarly within [the agency's] expertise." *Id.* at 752; *see also Policy & Res., LLC v. U.S. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018).

The programs at issue in this case confer on the Secretary significant discretion in determining how best to allocate appropriated funds across grant applicants to best advance the purposes of the programs. The statute governing TQP grants provides simply that "the Secretary is authorized to award grants, on a competitive basis, to eligible partnerships, to enable the eligible partnerships to carry out" certain activities, including "a program for the preparation of teachers," a "teaching residency program," and "a leadership development program." 20 U.S.C. § 1022a(a), (c). Similarly, the SEED grant statute generally directs the Secretary to "award grants, on a competitive basis, to eligible entities for" five specified "purposes," such as "providing evidence-based professional development activities" and "making freely available services and learning opportunity to local educational agencies." 20 U.S.C. § 6672(a). Nothing about those statutory directions constrains the Secretary's discretion to determine how best to allocate the funding for each program among many different potential grant recipients.

As a result, the Secretary's decision to terminate a grant to an individual recipient is reviewable—at most—only for compliance with the terms of the governing statutes, regulations, and funding instruments—not APA reasoned decision-making requirements. Yet this Court's order did not cite any other law (statutes, regulations, or grant terms) that would call these terminations into question; it was based *solely* on the supposed lack of reasoned decision-making under the APA. That was error.

5

*Second*, the APA framework was also inapposite because a contract suit like this could only properly be brought in the Court of Federal Claims under the Tucker Act, which is the exclusive remedy for certain breach-of-contract actions against the government. In holding otherwise, the Court failed to grapple with the relevant principles. The Court held that the "essence" of Plaintiffs' lawsuit is "not contractual in nature," citing *Massachusetts v. Nat'l Institutes of Health (NIH)*, No. 25-cv-10338, 2025 WL 702163 (D. Mass. Mar. 5, 2025), which challenged changes in NIH guidance for certain cost reimbursements. But *NIH* dealt with the lawfulness of *agency guidance* and sought to *vacate it*; Plaintiffs here challenge a series of *individual grant terminations* and, although they cast their claim for relief in equitable terms, at base what Plaintiffs demand is *access to money*. Whatever may have been true of *NIH*, this is a breach-of-contract claim masquerading as an APA suit. If Plaintiffs believe the government has violated terms of their grants, they may have a remedy, but it is not an APA suit in district court. *See, e.g.,* 28 U.S.C. § 1491(a) ("United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States.").

*Third*, even if the APA did apply, the Court erred by finding that Plaintiffs were likely to succeed on their claims. The standard for arbitrary and capricious action is high. To survive review, the agency's explanation need only be sufficient such that its "path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). *See also Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). That standard is readily satisfied here. After an individualized evaluation of TQP and SEED grants, the Department determined which grants were not in the best interests of the United States and used a template response to communicate its position. All of the grants it identified for termination

6

shared a common characteristic, so the Department appropriately used a common response. This is not arbitrary and capricious; it is efficient and sensible.

The Court also faulted the government for its significant change in views on the merits of these grants. But new administrations always have new policy objectives. The Acting Secretary issued a public Directive on Department Grant Priorities on February 5, 2025. Oglesby Decl. ¶ 5. There were no secrets here. Anyone paying attention would know that the Department was no longer interested in using grant programs to fund DEI education. The Department's review followed the Acting Secretary's Directive, and the termination letters cited the Department's new priorities going forward. *Id.* ¶¶ 22-23. The explanation was transparent and reasonable, not obscure or irrational.

*Finally*, even setting aside all of the above, the Court's order—issued mere days after the lawsuit was filed—was dramatically overbroad. If the Court's concern stemmed from the lack of individual consideration or sufficient explanation, it should have remanded to the agency for additional consideration, nor ordered the restoration of terminated grants.

**Balance of Equities.** The balance of equities tips decisively in Defendants' favor, for one simple reason. This case is about money. If the status quo is preserved and the money is held by Defendants during the pendency of the case, the grantees can still obtain and use it at the end of the case. But the opposite is not true—if the grantees are given access now, and draw down the funds, Defendants will be left with no meaningful recourse even if they prevail in the litigation. Grant funds go out to recipients within 1-3 days of being requested. Oglesby Decl. ¶ 30. Once that occurs, the Department lacks reliable ways to recoup it. *Id.* ¶ 36. And by virtue of this Court's order, the grantees have the incentive to draw down and spend as much of the remaining $65 million as quickly as possible. That perverse outcome reinforces that the balance of the equities favors a true "freeze" of the status quo—meaning the

7

Department continues to hold the funds pending the litigation. (Defendants are willing to stipulate not to re-obligate the funds to other uses in the meantime.)

As a result of the Court's order, the Executive Branch is not able to exercise its authorities to superintend federal dollars—and, indeed, has no ability to control the use of federal dollars for purposes that the Executive Branch opposes. The Court's assertion that the government would suffer no harm because it was only spending money Congress appropriated ignores the Department's discretion to choose *how to allocate* those funds. Congress did not pick the grantees; the prior Administration did. The new Administration is entitled to the same prerogatives.

At minimum, the Court should have imposed a bond requirement to safeguard the funds in the event that the Department prevails on appeal. *See* Fed. R. Civ. Proc. 65(c). The Court erred in failing to do so.

*    *    *

For these reasons, the Court should grant a stay of its order pending resolution of Defendants' appeal.

Dated: March 12, 2025                              Respectfully submitted,

                                                                  LEAH B. FOLEY
United States Attorney

/s/ *Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
*Assistant U.S. Attorney*
U.S. Department of Justice
U.S. Attorney's Office for the District of Massachusetts
John Joseph Moakley
United States Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                            */s/ Michael L. Fitzgerald*
                                            MICHAEL L. FITZGERALD
                                            Assistant U.S. Attorney

Dated:  March 12, 2025