UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION, et al.,<br><br>               Defendants. | Civil Action No. 25-10548-MJJ<br><br>**Leave to File Excess Pages<br>Granted on May 9, 2025** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER TO THE COURT OF FEDERAL CLAIMS**

## I.    INTRODUCTION

This lawsuit concerns the Department of Education's terminations of grants that provided federal funding for teacher-training programs.    Plaintiffs claim that the terms of the grant agreements precluded the Department from terminating the awards in these circumstances.    And they claim that they "now face the loss of tens of millions of dollars in funding."  Doc. No. 1 at 40.    Accordingly, Plaintiffs seek an order enjoining the withholding of funds, reinstating the agreements, and requiring the Department to continue performing the agreements according to their terms—that is, to continue paying money under the grants.    No matter how styled, this is fundamentally a lawsuit for breach of contract seeking quintessential contract remedies.    The federal district courts, however, lack jurisdiction over lawsuits that are founded upon contracts with the United States and that exceed $10,000 in value.    The Tucker Act vests exclusive jurisdiction over such lawsuits in the United States Court of Federal Claims.

Plaintiffs insist that they can proceed in district court under the Administrative Procedure Act (APA).    While the Tucker Act gives the Court of Federal Claims jurisdiction over claims against the United States seeking monetary relief, the APA enables district courts to hear certain claims "seeking relief other than money damages."  5 U.S.C. § 702.    In *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the Supreme Court interpreted the phrase "money damages" to include only compensation for a loss—not specific relief to enforce a statute requiring the payment of money. Here, Plaintiffs purport to disavow any claim for money damages, observing that their complaint prays for only declaratory and injunctive relief.    Thus, Plaintiffs reason that they may rely upon the APA—not the Tucker Act—to sue the Department and its officials in this case.

The Supreme Court, however, recently deemed that position unlikely to succeed.    The Court acknowledged that an APA claim "is not barred by the possibility" that the requested relief

1

"may result in the disbursement of funds." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (citing *Bowen*, 487 U.S. at 910). But it emphasized that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" Plaintiffs request here. *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The Court therefore found that "the Government is likely to succeed in showing" that this Court "lack[s] jurisdiction" over this case. *Id.*

Even if Plaintiffs sought specific performance—as opposed to money damages—their theory of jurisdiction would still fail. In addition to the carveout for claims seeking money damages, the APA does not apply where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. There is no dispute that the Tucker Act grants consent to suit based on a contract. And it is black-letter law that the statute impliedly forbids ordering specific performance against the United States. Plaintiffs therefore may not circumvent that limitation by seeking specific performance under the APA.

In any event, Section 704 of the APA independently precludes this Court from exercising jurisdiction. Section 704 forecloses APA review when a judgment in another court would provide an "adequate remedy." 5 U.S.C. § 704. Here, Plaintiffs assert that the Department has wrongly withheld money owed to their educational institutions under binding grant agreements. A judgment by the Court of Federal Claims awarding the withheld funds would thus adequately remedy their claimed injuries. And, to the extent that Plaintiffs could obtain equitable relief other than specific performance, the Court of Federal Claims retains authority to issue such relief incidental and subordinate to a money judgment.

The Court should therefore dismiss this case for lack of subject-matter jurisdiction. Alternatively, the Court should transfer the action to the Court of Federal Claims.

## II.    BACKGROUND

### A.  Legal Background

Congress granted the Department of Education broad authority to operate the two grant programs at issue here, which relate to the preparation and professional development of schoolteachers.  *First*, the Teacher Quality Partnership (TQP) program provides that "the Secretary is authorized to award grants, on a competitive basis, to eligible partnerships, to enable the eligible partnerships to carry out" certain activities, including "a program for the preparation of teachers," "a teaching residency program," and "a leadership development program."  20 U.S.C. §§ 1022a(a) and (c); *see* 20 U.S.C. § 1022a(b) (requiring applications to be submitted "to the Secretary at such time, in such manner, and accompanied by such information as the Secretary may require").  *Second*, the Supporting Effective Educator Development (SEED) program generally directs the Secretary to "award grants, on a competitive basis, to eligible entities for" five broad "purposes," such as "providing evidence-based professional development activities" or "making freely available services and learning opportunities to local educational agencies."  20 U.S.C. § 6672(a).

