# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEW JERSEY; STATE OF COLORADO; STATE OF ILLINOIS; STATE OF MARYLAND; STATE OF NEW YORK; and STATE OF WISCONSIN,<br><br>                                   Plaintiffs,<br><br>         *v.*<br><br>U.S. DEPARTMENT OF EDUCATION; DENISE CARTER, in her official capacity as former Acting Secretary of Education and current acting Chief Operating Officer, Federal Student Aid; LINDA MCMAHON, in her official capacity as Secretary of Education,<br><br>                                 Defendants. | Case No. 1:25-cv-10548-AK<br><br>**Leave to File Excess Pages Granted on June 6, 2025** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

Introduction ......................................................................................................... 1

Background ......................................................................................................... 3

    A.     The TQP and SEED Grant Programs Require Various Diversity, Equity, and Inclusion Initiatives by Law ......................................... 3

    B.     Defendants' February 5, 2025 Directive and Termination of TQP and SEED Grant Programs .......................................................... 5

    C.     Plaintiffs' Claims and Relief Sought ............................................ 6

Legal Standard ................................................................................................... 8

Argument ........................................................................................................... 8

    I.     This Court Has Jurisdiction over Plaintiffs' Claims ........................... 8

        A.     This Case Does Not Sound In Contract ....................................... 9

            1.     Plaintiffs' Claims Are Founded on Statutory, Regulatory, and Constitutional Provisions ............................ 10

            2.     Plaintiffs Seek Specific Relief, Not Contract Remedies .............. 17

            3.     The Court Need Not Determine Whether The Grant Agreements Are Contracts ........................................... 21

        B.     The Court of Federal Claims Does Not Provide Plaintiffs An Adequate Remedy ................................................................... 22

        C.     Defendants' Dispute with Plaintiffs' Non-APA Claims are Unavailing ................................................................................. 25

    II.     The Court Should Not Transfer Plaintiffs' Case to the Court of Federal Claims ............................................................................... 29

Conclusion ....................................................................................................... 29

# TABLE OF AUTHORITIES

**Page**

CASES

*A & S Council Oil Co., Inc. v. Lader*
56 F.3d 234 (D.C. Cir. 1995) ............................................................... 12

*Aids Vaccine Advoc. Coal. v. United States Dep't of State*
770 F. Supp. 3d 121 (D.D.C. Mar. 10, 2025) ................................... 3, 17

*Alicea v. Machete Music*
744 F.3d 773 (1st Cir. 2014) ............................................................... 29

*Am. Bar Ass'n v. U.S. Dep't of Just.*
No. 25-CV-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025) ................................... 3

*Am. Pub. Health Ass'n v. NIH*
Nos. 25-1611, 25-1612, 2025 WL 2017106 (1st Cir. July 18, 2025) ...................................... 3

*Amer. Cntr. For Int'l Labor Solidarity v. Sec'y Lori Chavez-DeRemer*
No. CV 25-1128 (BAH), 2025 WL 1795090 (D.D.C. June 30, 2025) ................................... 2

*Amer. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*
703 F. Supp. 3d 126 (D.D.C. 2023) ................................................... 21

*American Sci. & Eng'g, Inc. v. Califano*
571 F.2d 58 (1st Cir. 1978) .........................................................*passim*

*American Waterways Operators v. United States Coast Guard*
613 F. Supp. 3d 475 (D. Mass. 2020) ................................................ 14

*Andersen v. Vagaro, Inc.*
57 F.4th 11 (1st Cir. 2023) ................................................................... 8

*Armstrong v. Exceptional Child Ctr., Inc.*
575 U.S. 320 (2015) ........................................................................... 26

*Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*
745 F.2d 677 (D.C. Cir. 1984) ........................................................... 15

*Assoc. of American Universities v. Dep't of Energy*
Civ. A. No. 25-cv-10912-ADB, 2025 WL 1414135 (D. Mass. May 15, 2025) ...................... 3

*Bowen v. Massachusetts*
487 U.S. 879 (1988) .....................................................................*passim*

## TABLE OF AUTHORITIES
### (continued)

Page

*Britell v. United States*
    318 F.3d 70 (1st Cir. 2003) .................................................................. 29

*Burgos v. Milton*
    709 F.2d 1 (1st Cir. 1983) ............................................................... 20, 29

*California v. United States Dep't of Transportation*
    No. 25-CV-208-JJM-PAS, 2025 WL 1711531 (D.R.I. June 19, 2025) ................... 3

*Chi. Women in Trades v. Trump*
    No. 25-cv-2005, 2025 WL 1114466 (N.D. Ill. Apr. 14, 2025) ........................... 3

*Climate United Fund v. Citibank, N.A.*
    No. 25-cv-698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025) ............................... 3

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*
    No. 25-2808, 2025 WL 1393876 (9th Cir. May 14, 2025) ................................ 23

*Cmty. Legal Servs v. HHS*
    No. 25-cv-2847, 2025 WL 1168898 (N.D. Cal. Apr. 21, 2025) .......................... 3

*Colorado v. Dep't of Health and Human Svcs.*
    Civ. A. No. 1:25-cv-00121, 2025 WL 1426226 (D. R.I. May 16, 2025) ........... *passim*

*Consol. Edison Co. of New York v. U.S., Dep't of Energy*
    247 F.3d 1378 (Fed. Cir. 2001) ............................................................ 22

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*
    38 F.4th 1099 (D.C. Cir. 2022) ........................................................ 13, 16

*D. R. Smalley & Sons, Inc. v. United States*
    178 Ct. Cl. 593 (1967) ...................................................................... 21

*Dep't of Educ. v. California*
    145 S. Ct. 966 (2025) ........................................................................ 2

*Dep't of Homeland Sec. v. Regents of the Univ. of California*
    140 S. Ct. 1891 (2020) ...................................................................... 15

*Diaz v. Johnson*
    No. 19-1501, 2020 WL 9437887 (1st Cir. Nov. 12, 2020) ................................ 16

*El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*
    959 F.2d 742 (9th Cir. 1991) ............................................................... 14

**TABLE OF AUTHORITIES**
(continued)

Page

*FCC v. Prometheus Radio Project*
    592 U.S. 414 (2021) ............................................................................... 14

*Ferreiro v. United States*
    501 F.3d 1349 (Fed. Cir. 2007) ............................................................. 20

*Fisher v. United States*
    402 F.3d 1167 (Fed. Cir. 2005) ............................................................. 23

*Florida Health Sci. Ctr., Inc. v. Sec'y Health & Human Servs.*
    830 F.3d 515 (D.C. Cir. 2016) ............................................................... 27

*Furlong v. Shalala*
    156 F.3d 384 (2d Cir. 1998) .................................................................. 14

*Great-West Life & Annuity Ins. Co. v. Knudson*
    534 U.S. 204 (2002) ............................................................................... 18

*Green & Healthy Home Initiatives, Inc. v. EPA*
    2025 WL 1697463 (D. Md. June 17, 2025) .................................... 3, 13

*Hometown Fin., Inc. v. United States*
    409 F.3d 1360 (Fed. Cir. 2005) ............................................................. 21

*Ingersoll-Rand Co. v. United States*
    780 F.2d 74 (D.C. Cir. 1985) ................................................................ 13

*Jan's Helicopter Serv., Inc. v. FAA*
    525 F.3d 1299 (Fed. Cir. 2008) ............................................................. 27

*Katz v. Cisneros*
    16 F.3d 1204 (Fed. Cir. 1994) ........................................................ 12, 24

*King County v. Turner*
    2025 WL 1582368 (W.D. Wash. June 3, 2025) ..................................... 3

*Kozero v. Spirito*
    723 F.2d 1003 (1st Cir. 1983) ............................................................... 27

*Labrador v. Poe*
    144 S. Ct. 921 (2024) .............................................................................. 2

*Larson v. Domestic & Foreign Com. Corp.*
    337 U.S. 682 (1949) ............................................................................... 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*LeBlanc v. United States*
  50 F.3d 1025 (Fed. Cir. 1995) ................................................................. 27

*Maine v. USDA*
  No. 25-cv-131, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ...................................... 3

*Maryland v. CNCS*
  2025 WL 1585051 (D. Md. June 5, 2025) .................................................... 3

*Massachusetts Fair Hous. Ctr. v. Dep't of Hous. & Urban Dev.*
  No. CV 25-30041-RGS, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) ................... 3

*Massachusetts v. Kennedy*
  No. CV 25-10814-WGY, 2025 WL 1371785 (D. Mass. May 12, 2025) ................... 3, 12, 16

*Massachusetts v. Nat'l Insts. of Health*
  770 F. Supp. 3d 277 (D. Mass. 2025) ......................................... 3, 13, 18

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*
  567 U.S. 209 (2012) ........................................................................... 9

*Mega Const. Co. v. United States*
  29 Fed. Cl. 396 (1993) ....................................................................... 25

*Megapulse, Inc. v. Lewis*
  672 F.2d 959 (D.C. Cir. 1982) .................................................. 9, 11, 13, 17

*Merlonghi v. United States*
  620 F.3d 50 (1st Cir. 2010) .................................................................. 8

*Michigan v. E.P.A.*
  576 U.S. 743 (2015) ......................................................................... 14

*MTA v. Duffy*
  2025 WL 1513369 (S.D.N.Y. May 28, 2025) ................................................. 3

*New York v. Trump*
  No. 25-cv-39, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) ...................................... 3

*Newbury v. United States Hous. & Urb. Dev.*
  No. CV 24-84WES, 2024 WL 3890779 (D.R.I. Aug. 20, 2024) ........................... 22

*Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*
  554 F.3d 1290 (10th Cir. 2009) ............................................................. 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Pacito v. Trump*
  772 F. Supp. 3d 1204 (W.D. Wa. 2025) ............................................................... 20