### B.  Factual Background

Plaintiffs are the States of California, Colorado, Illinois, Maryland, Massachusetts, New Jersey, New York, and Wisconsin.  Doc. No. 1 at 2.  According to the complaint, "various organizations" operating in the Plaintiff States—public and private universities as well as nonprofit entities—received TQP and SEED grants from the Department exceeding $250 million.  *Id.* at 17. For example, UMass Amherst received a five-year TQP grant in 2023 for $2.3 million, and Chico State Enterprises (a nonprofit corporation in California) received a three-year SEED grant in 2022 for $4.5 million.  *Id.* at 17, 20; Doc. No. 8-5 at 13.  These grants consisted of awards issued each fiscal year pursuant to written agreements, which included signed documents binding both the

grant recipient and the Department "to the terms and conditions of the grant."  Doc. No. 1 at 26-27.  Plaintiffs further allege that "[t]he terms and conditions set forth" in the grant agreements "incorporate[d] the Office of Management Budget (OMB) Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance)," contained in Part 200 of Title 2 of the Code of Federal Regulations.  *Id.* at 28.

On February 5, 2025, then-Acting Secretary Denise Carter issued a directive entitled "Eliminating Discrimination and Fraud in Department Grant Awards."  *Id.* at 32.  This directive stated that "[i]t remains a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States."  *Id.* at 33.  Thus, the directive "instruct[ed] Department personnel to review all new and ongoing grants . . . to ensure they 'do not fund discriminatory practices—including in the form of DEI—that are either contrary to law or to the Department's policy objectives, as well as to ensure that all grants are free from fraud, abuse, and duplication.'"  *Id.*  Plaintiffs allege that the Department then "moved quickly to implement the Department Directive."  *Id.*  Beginning around February 7, 2025, TQP and SEED grant recipients in the Plaintiff States began to receive termination letters from the Department informing them that their awards were being terminated.  *Id.* at 34.s

The termination letters affirmed that "[i]t is a priority of the Department of Education to eliminate discrimination in all forms of education throughout the United States," and that "this priority includes ensuring that the Department's grants do not support programs or organizations that promote or take part in [DEI] initiatives or any other initiatives that unlawfully discriminate on the basis of [a protected characteristic]."  *Id.*  The letters explained that "[i]llegal DEI policies and practices can violate both the letter and purpose of Federal civil rights law and conflict with the Department's policy of prioritizing merit, fairness, and excellence in education."  *Id.* at 34-35.

And the letters stated that "it is vital that the Department assess whether all grant payments are free from fraud, abuse, and duplication, as well as to assess whether current grants are in the best interests of the United States." *Id.* at 35.

The letters then explained that the recipient's grant provided funding for programs that "promote or take part in DEI initiatives or other initiatives that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic"; " violate either the letter or purpose of Federal civil rights law"; "conflict with the Department's policy of prioritizing merit, fairness, and excellence in education"; "are not free from fraud, abuse, or duplication"; "or . . . otherwise fail to serve the best interests of the United States." *Id.* Each terminated grant, the letters explained, was therefore "inconsistent with, and no longer effectuates, Department priorities." *Id.* The letters invoked the Department's regulatory authority to terminate grants that "no longer effectuate[] the program goals or agency priorities," 2 C.F.R. § 200.340(a)(4)—a regulation that Plaintiffs concede was "incorporate[d]" in "[t]he terms and conditions" of the grant agreements. Doc. No. 1 at 28, 35.

### C. Procedural History

On March 6, 2025, Plaintiffs filed this lawsuit against the Department of Education, the Secretary of Education, and the former Acting Secretary of Education. Doc. No. 1 at 8-9. The complaint asserts two claims under the APA. *See id.* at 46-51. *First*, Plaintiffs claim that the terminations were arbitrary and capricious because the Department did not, among other things, "provide a transparent and reasonable explanation for the termination of the grants." *Id.* at 47. *Second*, Plaintiffs claim that the terminations were "not in accordance with law"—i.e., "2 C.F.R. § 200.340." *Id.* at 49. Plaintiffs claim that this regulation "only authorizes termination 'pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if an

award no longer effectuates the program goals or agency priorities.'" *Id.* at 50.  However, according to Plaintiffs, "[n]o term or condition for any TQP or SEED grant award authorize[d] termination for failure to effectuate agency priorities." *Id.*

Plaintiffs claim that they suffer harm "from the withholding of federal grants with a total value of at least $250 million." *Id.* at 6; *see also id.* at 40 ("Through the termination of these programs, the States now face the loss of tens of millions of dollars in funding.").  Plaintiffs therefore ask the Court to vacate and set aside the terminations; declare that Defendants violated the APA; restore the grant recipients to their pre-termination status; enjoin the Department from withholding funds under the grant agreements; and enjoin the Department from terminating the grants moving forward, except as consistent with relevant laws, regulations, the terms and conditions of the grant agreements, and this Court's orders. *Id.* at 51-52.