*Perales v. Casillas*
  903 F.2d 1043 (5th Cir. 1990)............................................................................... 14

*Perry Cap. LLC v. Mnuchin*
  864 F.3d 591 (D.C. Cir. 2017) ..................................................................... 7, 11, 22

*PHC, Inc. v. Pioneer Healthcare, Inc.*
  75 F.3d 75 (1st Cir. 1996) ..................................................................................... 28

*Rhode Island v. Trump*
  No. 1:25-CV-128-JJM-LDA, 2025 WL 1303868 (D.R.I. May 6, 2025)........................ 3, 19

*S. Educ. Found. v. United States Dep't of Educ.*
  No. CV 25-1079 (PLF), 2025 WL 1453047 (D.D.C. May 21, 2025)................................ 3, 20

*S.F. AIDS Found. v. Trump*
  2025 WL 1621636 (N.D. Cal. June 9, 2025) .......................................................... 3

*San Francisco Unified Sch. Dist. v. AmeriCorps*
  No. 25-CV-02425-EMC, 2025 WL 1180729 (N.D. Cal. Apr. 23, 2025) .......................... 3, 24

*Sergent's Mech. Sys., Inc. v. United States*
  157 Fed. Cl. 41 (2021) .......................................................................................... 24

*Spectrum Leasing Corp. v. United States*
  764 F.2d 891 (D.C. Cir. 1985) .............................................................................. 13

*St. Bernard Parish Government v. United States*
  134 Fed. Cl. 730 (2017) ........................................................................................ 21

*Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*
  480 F.3d 1116 (Fed. Cir. 2007)........................................................................... 13, 25

*Thakur v. Trump*
  No. 25-CV-04737-RFL, 2025 WL 1734471 (N.D. Cal. June 23, 2025) ................................ 2

*Todd Const., L.P. v. United States*
  88 Fed. Cl. 235 (2009) .......................................................................................... 24

*Tootle v. Sec'y of Navy*
  446 F.3d 167 (D.C. Cir. 2006) .............................................................................. 23

vi

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision*
   967 F.2d 598 (D.C. Cir. 1992) ............................................................. 22

*United Aeronautical Corp. v. U.S. Air Force*
   80 F.4th 1017 (9th Cir. 2023) ............................................... 10, 13, 16

*United States v. Mitchell*
   463 U.S. 206 (1983) ................................................................... 23, 27

*Woonasquatucket River Watershed Council v. USDA*
   No. 25-cv-97, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ....................... 3

*Wopsock v. Natchees*
   454 F.3d 1327 (Fed. Cir. 2006) ............................................................ 23

*Zelman v. Gregg*
   16 F.3d 445 (1st Cir. 1994) .................................................................. 24

**STATUTES**

5 U.S.C. § 702 ................................................................................... 9, 22, 23

5 U.S.C. § 703 .......................................................................................... 28

5 U.S.C. § 706(2)(A) ....................................................................... 6, 10, 14, 15

20 U.S.C. § 1022 ................................................................................ 3, 10, 11

20 U.S.C. § 1022a(a) ................................................................................ 23

20 U.S.C. § 1022a(d)(1)(A)(ii) ................................................................... 11

20 U.S.C. § 1022e(b) ........................................................................... 3, 7, 11

20 U.S.C. § 1221(b) & (c)(1) ..................................................................... 22

20 U.S.C. § 1228a(b) ........................................................................ 4, 7, 10, 11

20 U.S.C. § 1232 ........................................................................................ 7

20 U.S.C. § 1232(d) ............................................................................. 10, 13

20 U.S.C. § 6672 ................................................................................ 7, 10, 11

20 U.S.C. § 6672(a) ................................................................................ 4, 23

28 U.S.C. § 1331 ................................................................................ 27, 28

Plaintiffs' Opposition To Defendants' Motion To Dismiss Plaintiffs' First Amended Complaint
(1:25-cv-10548-AK)

**TABLE OF AUTHORITIES**
(continued)

**Page**

28 U.S.C. § 1491 ...................................................................................................... 1, 9

28 U.S.C. § 1491(a)(1) .................................................................................................. 9

28 U.S.C. § 1491(a)(2) ................................................................................................ 24

28 U.S.C. § 1491(b) .................................................................................................... 24

28 U.S.C. § 1631 ......................................................................................................... 29

28 U.S.C. § 2201(a) .................................................................................................... 28

Declaratory Judgment Act ........................................................................................... 27

Every Student Succeeds Act ........................................................................................ 11

General Education Provisions Act ......................................................................... *passim*

Higher Education Opportunity Act .............................................................................. 11

National Environmental Policy Act ............................................................................. 14

Tucker Act ................................................................................................................. 1, 9

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article I, § 8, cl. 1 ..................................................................................... 8

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(1) ............................................................... 8, 25

**REGULATIONS**

2 C.F.R. § 200.208(c) ................................................................................................. 10

2 C.F.R. § 200.339 ................................................................................................... 7, 10

2 C.F.R. § 200.340 ............................................................................................ 7, 13, 14

2 C.F.R. § 200.340(a) ........................................................................................... *passim*

2 C.F.R. § 200.340(a)(2) (2020) ................................................................................. 28

2 C.F.R. § 200.340(a)(4) (2024) ................................................................... 6, 7, 11, 28

2 C.F.R.§ 200.341(a) .................................................................................... 4, 10, 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

34 C.F.R. § 75.105 ........................................................................................ 7, 10, 12

OTHER AUTHORITIES

85 Fed. Reg. 49509 (Aug. 13, 2020)........................................................... 4, 10, 15

86 Fed. Reg. 36217-20 (July 9, 2021)................................................................... 4

86 Fed. Reg. 70612-33 (Dec. 10, 2021)................................................................ 4

87 Fed. Reg. 10906-12 (Feb. 25, 2022) ............................................................... 4

89 Fed. Reg. 23573-80 (Apr. 4, 2024) ................................................................. 4

Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2759 (4th ed. 2025)............... 28

**INTRODUCTION**

On February 5, 2025, Defendant Carter issued a directive to Department of Education (ED) staff, which included a mandate to "ensur[e] that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion (DEI) initiatives." Doc. No. 7-20 at 1. Two days later, in furtherance of that directive, Defendants began issuing boilerplate letters nationwide to terminate grants under the Teacher Quality Partnership (TQP) and Supporting Effective Educator Development (SEED) programs, effectively eliminating these Congressionally authorized teacher preparation programs. The February 5 Directive (the Directive) and the actions undertaken to implement it with respect to the TQP and SEED programs (the February Actions) constitute unlawful agency action in violation of the agency's own regulations and its statutory and constitutional obligations as well as the standards of reasoned decision-making required by the APA.

Defendants move to dismiss these claims based solely on the jurisdictional contention that Plaintiffs' claims of unlawful agency action in violation of statute, regulation, and the Constitution are disguised breach-of-contract claims that belong in the Court of Federal Claims (COFC) under the Tucker Act, 28 U.S.C. § 1491. But Defendants' argument contorts Plaintiffs' complaint into something it is not. The claims at the heart of the First Amended Complaint (FAC) are classic claims under the APA and Constitution, none of which depend in any way on the grant agreements. The remedies requested in the FAC—including setting aside and vacating Defendants' final agency actions, declaring Defendants' actions unlawful and unconstitutional, declaring that certain regulations do not authorize Defendants' actions, and permanently enjoining Defendants from implementing, maintaining, or reinstating the final agency actions—are not available in the COFC.

Plaintiffs seek only equitable, declaratory, and forward-looking relief; they do *not* seek reimbursement for "past due" sums or specific performance, as Defendants suggest.

Defendants' argument rests on a misunderstanding of Plaintiffs' FAC and a misreading of the Supreme Court's per curiam order—an order that reflects only the preliminary view of five Justices that "the Government is likely to succeed in showing [this Court] lacked jurisdiction to order the payment of money under the APA" based on the original complaint. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). That order does not purport to be a final ruling on Defendants' Tucker Act argument (nor, of course, on a motion to dismiss the FAC, which has never been before the Supreme Court), and no such dispositive ruling would have been appropriate in such a posture. *See Labrador v. Poe*, 144 S. Ct. 921, 928-929 (2024) (Kavanaugh, J., concurring) (distinguishing a ruling on an emergency stay application from "a final merits ruling"). To the contrary, the order expressly contemplates that Plaintiffs may "ultimately prevail" on the merits, *see California*, 145 S. Ct. at 969—a result that would entail a ruling in Plaintiffs' favor on this threshold jurisdictional issue. This Court thus remains free to decide that it has jurisdiction over the FAC (Doc. No. 112) based on the more fulsome arguments and record before it.

In recent weeks, courts throughout the country have largely rejected the federal government's efforts to expand the per curiam order in *California* beyond its constrained, preliminary posture and have continued to follow the Supreme Court's binding precedent in *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988). These courts have consistently found that cases like this one—challenging an unlawful agency action under the APA and the Constitution—belong in district courts, not the COFC.[1] This Court should do the same.