The same day that Plaintiffs filed the complaint, they also filed a motion for a temporary restraining order.  Doc. No. 2.  The Court held a hearing on March 10, 2025 and issued an order granting Plaintiffs' motion that evening.  Doc. No. 41.  The Court disagreed with the government's argument that this matter is a contract dispute that belongs in the Court of Federal Claims because "the source of the plaintiffs' rights [is] in federal statute and regulations and because the relief [sought is] injunctive in nature." *Id.* at 2.  The Court's order required Defendants to restore the grant recipients in the Plaintiff States to their pre-termination status, enjoined Defendants from withholding grant funds from those recipients, and prohibited Defendants from terminating those grant agreements, except as "consistent with the Congressional authorization and appropriations, relevant federal statute, including the requirements of the APA, the requirements of the relevant implementing regulations, the grant terms and conditions, and this Court's order." *Id.* at 9-10.

Defendants appealed this order to the First Circuit and sought a stay pending appeal. The First Circuit denied the stay motion. *California v. U.S. Dep't of Educ.*, 132 F.4th 92 (1st Cir. 2025). In evaluating the government's jurisdictional argument, the First Circuit reasoned that Plaintiffs' framing of their case as an APA action made it cognizable under the APA, rather than the Tucker Act. *Id.* at 97. The First Circuit stated that "the States challenge the Department's actions as insufficiently explained, insufficiently reasoned, and otherwise contrary to law -- arguments derived from the [APA]," and that, therefore, their claims were properly characterized as "assertions that the Department acted in violation of federal law -- not its contracts." *Id.* The First Circuit conceded that this Court's March 10 order "require[d] the Department to continue making payments that would otherwise be due but for the terminations." *Id.* at 100. But, quoting *Bowen*, it observed that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* at 97. Therefore, the First Circuit saw "no jurisdictional bar" to the Court's March 10 order. *Id.*

Defendants then asked the Supreme Court to vacate this Court's order. On April 4, 2025, the Supreme Court construed the application as seeking a stay pending appeal and granted the application. *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) (per curiam). Relevant here, the Court found that "the Government is likely to succeed in showing the District Court lack[s] jurisdiction to order the payment of money under the APA" because the APA's waiver of immunity does not apply (i) to claims for money damages, or (ii) where another statute forbids the relief which is sought. *Id.* at 968. Citing *Bowen*, the Court acknowledged that an APA claim "'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Id.* Still, the Court found that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of

what" Plaintiffs request here. *Id.* (citing *Great-West*, 534 U.S. at 212). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (citing 28 U.S.C. § 1491(a)(1)).

## III.  LEGAL STANDARD

A district court should dismiss claims under Rule 12(b)(1) when it lacks subject-matter jurisdiction to decide them. That includes where, as here, the federal government has not waived its sovereign immunity for the types of claims at issue. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature"). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). "A plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted). Moreover, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).

## IV.  ARGUMENT

### A.  The Court should dismiss this case for lack of subject-matter jurisdiction.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). To sue a federal agency and its officials, a plaintiff must therefore identify an express waiver in the text of a federal law and show that its claim falls within the waiver's scope. *See FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text"). In this case, Plaintiffs seek to rely on the limited waiver of sovereign immunity contained in the APA. This waiver, however, remains subject to several important carveouts and conditions relevant here. *First*, the

waiver does not apply to claims seeking "money damages." 5 U.S.C. § 702. *Second*, the waiver does not apply where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* *Third*, the waiver does not apply to claims for which another court could provide an "adequate remedy." 5 U.S.C. § 704.

### 1. The Court lacks jurisdiction because Plaintiffs seek money damages.

As an initial matter, the fact that the complaint prays for only declaratory and injunctive relief "does not decide the issue" of whether an action, at its core, seeks money damages. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79 (D.C. Cir. 1985); *see also Bowen*, 487 U.S. at 916 (Scalia, J., dissenting) ("district court jurisdiction is not established merely because a suit fails to pray for a money judgment"). A plaintiff may not avoid the APA's carve-out for money damages by "couch[ing] [its] claims in the language of equitable and declaratory relief," when the alleged injury "is pecuniary in nature and at bottom what [it] seeks is monetary relief based on . . . a contract." *Diaz v. Johnson*, No. 19-1501, 2020 WL 9437887, at *2 (1st Cir. Nov. 12, 2020). To determine whether an action seeks money damages, courts must instead look to the substance of the complaint, "irrespective of how it is packaged." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989); *see also Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 361 (5th Cir. 1987) ("one of the few clearly established principles is that the substance of the pleadings must prevail over their form").

The substance of Plaintiffs' allegations makes clear that they seek money damages. "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.

9

204, 210 (2002) (citation omitted).  More specifically, "[a] claim for money due and owing under

a contract is 'quintessentially an action at law.'"  *Id.* (citation omitted).