---

[1] *See Amer. Cntr. For Int'l Labor Solidarity v. Sec'y Lori Chavez-DeRemer*, No. CV 25-1128 (BAH), 2025 WL 1795090, at *11-20 (D.D.C. June 30, 2025); *Thakur v. Trump*, No. 25-CV-04737-RFL, 2025 WL 1734471, at *18 (N.D. Cal. June 23, 2025); *California v. United States* (continued…)

## BACKGROUND

**A.    The TQP and SEED Grant Programs Require Various Diversity, Equity, and Inclusion Initiatives by Law**

To address nationwide teacher shortages and improve teacher quality, Congress established the TQP and SEED Grant Programs in 2008 and 2015, respectively. Doc. No. 112 ¶¶ 9-11. These programs have operated in states across the country, in some cases for many years. *See id.* ¶¶ 68-95. Among its goals, TQP seeks to recruit "highly qualified individuals, including minorities and individuals from other occupations, into the teaching force." 20 U.S.C. § 1022; Doc. No. 112 ¶ 18. TQP requires that general education teachers are trained "in providing instruction to diverse populations, including children with disabilities, limited English proficient students, and children from low-income families." 20 U.S.C. § 1022e(b); Doc. No. 112 ¶ 18. Similarly, SEED is aimed

---

*Dep't of Transportation*, No. 25-CV-208-JJM-PAS, 2025 WL 1711531, at *1 (D.R.I. June 19, 2025); *Green & Healthy Home Initiatives, Inc. v. EPA*, 2025 WL 1697463, at *14-15 (D. Md. June 17, 2025); *S.F. AIDS Found. v. Trump*, 2025 WL 1621636, at *12 (N.D. Cal. June 9, 2025); *Maryland v. CNCS*, 2025 WL 1585051, at *27-28 (D. Md. June 5, 2025); *King County v. Turner*, 2025 WL 1582368, at *12 (W.D. Wash. June 3, 2025); *MTA v. Duffy*, 2025 WL 1513369, at *25-26 (S.D.N.Y. May 28, 2025); *S. Educ. Found. v. United States Dep't of Educ.*, No. CV 25-1079 (PLF), 2025 WL 1453047, at *6-10 (D.D.C. May 21, 2025); *Colorado v. Dep't of Health and Human Svcs.*, Civ. A. No. 1:25-cv-00121, 2025 WL 1426226, *6-9 (D. R.I. May 16, 2025); *Assoc. of American Universities v. Dep't of Energy*, Civ. A. No. 25-cv-10912-ADB, 2025 WL 1414135, *5-7 (D. Mass. May 15, 2025); *Am. Bar Ass'n v. U.S. Dep't of Just.*, No. 25-CV-1263 (CRC), 2025 WL 1388891, at *6 (D.D.C. May 14, 2025); *Massachusetts v. Kennedy*, No. CV 25-10814-WGY, 2025 WL 1371785 (D. Mass. May 12, 2025); *Rhode Island v. Trump*, No. 1:25-CV-128-JJM-LDA, 2025 WL 1303868, at *6 (D.R.I. May 6, 2025); *San Francisco Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC, 2025 WL 1180729, *6-11 (N.D. Cal. Apr. 23, 2025); *Cmty. Legal Servs v. HHS*, No. 25-cv-2847, 2025 WL 1168898, at *3 (N.D. Cal. Apr. 21, 2025), *aff'd*, 137 F.4th 932, 939 (9th Cir. 2025); *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698, 2025 WL 1131412, at *9–12 (D.D.C. Apr. 16, 2025); *Woonasquatucket River Watershed Council v. USDA*, No. 25-cv-97, 2025 WL 1116157, at *12–15 (D.R.I. Apr. 15, 2025); *Chi. Women in Trades v. Trump*, No. 25-cv-2005, 2025 WL 1114466, at *8–10 (N.D. Ill. Apr. 14, 2025); *New York v. Trump*, No. 25-cv-39, 2025 WL 1098966, at *1–3 (D.R.I. Apr. 14, 2025); *Maine v. USDA*, No. 25-cv-131, 2025 WL 1088946, at *19–20 (D. Me. Apr. 11, 2025); *Aids Vaccine Advoc. Coal. v. United States Dep't of State*, 770 F. Supp. 3d 121 (D.D.C. Mar. 10, 2025); *Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277, 291-295 (D. Mass. 2025); *Am. Pub. Health Ass'n v. NIH*, Nos. 25-1611, 25-1612, 2025 WL 2017106, at *8 (1st Cir. July 18, 2025) (concluding district court likely had jurisdiction to grant declaratory and injunctive relief under APA). *But see, e.g., Massachusetts Fair Hous. Ctr. v. Dep't of Hous. & Urban Dev.*, No. CV 25-30041-RGS, 2025 WL 1225481 (D. Mass. Apr. 14, 2025)) (Stearns, J.) (finding court lacked jurisdiction over APA claims based on the Supreme Court's decision in this case).

3

at aiding "traditionally underserved local educational agencies," among other purposes. 20 U.S.C. § 6672(a). *Id.*

The General Education Provisions Act (GEPA) mandates that the Secretary of Education (Secretary) "require" all grant applicants for the TQP and SEED programs to describe the steps they will take to ensure "equitable access" and "overcome barriers to equitable participation" in grant projects. 20 U.S.C. § 1228a(b); Doc. No. 112 ¶ 18; *see also* 2 C.F.R.§ 200.341(a) (requiring written notice of any termination, which must "include the reason for termination"); 85 Fed. Reg. 49509 (Aug. 13, 2020) (grant terminations cannot be arbitrary). GEPA also requires that the Secretary establish specific priorities for each grant program through notice and comment rulemaking and evaluate grant applications based on how they fulfill those priorities. Doc. No. 112 ¶ 47 (citing 34 C.F.R. § 75.105(b)(1); 20 U.S.C. § 1232(d)).

In July 2021, consistent with Congressional direction, ED published its priorities for the TQP and SEED programs, which included a priority for "Increasing Educator Diversity." 86 Fed. Reg. 36217-20 (July 9, 2021); Doc. No. 112 ¶ 66. ED later published supplemental priorities, *see* 89 Fed. Reg. 70612-33 (Dec. 10, 2021), which included:

- "Promoting Equity in Student Access to Educational Resources and Opportunities,"

- "Supporting a Diverse Educator Workforce and Professional Growth To Strengthen Student Learning," and

- "Meeting Student Social, Emotional, and Academic Needs[.]"

These priorities were identified in the notices published for prospective grant applicants, and ED relied on these priorities in selecting grant recipients. *See* 86 Fed. Reg. 23573-80 (Apr. 4, 2024); 87 Fed. Reg. 10906-12 (Feb. 25, 2022) (same for FY 2022); Doc. No. 112 ¶ 67 n.17.

**B.     Defendants' February 5, 2025 Directive and Termination of TQP and SEED Grant Programs**

On February 5, 2025, then-Acting Secretary Denise Carter issued a directive entitled "Eliminating Discrimination and Fraud in Department Grant Awards." Doc. No. 112 ¶¶ 114-115; *see also* Doc. No. 8-20. The Directive stated that ED must "ensur[e] that the Department's grants do not support programs or organizations that promote or take part in diversity, equity, and inclusion ('DEI') initiatives or . . . unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic." *Id.* It further instructed agency staff to ensure that "all grant payments are free from fraud, abuse, and duplication, [and] to assess whether current grants are in the best interests of the United States." Doc. No. 112 ¶¶ 117, 124; *see also* Doc. No. 8-20.

Two days later, ED began terminating all grants awarded under the TQP and SEED programs. Doc. No. 112 ¶¶ 123-125. Every grant recipient received an identical, form Termination Letter, which listed multiple separate grounds for termination in the disjunctive, leaving grant recipients with no understanding of the real reason for their grant's termination. *Id.* These reasons echoed the February 5 Directive verbatim, citing "programs that promote or take part in DEI initiatives," *or* "that unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic," *or* "that are not free from fraud, abuse, or duplication" *or* "that otherwise fail to serve the best interests of the United States." *Id.*; Doc. No. 112-1. ED also distributed a revised grant award notification (GAN) to most grant recipients. Doc. No. 112 ¶ 132; Doc. No. 112-2. This Termination GAN provides even less information than the Termination Letter regarding ED's reasons and asserted authority for termination. *See* Doc. No. 112 ¶¶ 132-133.

C.    **Plaintiffs' Claims and Relief Sought**

On March 6, 2025, Plaintiffs filed this lawsuit, asserting two claims under the APA. Doc.
No. 1 ¶¶ 161-186. Plaintiffs have since filed a FAC as of right, further addressing the jurisdictional
concerns that were raised by Defendants and adding several causes of action. Doc. No. 112.
Specifically, the FAC clarifies the final agency action at issue here is ED's *policy*, embodied in
the February 5 Directive as applied to the TQP and SEED grant programs. *Id.* ¶¶ 114-122. The
FAC also adds a declaratory judgment claim regarding the proper interpretation of the regulation
that ED invoked here as the source of its authority (2 C.F.R. § 200.340(a)(4) (2024)) as well as
constitutional claims stemming from ED's conduct. *See* Doc. No. 112 ¶¶ 201-232.

The FAC alleges that Defendants' actions were "arbitrary and capricious" under the APA, 5
U.S.C. § 706(2)(A). Doc. No. 112 ¶¶ 171-188. And "to the extent the Department terminated the
grants for funding the diversity, equity, or inclusion related programs that the [GEPA and TQP
and SEED authorizing] statutes expressly require, that action is both not 'authorized by law' and
arbitrary and capricious." *Id.* ¶ 18. Likewise, the agency action was arbitrary and capricious
because it "improperly relied on factors Congress has not intended it to consider, as demonstrated
by the stated purposes of the TQP and SEED statutes." *Id.* ¶ 15. Defendants' actions were also
arbitrary and capricious because they failed to offer a reasoned explanation for their decision-
making, as required by the APA, because they provided no facts or analysis specific to any grant,
failed to consider reliance interests or the impact of the decision to terminate, and did not explain
ED's abrupt change in position. *Id.* Further, Defendants' actions relied on factors Congress did not
intend for it to consider because ED's "anti-DEI" policy runs afoul of *statutory and regulatory*
*limits* on ED's ability to terminate grants under these programs, including federal regulations
which require that grant recipients have an opportunity to be heard and to cure noncompliance

prior to termination. *Id.* ¶ 19 (citing 2 C.F.R. §§ 200.339, 200.208(c)).[2] As relief, Plaintiffs seek vacatur of the final agency action and declaratory relief that Defendants' actions in implementing the February 5 Directive to terminate all previously awarded TQP and SEED grants were arbitrary and capricious and/or an abuse of discretion in violation of the APA. *Id.* at p. 64 (Prayer for Relief).