Here, Plaintiffs allege that the Department has withheld *money* due and owing to their

educational institutions under binding grant agreements.  The entire basis for their lawsuit is "the

loss of tens of millions of dollars in funding" pursuant to those grants.  Doc. No. 1 at 40.  As a

result, Plaintiffs seek to compel the Department to release this money to compensate for the loss

of funding resulting from its allegedly wrongful termination of the grant agreements.  *See id.* at

51-52 (seeking an order enjoining Defendants from "withholding . . . any funds approved and

obligated for the grants").  Therefore, "it seems clear that the injur[ies] [Plaintiffs are] alleging

[are] pecuniary in nature and at bottom what [they] seek[] is monetary relief."  *Diaz*, 2020 WL

9437887, at *2.  Plaintiffs' requests for declaratory and injunctive remedies do not change the

essential character of this action, where those requests "are merely a means to the end of satisfying

a claim for the recovery of money."  *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999);

*see Crowley Gov't Servs., Inc. v. General Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022)

("we have cautioned plaintiffs that this court prohibits the creative drafting of complaints . . . to

avoid the jurisdictional consequences of the Tucker Act" (cleaned up)).

The Supreme Court's decision in *Bowen v. Massachusetts* does not alter this conclusion.

There, Massachusetts sued the Secretary of Health and Human Services to enforce a provision of

the Medicaid Act that required the payment of certain amounts to participating states.  487 U.S. at

887.  Massachusetts provided services to mentally challenged individuals that involved training

by State Department of Education employees, but the Secretary determined that the Medicaid

program only covered such services if provided by State Department of Mental Health employees.

*Id.* at 886.  The Secretary therefore "disallowed" the expenditures for these services and refused

to provide reimbursement for them. *Id.* at 887. Massachusetts then sued in district court under the APA, seeking injunctive relief requiring the Secretary to reimburse the disputed expenditures. *Id.*

The Supreme Court held that the APA's waiver of immunity applied because the lawsuit was an action seeking relief other than money damages. *Id.* at 893. In so doing, the Court defined the term "money damages" as compensation for a loss—as opposed to specific relief enforcing a statutory mandate moving forward. *Id.* at 895. The Court held that "[t]he State's suit to enforce § 1396b(a) of the Medicaid Act . . . [was] not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay," but, rather, "a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900.

*Bowen* is therefore distinguishable from this action, which seeks an order requiring the payment of money withheld and allegedly owed under *grant agreements*. "*Bowen* has no bearing on the unavailability of an injunction to enforce a contractual obligation to pay money past due." *Great-West*, 534 U.S. at 212. Again, "[a] claim for money due and owing under a contract is 'quintessentially an action at law.'" *Id.* at 210 (citation omitted). Thus, courts "have consistently read *Bowen* to reinforce the jurisdictional role of the Court of Federal Claims in resolving *contract disputes* outside the complex Medicaid arena." *Brighton Village Associates v. United States*, 52 F.3d 1056, 1059 n.3 (Fed. Cir. 1995) (emphasis added); *see also Coggeshall*, 884 F.2d at 5 ("*Bowen* was not an action for breach of contract").

Moreover, in *Bowen*, the Supreme Court explained that setting aside the Secretary's disallowance decision would not "properly [be] characterized as an award of 'damages'" because disallowance decisions under the Medicaid statute involve "an adjustment—and, indeed, usually a relatively minor one—in the size of the federal grant" paid on an "open account" in quarterly installments. 487 U.S. at 893. Thus, the requested relief in *Bowen* sought "an injunction to correct

the method of calculating payments going forward." *Great-West*, 534 U.S. at 212. Here, by contrast, Plaintiffs do not seek to *adjust the method* by which the Department disburses payments moving forward; rather, they seek to *reinstate* the grant agreements, and thereby secure the payments that would have otherwise been due but for the allegedly wrongful terminations.

The distinction between a claim properly seeking compensation for money owed (to which the APA does not apply), and a claim properly seeking to enjoin the nonpayment of money owed under a statute (to which the APA might apply), may be difficult to discern in some cases. But helpfully, the Supreme Court recently examined *this very case* and concluded that the APA likely does not apply. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam). The Supreme Court analyzed the precise question presented by this motion—whether "[t]he APA's waiver of sovereign immunity" applies. *Id.* It cited *Bowen* and acknowledged Plaintiffs' primary counterargument—i.e., that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Id.* And it nonetheless determined that the APA's waiver of immunity "does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" Plaintiffs seek here. *Id.* (citing *Great-West*, 534 U.S. at 212).[1]

Although the Supreme Court's decision to grant a stay does not bind this Court's decision on a motion to dismiss/transfer, its analysis and preliminary assessment command significant deference and should weigh heavily in the government's favor. Indeed, nothing has changed since

---

[1] The Supreme Court found that this Court likely lacked jurisdiction to order relief "along the lines of what" this Court granted in its March 10, 2025 order. *California*, 145 S. Ct. at 968. The substance of that temporary relief effectively mirrored the permanent relief requested in Plaintiffs' complaint. *Compare* Doc. No. 1 at 51-52, *with* Doc. No. 41 at 9-10. Accordingly, the Supreme Court's jurisdictional analysis applies equally to this motion to dismiss.

the Supreme Court's decision that would warrant a different conclusion. The Court should therefore dismiss this action for lack of jurisdiction.