Defendants' actions were "not in accordance with law" under the APA because they violate 2 C.F.R. § 200.340, the OMB regulation that ED invoked as its source of authority in both the February 5 Directive and the Termination Letters. Doc. No. 112 ¶¶ 118, 124, 189-200.[3] This regulation permits termination as applicable here, if the action otherwise complies with law, and if the federal award no longer effectuates agency priorities identified *as of the time of the award*, but it does not independently permit or authorize such termination based on new agency priorities identified *after* the time of the award, particularly in view of the separate statutes and regulations that require Defendants to undergo notice-and-comment rulemaking before setting priorities for the award of grants in the first instance. Doc. No. 112 ¶ 204.[4]

---

[2] These limits include that (1) ED's new priorities are contrary to the priorities ED previously established through required notice-and-comment rulemaking under 20 U.S.C. § 1232; 34 C.F.R. § 75.105." Doc. No. 112 ¶ 181; (2) ED's new priorities are contrary to the express requirements of the authorizing statutes and GEPA, *see, e.g.*, 20 U.S.C. § 1022e(b), 20 U.S.C. § 6672, 1228a(b), *Id.* ¶ 183; and (3) Defendants failed to follow the procedures established in 2 C.F.R. §§ 200.339; 200.208(c), prior to termination. *Id.* ¶ 186.

[3] Despite citing to the 2024 version of this regulation, ED has since invoked the 2020 version. Doc. No. 112 ¶ 195 n.31. In any case, both versions of the regulation do not "independently permit or authorize" termination on the asserted grounds.

[4] In their original Complaint, Plaintiffs also argued that 2 C.F.R. § 200.340(a)(4) "only authorizes termination 'pursuant to the terms and conditions of the federal award' and "[n]o term or condition for any TQP or SEED grant award authorize[d] termination for failure to effectuate agency priorities." Doc. No. 1 ¶¶ 182-83. Although this argument merely required looking to the terms of the agreements—which in no way converted the claim into a contract claim, *see Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017)—Plaintiffs have focused instead on the other independent ways in which Defendants' actions are contrary to 2 C.F.R. § 200.340(a). *See* Doc. No. 112 ¶¶ 193-198. Nonetheless, Defendants misleadingly continue to invoke the terms and conditions of the grant agreements and suggest that Plaintiffs' arguments would require considering them, which they do not. Doc. No. 129 at 14-15.

Plaintiffs' FAC also includes a constitutional claim under the Spending Clause, U.S. Const. Art. I, § 8, cl. 1, as well as Separation of Powers and ultra vires claims, which stem from the same course of conduct—namely, Defendants' unilateral elimination of the Congressionally authorized TQP and SEED programs and retroactive imposition of new and ambiguous terms on Plaintiffs by prohibiting grant recipients from engaging in any work perceived to be related to "diversity, equity, and inclusion," in furtherance of the February 5 Directive and in contravention of Congress's commands in the TQP and SEED-authorizing statutes and GEPA. Doc. No. 112 ¶¶ 206-232.

Plaintiffs sought and continue to seek injunctive and declaratory relief to set aside the unlawful agency action in this case. Doc. No. 112 at p. 64. Importantly, Plaintiffs do *not* seek reimbursement for "past due" sums or specific performance, as Defendants suggest. If this Court confirms the unlawfulness of Defendants' actions, one consequence may be that Plaintiffs' institutions will be able to continue their programs and continue to draw down already awarded funds going forward in the coming months and years. *See* Doc. No. 112 ¶ 159. However, the relief being sought here is limited to declaratory and injunctive relief to vacate an unlawful agency policy as applied to these programs—not money damages or specific performance of the grant agreements. *Id.* at p. 64.

## LEGAL STANDARD

The court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" on a Rule 12(b)(1) motion. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010); *see also Andersen v. Vagaro, Inc.*, 57 F.4th 11, 13 (1st Cir. 2023).

## ARGUMENT

## I.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

The APA waives sovereign immunity for suits "seeking relief other than money damages" against a federal agency, so long as no other statute "expressly or impliedly forbids the relief which

8

is sought." 5 U.S.C. § 702; *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). As to the APA claims, although Defendants previously argued that Plaintiffs are seeking "money damages" under 5 U.S.C. § 702, *see* Doc. No. 102 at 9-13, they appear to have abandoned that contention. Instead, Defendants rely on the Tucker Act, 28 U.S.C. § 1491(a)(1), which gives the COFC jurisdiction over certain claims for damages based on contracts with the United States. Contrary to Defendants' arguments, the Tucker Act does not expressly or impliedly forbid the relief that Plaintiffs seek.

Plaintiffs' claims are based on statutory, regulatory, and constitutional violations, not contractual rights, and they seek declaratory and injunctive relief. *See infra* Part I(A). The COFC lacks jurisdiction to hear these claims, but even if it could, as relevant to the APA claims, the remedies available in that court would be entirely inadequate to redress Plaintiffs' harms. *See infra* Part I(B). Indeed, the logical conclusion of Defendants' argument is that neither a federal district court nor the COFC can set aside or enjoin the government's unlawful actions here, which would create an intolerable jurisdictional void. And the FAC's additional constitutional and ultra vires claims and demand for declaratory relief only underscore why this Court has jurisdiction. *See infra* Part I(C).

A.   **This Case Does Not Sound In Contract**

In determining whether a plaintiff's claims belong in the COFC, the First Circuit has identified the central question as whether a case is "essentially a contract dispute." *American Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978). In so doing, the First Circuit has looked at whether the "core determination" to be made in the case is "whether a breach of contract had occurred," and also at the "relief plaintiff requested." *Id.* Other courts have articulated a similar test. *See, e.g.*, *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) ("The classification

of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).")"; *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (Tucker Act will "'impliedly forbid' an APA action seeking injunctive and declaratory relief only if that action is a 'disguised' breach-of-contract claim") (quoting *Megapulse*, 672 F.3d at 968). Here, consideration of these two factors—the source of the right and the relief requested—makes clear this is not a breach of contract case in disguise.

### 1. Plaintiffs' Claims Are Founded on Statutory, Regulatory, and Constitutional Provisions

Plaintiffs' claims are based on the statutes authorizing these two grant programs (20 U.S.C. § 1022; 20 U.S.C. § 6672); GEPA (20 U.S.C. §§ 1228a(b), 1232(d)); federal regulations (2 C.F.R. §§ 200.340(a), 200.339, 200.208(c); 34 C.F.R. § 75.105); the APA itself, which bars "arbitrary and capricious" agency action (5 U.S.C. § 706(2)(A); *see also* 85 Fed. Reg. 49509 (Aug. 13, 2020); 2 C.F.R. § 200.341(a)); and the U.S. Constitution (the Spending Clause and separation of powers principles). Plaintiffs' claims are *not* founded on the grant agreements, as Defendants assert; instead, Plaintiffs allege, in part, that ED acted unlawfully in purging ED of all "DEI" that is "contrary . . . to the Department's policy objectives," *see* Doc. No. 112 ¶ 117, and as a result eliminating the TQP and SEED programs, including those in Plaintiffs' States. Like other recent cases challenging the federal government's unlawful termination of funding, "this case concerns the process the Government undertook when terminating the funding"—a process that is subject to limitations that exist independently of any one grant award. *Colorado v. HHS*, 2025 WL 1426226, at *8 (D.R.I. 2025).[5] Thus, Plaintiffs' claims turn on the interpretation of statutes,

---

[5]  In the original complaint, Plaintiffs alleged that because the grants do not permit termination for failure to effectuate agency priorities, Defendants cannot terminate "pursuant to
(continued…)

regulations, and the Constitution and the agency's violations of these laws, not the grant agreements.

*First*, Plaintiffs rely on the statutes authorizing the grant programs: the Higher Education Opportunity Act (authorizing the TQP program) and Every Student Succeeds Act (authorizing the SEED program). Among other things, these statutes require that "general education teachers receive training in providing instruction to diverse populations, including children with disabilities, limited English proficient students, and children from low-income families," 20 U.S.C. § 1022e(b), and require that early childhood educators receive training in techniques to improve children's "cognitive, social, emotional, and physical development." 20 U.S.C. § 1022a(d)(1)(A)(ii). These statutes direct grant recipients to provide teachers, principals, and school leaders "from nontraditional preparation and certification routes or pathways to serve in traditionally underserved" schools, 20 U.S.C. § 6672, and "recruit highly qualified individuals, including minorities . . . into the teaching force." 20 U.S.C. § 1022. Plaintiffs' FAC also relies on GEPA, which mandates that the Secretary "require" all grant applicants to describe steps that they will take to ensure "equitable access" and "overcome barriers to equitable participation" in grant projects. 20 U.S.C. § 1228a(b).

These statutory requirements embrace—indeed, *mandate*—diversity, equity, and inclusion. Insofar as the February Actions effected a wholesale termination of grants that involve "DEI," they were directly at odds with these statutory requirements and are arbitrary and capricious. Defendants insist that these statutes govern the *awarding of grants*, rather than the termination of

---

the terms and conditions of the award," as required under 2 C.F.R. § 200.340(a)(4) (2024). Doc. No. 1 ¶¶ 14, 94, 182-83. The fact that a court may have to consider the language of an agreement as part of its regulatory or statutory analysis does *not* convert the claim to one whose "essence" is contractual. *Megapulse, Inc.*, 672 F.2d at 969–70; *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017). However, to avoid any confusion, Plaintiffs' FAC focuses instead on the other independent ways in which Defendants' actions are contrary to 2 C.F.R. § 200.340(a). *See* Doc. No. 112 ¶¶ 193-198.

them. Doc. No. 129 at 15-16. But Defendants overlook that the statutes provide a detailed framework for the award of grant funds to serve specific, Congressionally authorized purposes, including recruiting minority teachers. Terminating a class of grants precisely because they serve these *very same, Congressionally authorized purposes* is the very definition of arbitrary and capricious and not in accordance with law.