### 2. Even if Plaintiffs sought relief other than money damages, the Court would still lack jurisdiction.

In addition to excluding claims for money damages, the APA's waiver of immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (citing 5 U.S.C. § 702). This carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

There is no dispute that another statute—the Tucker Act—grants consent to suits founded upon contracts with the United States. 28 U.S.C. § 1491(a)(1). And it has long been accepted that the Tucker Act authorizes the Court of Federal Claims "only to award damages, not specific relief," such as specific performance of a contract. *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962). Indeed, no court has "the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall*, 884 F.2d at 3. The D.C. Circuit has observed that it "know[s] of no case in which a court has asserted jurisdiction either to grant a declaration that the United States was in breach of its contractual obligations or to issue an injunction compelling the United States to fulfill its contractual obligations." *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986).

Notably, Congress added the limited waiver of sovereign immunity to the APA in 1976. Pub. L. 94-574, 90 Stat. 2721, 2721 (1976). And the legislative history to this amendment confirms that it was not intended to undo the Tucker Act's implied prohibition on granting specific performance:

[T]he amendment to 5 U.S.C. section 702 is not intended to permit suit in circumstances where statutes forbid or limit the relief sought . . . For example, in the [Tucker Act], Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. *The measure is intended to foreclose specific performance of government contracts*. In the terms of the proviso, a statute granting consent to suit, *i.e.,* the Tucker Act, "impliedly forbids" relief other than the remedy provided by the Act. Thus, the partial abolition of sovereign immunity brought about by this bill *does not change existing limitations on specific relief*, if any, derived from statutes dealing with such matters as government contracts.

H.R. Rep. No. 94-1656, at 12-13 (1976) (emphasis added).

Therefore, as the First Circuit has explained, "[t]he APA cannot be used to obtain indirectly the injunctive or declaratory relief the Court of Claims could not provide directly." *American Science & Engineering, Inc. v. Califano*, 571 F.2d 58, 63 n.6 (1st Cir. 1978). Put another way, even where a plaintiff's requested relief can be characterized as "equitable" and "[does] not constitute 'money damages,'" the APA's waiver of sovereign immunity still "does not apply to claims sounding in contract." *Burgos v. Milton*, 709 F.2d 1, 3 (1st Cir. 1983).

The longstanding prohibition on ordering specific performance against the United States derives from the separation of powers. The rule prevents the Judiciary from requiring the Executive "to expend funds for work it no longer believes to be in the nation's interests," and thereby "preserv[es] majoritarian policymaking." Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 Vand. L. Rev. 1529, 1566 (1992). "[T]o lock the government into a contract would" impermissibly "tie its hands" when a new Administration may understandably and properly have "different political priorities" than a previous one. *Id.* at 1566-1567. This case implicates precisely that concern, as the new Administration has determined that the grant agreements at issue "fail to serve the best interests of the United States." Doc. No. 1 at 35. Plaintiffs have argued that their DEI activities have "nothing to do with . . . the best interests of the United States." March 28,

2025, Hr'g Tr. at 11. But, respectfully, it is neither Plaintiffs' nor this Court's role to make that determination.

To be sure, whether the Tucker Act impliedly forbids granting specific performance turns on whether the action sounds in contract. In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act, courts have looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Here, both the source of the rights asserted and the type of relief sought confirm that Plaintiffs' lawsuit sounds in contract.

### a. The sources of Plaintiffs' asserted rights are the grant agreements.

The sources of Plaintiffs' purported rights to payment in this case are the grant agreements in question, which bear all the hallmarks of a contract. *See Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many . . . federal grant programs" are "much in the nature of a contract") (citation and internal quotation marks omitted); *see also Columbus Regional Hosp v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("we have followed our predecessor court in treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound"). Indeed, Plaintiffs have never disputed that their TQP and SEED grant awards have the essential characteristics of contracts. When the government implements grants by "employ[ing] contracts to set the terms of and receive commitments from recipients," the grants are properly treated as contracts for purposes of jurisdiction in the Court of Federal Claims. *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see, e.g.*, *Henke v. United States Dep't of Commerce*, 83 F.3d 1445, 1450-1451 (D.C. Cir. 1996) (federal grant had the "essential elements of a contract").