> As District Judge William Young aptly put it in a recent decision:

> This is not an action for monetary damages against the United States for which the Court of Claims was created. Rather, at least as alleged, and taking all inferences in the States' favor, it is an action to stop the Public Officials from violating the statutory grant-making architecture created by Congress, replacing Congress' mandate with new policies that directly contradict that mandate, and exercising authority arbitrarily and capriciously, in violation of federal law and the Constitution.

*Massachusetts v. Kennedy*, 2025 WL 1371785, at *9. The same is true here; this case seeks to stop ED from "replacing Congress' mandate [in the TQP and SEED authorizing statutes and GEPA] with new policies that directly contradict that mandate, and exercising authority arbitrarily and capriciously, in violation of federal law and the Constitution." *Id.*[6]

*Second*, Plaintiffs' claims are also premised on Defendants' violation of the very regulations ED itself invokes as its source of authority in undertaking this agency action: 2 C.F.R. § 200.340(a). Insofar as Plaintiffs' claims ask the Court to interpret the "no longer effectuates . . . agency priorities" language in 2 C.F.R. § 200.340(a), and the interaction of that provision with GEPA, 20 U.S.C. § 1232(d) and 34 C.F.R. § 75.105, Plaintiffs "seek[] judicial interpretation of a federal regulation," not "declaratory relief in the performance of a contract." *Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994). The parties' dispute about the meaning of 2 C.F.R. § 200.340(a)

---

[6] Defendants cite *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 240 (D.C. Cir. 1995), in which "Plaintiffs sought money damages of $15 million," but neither the APA nor the enabling act in question provided for that particular relief. Here, Plaintiffs are not seeking money damages. And if they prove that Defendants acted contrary to law, Plaintiffs will be entitled to the declaratory and injunctive relief that they seek.

12

and its relationship to other regulations and statutes cannot fairly be characterized as "entirely contained within the terms of the contract." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985); *see also Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1108, 1110 (D.C. Cir. 2022) (where plaintiff claimed the right "'to be free from government action beyond [its] congressional authority,'" its claim did not arise from contract).[7] Nor is this claim rendered contractual just because the case may involve "some reference" to the grant agreements. *Megapulse*, 672 F.2d at 968.[8] Defendants argue that "the terms and conditions of the grant awards *did* authorize termination in these circumstances," Doc. No. 129 at 15, but Defendants' defensive invocation of the agreements does not change the nature of Plaintiffs' claims. *See United Aeronautical Corp.*, 80 F.4th at 1026 ("The Tucker Act does not bar an APA action if the plaintiff's rights and remedies, as alleged, are noncontractual—even if it is inevitable that the government will raise a contract provision as a defense.").

Defendants insist that "[n]othing in 2 C.F.R. § 200.340 suggests that a violation would entitle grant recipients to the reinstatement of their grants and the consequent release of withheld funds." Doc. No. 129 at 15. This argument conflates the "core determination" to be made in this case, *Am.*

---

[7] In arguing that the Court lacks APA jurisdiction, Defendants heavily rely on cases decided before the Supreme Court's decision in *Bowen*, including out-of-circuit decisions in *Ingersoll-Rand* and *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Doc. No. 129 at 14-15. But reliance on that caselaw "must take into account" that "there has been considerable development regarding this jurisdictional issue." *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007); *see, e.g.*, cases cited *supra* note 1.

[8] For example, in *Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d at 293, this Court concluded that "the claims in this case turn on how the regulations govern the provision of these awards," and that the case was thus non-contractual even though the "regulations are incorporated" into the grant awards. *See also, e.g., Green & Healthy Home Initiatives, Inc. v. EPA*, Case No. 25-cv-1096-ABA, 2025 WL 1697463, at *12 (D. Md. June 17, 2025) (case was not contractual where plaintiffs claimed, *inter alia*, that EPA "failed to adhere to agency regulations [*i.e.*, 2 C.F.R. § 200.340] that limit when an agency can terminate a grant award"). It would be absurd indeed for Defendants to be able to transform a constitutional, statutory, or regulatory claim into a contractual one for purposes of COFC jurisdiction solely by referencing a provision in a grant agreement, and there is no case authority to support such an all-encompassing jurisdictional interpretation.

*Sci. & Eng'g*, 571 F.2d at 61, with the relief being sought. Regardless of whether vacatur of Defendants' unlawful agency action would result in the reopening of the unlawfully terminated grant program (or grants), the essence of Plaintiffs' claims is not contractual, nor do Plaintiffs seek contractual remedies like compensatory damages or specific performance.[9]

*Third*, Plaintiffs' claims are premised on Defendants' arbitrary and capricious agency action under the APA. Defendants argue that Plaintiffs' claims cannot be based on the APA itself because the APA "does not declare self-actualizing substantive rights," rather, it "merely provide[s] a vehicle for enforcing rights which are declared elsewhere." Doc. No. 129 at 13 (citing *American Waterways Operators v. United States Coast Guard*, 613 F. Supp. 3d 475, 486 (D. Mass. 2020)).[10] But Defendants misunderstand the nature of Plaintiffs' APA theory. Courts frequently consider whether agency action is "arbitrary and capricious" under 5 U.S.C. § 706(2)(A), and an agency's failure to undertake "reasonable and reasonably explained" action alone is sufficient to support a claim. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015). And, in any event, *applicable* ED regulations provide a separate limitation, restating the APA's requirement:

---

[9] This remedy does not prevent Defendants from making future individualized terminations so long as the terminations are consistent with law.

[10] The cases cited by Defendants for this proposition are distinguishable. For instance, in *American Waterways Operators*, 613 F. Supp. 3d at 486, the Court considered statutory standing and whether "the interest sought to be protected by the complainant [is] arguably [] within the zone of interests protected or regulated by the statute" in question, and it concluded that plaintiff tug boat operators were not within the zone of interests protected by the National Environmental Policy Act (NEPA); their interest in the case was getting state-level regulations preempted and invalidated – not any interest in the environmental impact of the federal government's regulations. The other cases relied on by Defendants are similarly distinguishable. *See Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998) (explaining why the APA does not create a property interest that could support a due process claim); *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 753 (9th Cir. 1991) (plaintiffs could not succeed on the merits of their APA claim without showing a violation of some other statute); *Perales v. Casillas*, 903 F.2d 1043, 1050 n.3 (5th Cir. 1990) (addressing lack of substantive APA rights as a merits or committed-to-agency-discretion problem, not a Tucker Act problem).

14

85 Fed. Reg. 49509 (Aug. 13, 2020) (grant terminations cannot be arbitrary); 2 C.F.R. § 200.341(a) (requiring written notice of any termination, which must "include the reason for termination"). Doc. No. 112 ¶ 15.

Here, Plaintiffs argue that ED's actions were arbitrary and capricious in numerous respects, including by failing to abide by various statutes and regulations, *see* Doc. No. 112 ¶¶ 181, 183, 185-186, and by Defendants' failure to engage in the required reasoned decisionmaking. *Id.* ¶¶ 176-180, 182, 184. This latter failure is itself a viable source of Plaintiffs' rights in this case. *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984) ("Paragraph (A) of subsection 706(2)—the 'arbitrary or capricious' provision—is a catchall, picking up administrative misconduct not covered by the other more specific paragraphs."); *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) ("The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.") (citation and internal quotation marks omitted). Thus, insofar as Plaintiffs' claims are premised on "arbitrary and capricious" agency action under 5 U.S.C. § 706(2)(A)—including by failing to abide by various statutes and regulations—that source of rights is valid and by no means based on the grant agreements or "contractual" in nature.[11]

*Finally*, Plaintiffs' claims rely on the Constitution. Defendants do not appear to dispute (nor could they) that district courts have jurisdiction over claims that are "constitutionally based." *United Aeronautical Corp.*, 80 F.4th at 1026 (emphasis omitted). Instead, they imply that these

---

[11] Defendants argue that exercising jurisdiction over Plaintiffs' arbitrary and capricious APA claim "would allow any Tucker Act claim to be converted into an APA claim simply by arguing that the agency's reasons for allegedly breaching a contract were arbitrary and capricious," *see* Doc. No. 129 at 13. But Plaintiffs' case does not depend on any such theory of APA jurisdiction. As explained above, Plaintiffs' arbitrary and capricious claim rests principally on the theory that Defendants acted arbitrarily and capriciously in light of statutes and regulations that specifically apply to the TQP and SEED programs.

claims will ultimately fail on the merits. *See* Doc. No. 129 at 16. The relevant question, however, is whether Plaintiffs' claims arise from contract. As courts have repeatedly held in other federal funding cases, a plaintiff's assertion of constitutional claims underscores that the case is not contractual. *See, e.g.*, *Colorado*, 2025 WL 1426226, at *8 (rights did not arise from contract where States asserted claims based on "the Constitution's Spending Clause and underlying separations of powers principles"); *Massachusetts v. Kennedy*, 2025 WL 1371785, at *2, *9 (same result where plaintiffs asserted, *inter alia*, separation of powers and Spending Clause claims). And while Defendants argue that Plaintiffs would likely not have brought this case if they had never been awarded the grants[12], *see* Doc. No. 129 at 16, the D.C. Circuit has correctly rejected that kind of "'but-for' test for identifying the source of the rights." *Crowley*, 38 F.4th at 1110.[13]

In sum, it is abundantly clear that the "core determination" to be made in this case, *Am. Sci. & Eng'g*, 571 F.2d at 61, is whether Defendants acted lawfully in their application of the February 5 Directive to the TQP and SEED programs—not whether they breached any contract. These claims have nothing to do with the terms of any particular grant or agreement with the federal government.