15

The sole source of the rights that could conceivably result in the release of withheld funds and specific performance of the grant agreements are, of course, *the grant agreements*. Plaintiffs claim that grantees are entitled to funds under the grant agreements, and they allege (among other things) that "the terms and conditions of the TQP and SEED grant awards do not authorize termination on the grounds" cited by the Department. Doc. No. 1 at 5. Plaintiffs thus demand that grantees receive funds that they claim should be disbursed under these grant agreements. *See id.* at 50-51. Plaintiffs would have no claim at all without having alleged a breach of the grant agreements by the government.

Plaintiffs have identified three other potential sources of their asserted rights, but none of them can change the fact that the essence of this action sounds in contract and is monetary in nature.

*First*, Plaintiffs have pointed to the APA. But the APA "does not declare self-actualizing substantive rights," rather, it "merely provide[s] a vehicle for enforcing rights which are declared elsewhere." *American Waterways Operators v. United States Coast Guard*, 613 F. Supp. 3d 475, 486 (D. Mass. 2020) (citing *Perales v. Casillas*, 903 F.2d 1043, 1050 n.4 (5th Cir. 1990)); *see also, e.g.*, *Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998) ("The APA is merely a procedural vehicle for review of agency action; it does not confer a substantive right to be free from arbitrary agency action."); *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) ("Section 702 does not create substantive rights."). Therefore, Plaintiffs "cannot manufacture an APA claim by asking the court to declare that" the cessation of payments in this case "was an arbitrary or capricious act." *Diaz*, 2020 WL 9437887, at *2. Plaintiffs' alleged rights come from the *grant agreements*, making the Tucker Act the exclusive jurisdictional basis for their claims.

To conclude otherwise would allow any Tucker Act claim to be converted into an APA claim simply by arguing that the agency's reasons for allegedly breaching a contract were arbitrary and capricious.  "It is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA." *Megapulse*, 672 F.2d at 967 n.34 (brackets and citation omitted); *see United States Conference of Catholic Bishops v. U.S. Dep't of State*, 25-cv-00465, 2025 WL 763738, at *7 (D.D.C. Mar. 11, 2025) ("Sure, the Conference seeks to set aside agency action.  But the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with the Conference.").  As the First Circuit has explained, where "the essence of the action is in contract," the "plaintiff cannot 'by the mystique of a different form of complaint' make it otherwise." *American Science*, 571 F.2d at 63 (citation omitted).

Although flawed and abrogated in relevant part by the Supreme Court's decision in this case, the First Circuit's decision denying a stay pending appeal helps illustrate the point.  There, the First Circuit reasoned that "if the Department breached any contract, it did so by violating the APA," and that, "if the Department did not violate the APA, then it breached no contract." *California v. U.S. Dep't of Education*, 132 F.4th 92, 97 (1st Cir. 2025).  Thus, under the First Circuit's own reasoning, Plaintiffs' lawsuit is not "based on truly independent legal grounds." *Megapulse*, 672 F.2d at 970.  Instead, it is one "sounding genuinely in contract." *Id.* at 969.  Put another way, disagreement over whether the Department has "acted arbitrarily" cannot "be resolved without reference to the [grant agreements]." *American Science*, 571 F.2d at 61. Therefore "exclusive jurisdiction [lies] in the Court of [Federal] Claims." *Id.*

*Second*, Plaintiffs claim that the terminations were "[n]ot in [a]ccordance with [l]aw"— namely, "2 C.F.R. § 200.340."  Doc. No. 1 at 49.  Plaintiffs claim that this regulation "only

authorizes termination "pursuant to the terms and conditions of the federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." *Id.* at 50 (citing § 200.340(a)(4)). However, according to Plaintiffs, "[n]o term or condition for any TQP or SEED grant award authorizes termination for failure to effectuate agency priorities." *Id.* Defendants contend that the terms and conditions of the grant awards *did* authorize termination in these circumstances. Therefore, "[t]he question presented by the complaint could be phrased as whether the [grant agreements] forbid[] termination under these conditions." *Ingersoll-Rand*, 780 F.2d at 78. Because compliance with 2 C.F.R. § 200.340 turns on compliance with the terms and conditions of the grant agreements, any supposed rights under the regulation do not "exist independently" of the grant agreements. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985).