---

[12] Moreover, Plaintiffs could very well bring a similar case based on application of the February 5 Directive to undermine Congress' mandate to carry out these grant programs in future grant cycles, or to place DEI conditions on such grants that are inconsistent with Congressional directive. That potential case, just like the current case, would not be based on a contract or any breach thereof.

[13] Defendants' invocation of the First Circuit's decision in *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978) is unpersuasive. *See* Doc. No. 129 at 16-17. There, the plaintiff had a license agreement with the government, alleged that the license was breached, and sought $100 million in damages and specific performance of the agreement. Unlike here, the plaintiff there *specifically pled a breach of contract claim*, *id.* at 60, and he sought "enforcement of the [domestic license] agreements or monetary damages" in his Complaint. *Id.* at 61. *American Science* was thus a classic breach of contract claim, in which the plaintiff only invoked the APA as an alternative basis for jurisdiction, arguing that some due process protections afforded by departmental regulations had not been followed. But rather than seeking a further hearing or due process, the plaintiff there expressly sought only damages or specific performance under the contract. *Id.* at 63; *see also Diaz v. Johnson*, No. 19-1501, 2020 WL 9437887, at *1–2 (1st Cir. Nov. 12, 2020) (noting that complaint expressly invoked Tucker Act and sought damages).

16

### 2.    Plaintiffs Seek Specific Relief, Not Contract Remedies

The second part of the analysis, the "relief plaintiff requested," *Am. Sci. and Eng'g*, 571 F.2d at 61; *see also Megapulse*, 672 F.2d at 968, further confirms that this Court has jurisdiction. Here, Plaintiffs seek paradigmatic examples of "specific relief" (as distinguished from compensatory relief, *see Bowen*, 487 U.S. at 900): vacating, declaring unlawful, and enjoining Defendants' actions. Defendants nonetheless attempt to recast the FAC as a suit for past due sums, arguing that "[t]he entire basis for [this] lawsuit is the loss of 'tens of millions of dollars'" in funding. Doc. No. 129 at 18. But Defendants conflate Plaintiffs' articulation of the harms stemming from the Defendants' unlawful agency action with the remedy being sought. Plaintiffs seek to *vacate an unlawful agency action*. If, as a result, the grant program itself needs to be reopened, the grant award notifications need to be reissued, and the funds can once again be "disbursed" going forward for future teacher supports and placement, that fact alone would not convert this action to one for compensatory damages. *See Bowen*, 487 U.S. at 893 ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'").[14]

Furthermore, the fact that the relief sought here is prospective in nature and is not for payment of sums *past due* is significant, as the Supreme Court itself has repeatedly found. *Bowen*, 487 U.S. at 880, 904 n.39 (whereas COFC is designed "to remedy particular categories of past injuries or labors," "a naked money judgment against the United States will [not] always be an

---

[14] *See also Aids Vaccine Advoc. Coal.*, 770 F. Supp. at 136 ("Plaintiffs are not seeking compensation for their losses due to the failure to pay them, which, as in any contract case, could be far greater than the amount withheld pursuant to the agency policy; Plaintiffs seek only invalidation of the policy, including the withholding of payment that flowed from it."); *Colorado*, 2025 WL 1426226 at *8 ("Rather than seeking compensation for past harm, the States ask the Court to enjoin HHS' likely unlawful termination of promised public health funding. Merely because their requested equitable relief would result in the disbursement of money is not a sufficient reason to characterize the relief as money damages.").

adequate substitute for prospective relief"); *Maine Cmty. Health Options*, 590 U.S. at 327 (distinguishing *Bowen* because petitioners sought "specific sums already calculated, past due, and designed to compensate for completed labors" under a "program [that] expired years ago, [such that] this litigation presents no special concern about managing a complex ongoing relationship"); *see also Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1297 (10th Cir. 2009) (noting that in those cases where the court has found plaintiffs advanced a disguised Tucker Act claim, "we have typically found dispositive that the action lacks 'any significant prospective effect or considerable value' apart from facilitating a monetary claim to compensate for *past* wrongdoing") (emphasis in original).[15] Indeed, the primary case on which the Supreme Court relied for its preliminary Tucker Act analysis in this case, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) (*Knudson*), took pains to distinguish an exclusively backward-looking remedy for reimbursement of *past due* sums from a prospective remedy that also affects future disbursement as part of an ongoing relationship, as sought in the Supreme Court's controlling precedent in *Bowen* and in this case.[16]

Plaintiffs' claims here more closely resemble Massachusetts's claims in the thorough, binding, and on-point Supreme Court decision in *Bowen* than they do the claims in *Knudson*, the sole case cited in the Supreme Court's per curiam order. Defendants' cursory efforts to distinguish *Bowen* in a footnote as not involving grant agreements, *see* Doc. No. 129 at 18 n.1, is wholly unpersuasive. Defendants ignore the fundamental similarities between Plaintiffs' institutions and Massachusetts in *Bowen*: both have open accounts that last for years and periodically draw down

---

[15] *See also Massachusetts v. NIH*, 770 F. Supp. 3d at 294 ("A hallmark of such equitable actions is the existence of prospective relief in ongoing relationships."); *Colorado*, 2025 WL 1426226 at *8 (same).

[16] This action, filed on March 6, 2025, Doc. No. 1, regarding the February Actions learned of as late as February 21, 2025, *see* Doc. No. 8-13, p. 60, seeks prospective relief related to a multi-year program extending into September 30, 2029. *See, e.g.*, Doc. No. 8-3 ¶ 27, 8-4 ¶ 9.

funds in gradual installments over time.[17] Just as the plaintiffs in *Bowen* sought an injunction to

clarify the eligibility of certain services for payment, Plaintiffs here seek an injunction to correct

the Defendants' unlawful agency action, which has resulted in the cessation of the ongoing

relationship, grant programs in place for years, some for more than a decade for essential teacher

support and placement, and all future drawdowns on institutions' open accounts. *See* Doc. No. 112

¶¶ 68-95.

Defendants also ignore *Bowen*'s observation that the legislative history of the 1976 APA

amendments "indicate[s] that Congress understood that [the APA], as amended, would authorize

judicial review of the 'administration of Federal grant-in-aid programs.'" *Bowen*, 487 U.S. at 898

& n.28. In particular, *Bowen* notes that the amendment would permit judicial review in cases like

*Lee County School District v. Gardner*, where federal education officials similarly argued

(unsuccessfully) that because "the complaint seeks an order directing them to pay over property of

the government, in the form of funds," judicial review in accordance with the APA was "barred

by the doctrine of sovereign immunity." *Id.* at 898 & n.29; 263 F. Supp. 26, 30-31 (D.S.C. 1967).

Finally, Defendants wrongly claim that Plaintiffs seek the prototypical contract remedy of

specific performance of the grant agreements. Doc. No. 129 at 19. As explained above, Plaintiffs

have asked that the agency's unlawful actions be vacated and that Defendants be enjoined from

implementing the February 5 Directive to terminate the TQP and SEED programs. Courts

addressing claims like this one have repeatedly rejected the contention that equitable relief of this

kind is akin to mandating specific performance of a contract. *See, e.g., Rhode Island*, 2025 WL

---

[17] *Compare* Doc. No. 112 ¶ 96 ("For many TQP and SEED grant recipients, this GAN
confirmed funding for the coming year as part of their ongoing, multi-year grant award. For others,
this GAN confirmed funding for the first year of a multi-year grant award."), *with Bowen*, 487
U.S. at 883-84 (describing terminated grants as "a series of huge quarterly advance payments that
are based on the State's estimate of its anticipated future expenditures.").

1303868, at *6 (explaining that equitable relief enjoining unlawful grant terminations is "not specific performance of any grant agreements," "even though 'it is a claim that would require the payment of money by the federal government'") (quoting *Bowen*, 487 U.S. at 894); *S. Educ. Found. v. United States Dep't of Educ.*, No. CV 25-1079 (PLF), 2025 WL 1453047, at *7 (D.D.C. May 21, 2025). If Plaintiffs prevail in this litigation, nothing would prevent Defendants from terminating TQP and SEED grants so long as they do so in accordance with law; they would simply be barred from terminating grants for the unlawful reasons challenged in this lawsuit. *See Pacito v. Trump*, 772 F. Supp. 3d 1204, 1226 (W.D. Wa. 2025) (reasoning that an order enjoining unlawful funding termination "differ[ed] from an order of specific performance," in part because it did "not encroach upon the Government's unquestioned discretionary authority, moving forward, to enter and terminate cooperative agreements in compliance with the law").

As the Federal Circuit noted, "[a]n order compelling the government to follow its regulations . . . is beyond the jurisdiction of the Court of Federal Claims." *Ferreiro v. United States*, 501 F.3d 1349, 1353 n.3 (Fed. Cir. 2007). That is what plaintiffs seek here, not the contract-based remedies of "enforcement of the agreements or monetary damages." *Am. Sci. & Eng'g*, 571 F.2d at 61; *see also id.* at 63 (case belonged in COFC where "plaintiff's own prayer for relief makes it clear that enforcement of the license agreements or money damages was its aim"); *Burgos v. Milton*, 709 F.2d 1, 3 (1st Cir. 1983) (case belonged in COFC where plaintiff "sought and received a judgment ordering the United States to give him $15,000"). Plaintiffs seek relief in the form of prospective and equitable remedies—not money damages and not specific performance of a contract. Doc. No. 112 at p. 64.