Moreover, even if one construed 2 C.F.R. § 200.340 to impose procedural requirements on the government separate and apart from the terms of the grant agreements, that still would not alter the essentially contractual nature of this action. That is because, even if 2 C.F.R. § 200.340 "impose[d] procedural requirements on the government having some impact on the [grant agreements]," the regulation "in no way creates the substantive right to the remedy" that Plaintiffs seek. *Spectrum Leasing*, 764 F.2d at 894. Nothing in 2 C.F.R. § 200.340 suggests that a violation would entitle grant recipients to the reinstatement of their grants and the consequent release of withheld funds. At bottom, where a plaintiff "essentially argu[es] that the government violated its bargain with [the plaintiff]," the lawsuit "clearly falls within the category of cases covered by the Tucker Act and outside the scope of section 702." *Burgos*, 709 F.2d at 3. "That the termination[s] also arguably violate[d] certain other regulations does not transform the action into one based

solely on those regulations." *Ingersoll-Rand*, 780 F.2d at 78. "Nor does [Plaintiffs'] decision to" allege a regulatory violation "change the essential character of the action." *Id.*

Tellingly, the plaintiff in *American Science* similarly argued that its lawsuit was "not an action arising on a contract," but rather a dispute over "an agency action '*ultra vires*' of its authority, in violation of [the agency's] regulations and due process of law." 571 F.2d at 61. The First Circuit nonetheless found it "clear" that the action was "essentially a contract dispute." *Id.* That was because "[t]he focus of the complaint" was the allegedly wrongful "abrogation" of a license agreement between the plaintiff and the Department of Health, Education and Welfare. *Id.* Although the plaintiff "invoked" federal regulations and the Due Process Clause as bases for its action, "resolution of those claims was peripheral to the core determination of whether a breach of contract had occurred." *Id.* The plaintiff's requested relief—"enforcement of the agreements or monetary damages"—underscored the essentially contractual nature of the dispute. *Id.*

Here, too, the focus—indeed, the entire object—of Plaintiffs' complaint is the allegedly wrongful "abrogation" of the grant agreements between the Department and the grant recipients. And although Plaintiffs likewise "invoke[]" a federal regulation, resolution of that allegation turns entirely on whether the Department breached the terms of the grant agreements.

*Third*, Plaintiffs purport to rely on the statutes authorizing the TQP and SEED grant programs—namely, the Higher Education Opportunity Act (authorizing the TQP program) and the Every Student Succeeds Act (authorizing the SEED program). But those statutes identify goals and criteria for the Department's consideration in awarding grants to eligible applicants. Neither regulates the Department's decisions to *terminate* grant agreements – understandably, since without the ability to terminate for grantee misconduct or to reflect democratic changes in Administration priorities, one Administration could bind future Administrations to policies and

19

priorities extending well past the term of an Administration. Thus, neither law affords grant recipients any rights to reinstatement of the grants, the release of withheld funds, or the continued performance of the grant agreements. It is thus "problematic" to suggest that the source of Plaintiffs' claimed rights are the statutes authorizing the TQP and SEED programs where those statutes "cannot possibly provide the relief sought." *A & S Council Oil Co. v. Lader*, 56 F.3d 234, 240 (D.C. Cir. 1995). And any argument that the Department's termination decisions were arbitrary and capricious because of perceived inconsistencies with the goals set forth in the TQP and SEED enabling statutes is simply an argument under the APA, which, again does not provide the source of Plaintiffs' asserted rights. *See* pp. 16-17, *supra*.

### b. Plaintiffs seek contractual remedies.

The remedies that Plaintiffs request further underscore the contractual nature of this dispute. As described above, this case is properly characterized as one for a money judgment because "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages.'" *Great-West*, 534 U.S. at 210 (citation omitted). Notwithstanding the equitable labels employed, Plaintiffs' requests for relief "are merely a means to the end of satisfying a claim for the recovery of money." *Blue Fox*, 525 U.S. at 262. Moreover, "[i]rrespective of the terminology employed," the judgment that Plaintiffs seek would "in reality compel[]" the Department "to perform the subject contract[s], restrain[] it from rescinding the award of the contract[s], and require[] it to pay out money . . . in the performance of the contract[s]." *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1225–26 (5th Cir. 1976). Thus, Plaintiffs' requested remedies are clearly *contractual* in nature and subject to the Tucker Act's limitations on relief.

*First*, Plaintiffs seek an order "restor[ing] recipients in Plaintiff States to the pre-existing status quo prior to the termination"—that is, an order reinstating the grant agreements.  Doc. No. 1 at 51-52; *see* Doc. No. 41 at 2 (acknowledging that Plaintiffs seek "reinstatement of the TQP and SEED grants").  In these circumstances, a request for "an order reinstating the original award of [a] contract" simply "amount[s] to a request for specific performance" of the contract.  *Ingersoll-Rand*, 780 F.2d at 80.  *Second*, Plaintiffs seek an order enjoining Defendants from "withholding . . . any funds approved and obligated for the grants."  Doc. No. 1 at 51-52.  Such an order would be no different from a standard damages award in a contract case directing the payment of money ("funds") owed ("approved and obligated") under a contract ("the grants").  *Third*, Plaintiffs seek an order enjoining Defendants from terminating the grants moving forward, except as permitted by relevant laws, regulations, the grant agreements, and any orders of this Court.  But, again, an injunction directing that "the government may either perform or terminate so long as it acts in consonance with applicable regulations" merely "amounts to a request for specific performance."  *Ingersoll-Rand*, 780 F.2d at 80.