### 3.    The Court Need Not Determine Whether The Grant Agreements Are Contracts

Defendants contend that it is undisputed that the TQP/SEED grants "have the essential characteristics of contracts." Doc. No. 129 at 12. Not so. Plaintiffs have never conceded that the TQP/SEED grants are contracts. And beyond their conclusory assertion that these grants "bear all the hallmarks of a contract," *id.*, Defendants offer no argument on why these *particular* grants are contracts that could be enforced in the COFC. In any event, the question of whether the grant agreements are contracts is irrelevant because, as explained *supra* Part I(A)(1)-(2), Plaintiffs' claims are based on, and arise from, statutory, regulatory and constitutional provisions.

Putting those threshold issues with Defendants' position aside, there remains a significant question of whether the COFC would even conclude that these grant agreements contain "'the four required elements of offer, acceptance, consideration, and proper government authority.'" *Amer. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 132 (D.D.C. 2023) (*ANERA*) (quoting *San Antonio Housing Auth. v. United States*, 143 Fed. Cl. 426, 463 (2019)); *see also Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005). Indeed, the COFC has held that similar grant and cooperative agreements did not include the necessary consideration to be enforceable in contract. *See, e.g.*, *St. Bernard Parish Government v. United States*, 134 Fed. Cl. 730, 735-36 (2017) (holding that agreement lacked consideration because, although the agreement would provide a "cleared waterway that would reduce the damage from future flooding," that benefit was "a generalized benefit" that was "incidental," rather than "direct"), *aff'd on diff. grounds*, 916 F.3d 987 (Fed. Cir. 2019); *see also, e.g.*, *ANERA*, 703 F. Supp. 3d at 134 ("Because the Cooperative Agreement did not confer a direct benefit on USAID, the consideration leg of the chair is missing, and USAID's argument that the Claims Court has jurisdiction topples over."); *D. R. Smalley & Sons, Inc. v. United States*, 178 Ct. Cl. 593, 597-598

21

(1967) (federal grants for roads and highways were "in reality gifts or gratuities" even though the federal government required "projects to be completed in accordance with certain standards before the proceeds of the grant will be paid"). And, here, the Department's own governing statute recognizes a distinction between "applicable programs," including financial assistance programs like TQP and SEED, and "any contract made by the Department of Education." 20 U.S.C. § 1221(b) & (c)(1).

### B.    The Court of Federal Claims Does Not Provide Plaintiffs An Adequate Remedy

Defendants also argue that this Court lacks jurisdiction over the APA claims because Plaintiffs would have an adequate remedy available in the COFC. Doc. No. 129 at 20-22. Initially, Defendants misunderstand the law, because the "adequate remedy bar of § 704 determine[s] whether there is a cause of action under the APA, not whether there is federal subject matter jurisdiction" over either APA or non-APA claims. *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017); *see also Newbury v. United States Hous. & Urb. Dev.*, No. CV 24-84WES, 2024 WL 3890779, at *8 (D.R.I. Aug. 20, 2024) ("The APA . . . waives the government's sovereign immunity in actions for relief 'other than money damages' against officials acting in their official capacity" under § 702, while "[t]he cause of action provided under the APA applies to '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court'" under § 704.).[18] Regardless, for the reasons explained below, Plaintiffs would have no "adequate remedy" available for their injuries in the COFC.

---

[18] To suggest that their argument is jurisdictional, Defendants cite *Consol. Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1383 (Fed. Cir. 2001). Doc. No. 129 at 21. That case in turn cited *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992), which is "no longer good law." *Perry*, 864 F.3d at 620.

*First*, the COFC would likely not have jurisdiction over Plaintiffs' claims. The Tucker Act confers jurisdiction in the COFC over certain claims for damages, but only if the plaintiff can "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172-73 (Fed. Cir. 2005). Such "money-mandating provisions are uncommon." *Maine Cmty. Health Options*, 590 U.S. at 324. To satisfy this "rare" requirement, *id.*, the plaintiff "must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (internal citations omitted).

Plaintiffs' statutory claims are not money-mandating. The APA itself is not money-mandating. 5 U.S.C. § 702 (providing for "relief other than money damages"); *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006). Neither are the authorizing statutes for the TQP and SEED grant programs, which instead provide for the award of grant funds "on a competitive basis." 20 U.S.C. §§ 1022a(a), 6672(a). For these reasons, the COFC likely lacks subject matter jurisdiction over Plaintiffs' claims, and Plaintiffs thus have no "adequate remedy" available in that court.[19]

*Second*, contrary to Defendants' argument, Doc. No. 129 at 21, the COFC cannot grant Plaintiffs meaningful equitable relief. "The [COFC] does not have the general equitable powers of

---

[19] That the COFC would likely lack jurisdiction over Plaintiffs' claims is a sufficient and independent reason, in addition to the reasons discussed above, *supra* Part I(A), for this Court to determine that the Tucker Act does not apply. *See Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) ("We categorically reject the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims."); *see also Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-2808, 2025 WL 1393876, at *3 (9th Cir. May 14, 2025) (explaining that "[t]he result requested by the Government would mean that no court has jurisdiction to hear plaintiffs' claims," which is "contrary to common sense" and "conflicts with the 'strong presumption favoring judicial review of administrative action' that is embodied in the APA" (quoting *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015))).

a district court to grant prospective relief." *Katz*, 16 F.3d at 1209 (quoting *Bowen*, 487 U.S. at 905). Even as "incidental" to the administration of a contract, the COFC could likely not grant equitable relief on contract claims, *Zelman v. Gregg*, 16 F.3d 445, 448 (1st Cir. 1994), or provide declaratory relief to guide regulatory interpretation as it relates to an ongoing relationship between parties, *Katz*, 16 F.3d at 1209.

As discussed above, *supra* Part I(A), Plaintiffs' prospective declaratory and injunctive relief is entirely forward-looking, focused on setting aside unlawful agency actions and restoring Plaintiffs' grant programs and continuing multi-year relationships with ED to implement those programs, consistent with regulatory, statutory, and constitutional limitations. Doc. No. 112 ¶ 22 & p. 64 (Prayer for Relief). In short, Plaintiffs "unmistakably ask[] for prospective relief" that "will have future impact on the ongoing relationship between the parties." *Katz*, 16 F.3d at 1209. Because the COFC "cannot provide the relief Plaintiffs seek, Plaintiffs' claims do not belong there." *San Francisco Unified Sch. Dist.*, 2025 WL 1180729, at *10.

Defendants nonetheless suggest that the COFC could grant "some form of equitable relief," citing the COFC's limited remand authority. Doc No. 129 at 21. The rule precluding the COFC's provision of equitable relief is subject to "very narrow statutory exceptions." *Zelman*, 16 F.3d at 448; *see* 28 U.S.C. § 1491(a)(2) & (b). And "such relief may be ordered only to complete the relief afforded by the money judgment and as an incident of and collateral to any such money judgment." *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 47 (2021) (cleaned up); 28 U.S.C. § 1491(a)(2). Thus, "the power to remand with 'proper and just' instructions 'does not trump the [general] prohibition on injunctive relief.'" *Todd Const., L.P. v. United States*, 88 Fed. Cl. 235, 245 (2009).

*Third*, money damages would not provide an adequate remedy to Plaintiffs. Even if Plaintiffs could obtain some form of damages in the COFC, those damages would be insufficient to redress the prospective relief that Plaintiffs seek. *See Bowen*, 487 U.S. at 905 ("[I]t cannot be assumed categorically that a naked money judgment against the United States will always be an adequate substitute for prospective relief.") Defendants' cited cases do not undermine the conclusion that monetary relief here would not be an adequate substitute for Plaintiffs' request for prospective relief. In *Suburban Mortgage Associates, Inc. v. United States Department of Housing and Urban Development*, the Federal Circuit explained that the COFC "could order payment of the insurance proceeds as a form of expectation damages, giving [the plaintiff lender] the benefits it expected to receive had the Government not breached the insurance contract." 480 F.3d 1116, 1126-27 (Fed. Cir. 2007). In contrast here, even if Plaintiffs could recover some form of damages under the grants, such damages would fall far short of the full, prospective benefits Plaintiffs expected to receive under the multi-year awards or to address reputational harm. *E.g., Mega Const. Co. v. United States*, 29 Fed. Cl. 396, 477-479 (1993) (dismissing contractor's claims of damaged relationships with subcontractors and loss of future clients as speculative and sounding in tort); Doc. No. 112 ¶ 156 (alleging reputational harm to Plaintiffs' public institutions).

In sum, assuming *arguendo* Defendants' argument is properly raised by their Rule 12(b)(1) motion (which it is not), the COFC cannot provide Plaintiffs any "adequate remedy" that would preclude APA review here.

## C.    Defendants' Dispute with Plaintiffs' Non-APA Claims are Unavailing

Defendants contend that Plaintiffs cannot establish jurisdiction through their constitutional, *ultra vires*, and declaratory judgment claims. Doc. No. 129 at 22-27. But Defendants

misunderstand the violations of law Plaintiffs allege and the relief sought. Importantly, Defendants' discussion of the non-APA claims once again flips the Court's analysis on its head.

As noted, *see supra* Part I(A), it is abundantly clear that the "core determination" to be made in this case, *Am. Sci. & Eng'g*, 571 F.2d at 61, is whether Defendants acted lawfully in their February Actions—not whether they breached any contract. That analysis is at the center of Plaintiffs' APA claims and is what grants this Court the jurisdiction to review the case before it. The FAC seeks to clarify the final agency action at issue here and includes non-APA causes of action—Declaratory Judgment (Count III), Spending Clause (Count IV), Ultra Vires (Count V), Separation of Powers (County VI)—that build on the legal theory underpinning the APA claims.