Plaintiffs' prayer for relief also asks the Court to "vacate and set aside Defendants' termination of all previously-awarded TQP and SEED grants" and to "issue a judicial declaration" that the termination "was an unlawful act that violated the APA."  Doc. No. 1 at 51.  Yet, even if a vacatur/set aside constituted a "remedy" authorized by the APA, it would only be available if the APA applied.  Likewise, even if the Court could issue a declaration that Defendants "violated the APA"—as opposed to a substantive legal right—that remedy would only be available if the APA applied.  Allowing Plaintiffs to proceed under the APA because they seek such remedies would be no different than allowing them to proceed under the APA because they have invoked the APA.

Congress chose to limit the relief available for contractual claims against the federal government to money judgments. Plaintiffs cannot circumvent that choice. The sources of Plaintiffs' asserted rights are the grant agreements, and the relief that they seek is contractual. The Tucker Act thus impliedly forbids Plaintiffs from bringing suit under the APA, and the Court should dismiss this case for lack of subject-matter jurisdiction.

### 3. In any event, the Court lacks jurisdiction because Plaintiffs have an adequate remedy in the Court of Federal Claims.

This Court also lacks jurisdiction over Plaintiffs' complaint because a money judgment in the Court of Federal Claims would provide an adequate remedy for the injuries of which Plaintiffs complain. The APA provides for judicial review only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. "In other words, a claimant with an alternative adequate remedy in another court, such as the Court of Federal Claims, cannot seek review of agency action in a district court under the APA." *Consolidated Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1383 (Fed. Cir. 2001).

As the First Circuit has explained, "review by the Court of Claims [under the Tucker Act] has consistently been held to provide an adequate remedy for an alleged breach of contract by a federal agency." *American Science*, 571 F.2d at 62; *see also Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005) ("The availability of an action for money damages under the Tucker Act . . . is presumptively an 'adequate remedy' for § 704 purposes."). That general observation holds true here. The crux of Plaintiffs' claim is that the Department has withheld money owed to their educational institutions under binding grant agreements, allegedly in contravention of the terms of those agreements. Thus, a breach-of-contract award in the Court of Federal Claims awarding Plaintiffs those withheld funds would provide Plaintiffs with an adequate remedy in this case. *See Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1117

(Fed. Cir. 2007) (finding that adequate relief was available in Court of Federal Claims where "[t]he relief sought was to require the Government to perform its contract obligations so that [the plaintiff] could get the money allegedly due it under [an] insurance agreement").

True, Plaintiffs could not obtain specific relief in the Court of Federal Claims directing the Department to reinstate and continue performing the grant agreements.  But *no court* could award Plaintiffs that relief.  *See Coggeshall*, 884 F.2d at 3 ("Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations.").  Therefore, the fact "[t]hat the Court of Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *American Science*, 571 F.2d at 62.

Finally, even if Plaintiffs sought some form of equitable relief other than specific performance, the Court of Federal Claims could grant it as relief incidental and subordinate to a money judgment.  *See* 28 U.S.C. § 1491(a)(2) ("In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."); *Stephanatos v. United States*, 81 Fed. Cl. 440, 445 (2008), *aff'd*, 306 F. App'x 560 (Fed. Cir. 2009) (explaining that the Court of Federal Claims may "grant equitable relief" when "it is tied and subordinate to a money judgment").

### B.  In the alternative, the Court should transfer this action to the Court of Federal Claims.

28 U.S.C. § 1631 provides that when a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action" to any court in which the case could have been filed.  Here, there is a want of jurisdiction for all the reasons discussed.  And, where "it is found that the case is one which . . . belongs in the [Court of Federal Claims]," it is in the interest of justice to transfer the action to that court. *Roman v. Velarde*, 428 F.2d 129, 133 (1st Cir. 1970); *see Burgos*, 709 F.2d at 3 ("It is evident that the transfer of this case to the Claims

Court is in the interest of justice."). Therefore, if the Court does not dismiss this case for lack of jurisdiction, it should transfer the matter to the Court of Federal Claims.

## V.    CONCLUSION

The Court should dismiss this action for lack of subject-matter jurisdiction. Alternatively, the Court should transfer this action to the Court of Federal Claims.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated:  May 12, 2025                    By:    */s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3266
michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney

Dated:  May 12, 2025