To that end, Plaintiffs' Declaratory Judgment claim is pled in conjunction with the APA claims and lays out the relief Plaintiffs seek: prospective declaratory and injunctive relief. The constitutional claims and *ultra vires* claim explain additional violations of law underlying the APA claim embodied in Count II: to the extent Defendants' February Actions terminated the TQP and SEED programs by placing new, retroactive, ambiguous, and unrelated conditions on the TQP and SEED grants, Defendants have contravened Congress's spending mandates and violated the separation of powers (Counts IV & V), thereby acting *ultra vires* (Count V). Separate and apart from Defendants misunderstanding the question at issue here, Plaintiffs' non-APA claims are properly before it.

Plaintiffs' constitutional and *ultra vires* claims are properly before the Court. It is well established that plaintiffs may challenge unconstitutional and *ultra vires* conduct by federal officials in district court. *See* 28 U.S.C. §1331 (conferring "original jurisdiction of all civil actions arising under the Constitution"); *see, e.g., Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) (recognizing federal courts' power to enjoin federal officials from exceeding the

bounds of their constitutional and statutory authority).[20] It is equally well established that the Tucker Act does not cover such claims for prospective, equitable relief. As discussed, *supra* Part I(B), to be "cognizable under the Tucker Act," a claim "must be one for money damages against the United States," and must involve a "money-mandating" source of law. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (quotation marks omitted). That description plainly does not apply to Plaintiffs' constitutional causes of action and *ultra vires* claims. *See also supra* Part I(B). Plaintiffs' constitutional claims are not among the "rare" types of claims that have been found to mandate compensation. *Maine Cmty. Health Options*, 590 U.S. at 324; *see LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (explaining that constitutional claims under the Due Process Clause, Equal Protection Clause, First Amendment, and the doctrine of the separation of powers have been found to be not money-mandating); *cf. Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) (explaining that the Takings Clause is money-mandating).

Likewise, Plaintiffs' Declaratory Judgment claim is properly before this Court. Under the Declaratory Judgment Act (DJA), a federal court "may declare the rights and other legal relations

---

[20] Defendants suggest that Plaintiffs' *ultra vires* claim against the Department and Defendants McMahon and Carter are barred by the doctrine of sovereign immunity. It is, however, well established that the doctrine of sovereign immunity "does not apply in suits where plaintiffs sue for specific relief against federal officers, alleging either (1) that the officers have acted beyond their statutory authority or (2) that the statute conferring power upon the officers is unconstitutional." *Kozero v. Spirito*, 723 F.2d 1003, 1008 (1st Cir. 1983); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949). Plaintiffs' *ultra vires* claim fits under the first exception—it alleges that Defendants "acted beyond their statutory authority" by implementing the Directive to terminate nearly all previously awarded TQP and SEED grants under the guise of individual grant terminations. Doc. No. 112 ¶¶ 5, 218-22. Nor is Plaintiffs' *ultra vires* claim a "disagreement" with the Department's exercise of its statutory authority; rather, Plaintiffs claim that Defendants acted *ultra vires* and in excess of their statutory authority by terminating the TQP and SEED grant programs under the guise of individual grant terminations. *See Florida Health Sci. Ctr., Inc. v. Sec'y Health & Human Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016) (To challenge agency action on the ground that it is *ultra vires*, plaintiff must show a "patent violation of agency authority.").

of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The overriding aim of the DJA is to "resolv[e] potential disputes" anticipated by the party seeking relief "in light of the other side's conduct." *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 94-97 (1993)). Plaintiffs have standing to seek, and this case is ripe for adjudication of, exactly such a declaratory judgment, which will not only "serve a useful purpose in clarifying and settling the legal relations in issue" but will also "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2759 (4th ed. 2025).

Plaintiffs do not seek to rely on the DJA to establish jurisdiction here.[21] Rather, through their Declaratory Judgment claim, Plaintiffs seek forward looking relief under the APA as to the proper scope of 2 C.F.R. § 200.340(a)(4) (2024) and/or (a)(2) (2020).[22] *See* 5 U.S.C. § 703. As noted, Plaintiffs do not seek reimbursement for "past due" sums as Defendants suggest, Doc No. 129 at 18 n.1. Rather, the relief being sought here is limited to declaratory and injunctive relief as applied to these programs—not money damages or specific performance of the grant agreements. The February Actions constitute unlawful agency action. Plaintiffs should not have a Damoclean sword hanging over every current and future grant with ED, where Defendants can, at any time, suddenly invoke 2 C.F.R. § 200.340(a) to cut off federal funding based on so-called new "agency priorities."

---

[21] Nor do Plaintiffs rely on the federal-question jurisdiction statute, 28 U.S.C. § 1331, for jurisdiction over their Declaratory Judgment claim. Rather, as discussed above, Plaintiffs' Declaratory Judgment claim is part and parcel of their APA claims.

[22] Plaintiffs' Declaratory Judgment claim mentions both 2 C.F.R. § 200.340(a)(4) (2024) and its predecessor 2 C.F.R. § 200.340(a)(2) (2020) because Defendants cited to the 2020 version of the OMB Uniform Guidance in earlier briefing. However, only 2 C.F.R. § 200.340(a)(4) (2024) is relied on by Defendants in the Department Directive and the Termination Letter. Regardless, neither version of the regulation permits Defendants' February Actions.

28

Declaratory relief setting out the limitations of the OMB Uniform Guidance and ED's use of the regulations will clarify the federal funding landscape for Plaintiffs.

## II. THE COURT SHOULD NOT TRANSFER PLAINTIFFS' CASE TO THE COURT OF FEDERAL CLAIMS

Defendants ask this Court, in the alternative to dismissal, to transfer this case to the COFC pursuant to 28 U.S.C. § 1631. Doc. No. 129 at 27. Defendants' request relies solely on their arguments that this Court lacks jurisdiction here. *Id.* Those arguments fail for the reasons discussed above, *see supra* Part I, and transfer is thus inappropriate. 28 U.S.C. § 1631; *see Alicea v. Machete Music*, 744 F.3d 773, 789 (1st Cir. 2014) ("As there was manifestly no 'want of jurisdiction' . . . transfer under § 1631 was inappropriate."). Moreover, Defendants offer no reason why transfer would be "in the interest of justice," a separate requirement for transfer. 28 U.S.C. § 1631; *see Britell v. United States*, 318 F.3d 70, 74 (1st Cir. 2003); *cf. Burgos*, 709 F.2d at 2 (transfer appropriate to protect plaintiffs where events occurred outside Tucker Act's six-year statute of limitations). For these reasons, the Court should also deny Defendants' alternative request for transfer.

## CONCLUSION

For the reasons herein, Plaintiffs respectfully request that the Court deny Defendants' motion.

Dated:  July 21, 2025

Respectfully submitted,

**ROB BONTA**
Attorney General
State of California

By: */s/ Alexis Piazza*
Laura L. Faer*
*Supervising Deputy Attorney General*
Alexis Piazza*
Heidi Joya*
Garrett Lindsey*
Dennis Ojogho*
*Deputy Attorneys General*
Michael L. Newman*
*Senior Assistant Attorney General*
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
Laura.Faer@doj.ca.gov
Alexis.Piazza@doj.ca.gov
Heidi.Joya@doj.ca.gov
Michael.Newman@doj.ca.gov
Garrett.Lindsey@doj.ca.gov
Dennis.Ojogho@doj.ca.gov

**ANDREA JOY CAMPBELL**
Attorney General
Commonwealth of Massachusetts

By: */s/ Adelaide Pagano*
Megan Barriger (BBO #687707)
*Senior Trial Counsel*
Adelaide Pagano (BBO #690518)
*Assistant Attorney General*
Yael Shavit (BBO #695333)
*Chief, Consumer Protection Division*
Chris Pappavaselio (BBO #713519)
Matthew Lindberg (BBO #633630)
*Assistant Attorneys General*
1 Ashburton Pl.
Boston, MA 02108
(617) 963-2038
megan.barriger@mass.gov
adelaide.pagano@mass.gov
yael.shavit@mass.gov
chris.pappavaselio2@mass.gov

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: */s/ Amanda I. Morejón*
Amanda I. Morejón (BBO #696737)
Jessica L. Palmer*
Lauren E. Van Driesen*
Elizabeth R. Walsh*
*Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5279
Amanda.Morejon@law.njoag.gov
Jessica.Palmer@law.njoag.gov
Lauren.VanDriesen@law.njoag.gov
Elizabeth.Walsh@law.njoag.gov

30

**PHILIP J. WEISER**
Attorney General
State of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
*Deputy Solicitor General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov

**ANTHONY G. BROWN**
Attorney General
State of Maryland

By: */s/ Virginia A. Williamson*
Virginia A. Williamson†
*Assistant Attorney General*
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6584
VWilliamson@oag.state.md.us

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

By: */s/ Aaron J. Bibb*
Aaron J. Bibb*
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
bibbaj@doj.state.wi.us

*admitted *pro hac vice*

**KWAME RAOUL**
Attorney General
State of Illinois

By: */s/ Darren Kinkead*
Darren Kinkead*
*Public Interest Counsel*
115 South LaSalle Street
Chicago, IL 60603
(773) 590-6967
Darren.Kinkead@ilag.gov

**LETITIA JAMES**
Attorney General
State of New York

By: */s/ Sandra Park*
Sandra Park*
*Civil Rights Bureau Chief*
Monica Hanna*
Rabia Muqaddam*
*Special Counsels*
Alex Finkelstein*
Wil Handley*
Kathryn Meyer*
*Assistant Attorneys General*
28 Liberty Street
New York, New York 10005
(212) 416-8250
sandra.park@ag.ny.gov

31

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants.

*/s/Adelaide Pagano*
Adelaide Pagano (BBO# 690518)
*Assistant Attorney General*

Dated:  July 21, 2025