UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STATE OF CALIFORNIA, et al.,

          Plaintiffs,

   v.

U.S. DEPARTMENT OF EDUCATION, et al.,

          Defendants.

Civil Action No. 25-10548-AK

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER TO THE COURT OF FEDERAL CLAIMS**

## I.    INTRODUCTION

Reviewing this case, the Supreme Court found that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" Plaintiffs seek here.  *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"  *Id.* (citing 28 U.S.C. § 1491(a)(1)).  Plaintiffs' opposition makes plain that nothing since the Supreme Court's order has altered the essence of this case, which remains a dispute about whether the Department of Education must reinstate grant agreements with certain organizations operated by and within the Plaintiff States.

Plaintiffs dismiss that notion as if reinstating the grant agreements would amount to nothing more than a pleasant surprise—some unintended and incidental byproduct of their *real* desire: "vacating" the Department's terminations of the grants and enjoining it from terminating the grants again in the future, except in accordance with their view of the law.  But the substance and effect of that request—however phrased—would require the Department to reinstate the grant agreements and keep on paying the money due under them.  In other words, Plaintiffs seek to enforce alleged contractual obligations to pay money.  This Court lacks jurisdiction to order such relief.  Plaintiffs must instead proceed in the Court of Federal Claims under the Tucker Act.

## II.    ARGUMENT

### A.  Plaintiffs' claims present essentially a contract dispute.

Plaintiffs concede that, if the Tucker Act's exclusive grant of jurisdiction (and concomitant limitations) applies, then their "claims belong in the [Court of Federal Claims]."  Doc. No. 130 at 19.  Plaintiffs also concede that the Tucker Act applies if the "core determination" at issue presents

"essentially a contract dispute." Doc. No. 130 at 19 (citing *American Science & Engineering, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978)). And Plaintiffs agree that, in determining whether a case presents essentially a contract dispute, courts look to "the source of the rights upon which the plaintiff bases its claims, and . . . the type of relief sought (or appropriate)." Doc. No. 130 at 19–20 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).[1]

### 1. The only "rights" identified are rights to federal funding, and the sources of those alleged rights are the grant agreements.

Plaintiffs claim that the sources of their alleged rights consist of the statutes authorizing the grant programs, a federal regulation authorizing grant terminations, the APA, and the Constitution. *See* Doc. No. 130 at 21–26. But they argue only that Defendants have *violated* these authorities. *See id.* For instance, Plaintiffs state that their claims are "premised on Defendants' violation of" 2 C.F.R. § 200.340(a), and that their claims "are premised on Defendants' arbitrary and capricious agency action." *Id.* at 12, 14. Plaintiffs do not, by contrast, claim that these laws vest them with the *rights* that they seek to vindicate. Even if Defendants violated certain laws (which they did not), that does not mean that they violated Plaintiffs' rights. To determine the source of the right asserted, Plaintiffs must identify *what* they allegedly have a right to.

Plaintiffs have no free-floating right to direct the government to follow the law. Nor can they claim a right to challenge an agency policy—such as the February 5 Directive—in the

---

[1] Defendants correctly observed that "Plaintiffs have never disputed that their TQP and SEED grant awards have the essential characteristics of contracts." Doc. No. 129 at 13. Plaintiffs take issue with the characterization of this point as "undisputed"—*but they do not actually dispute the point*. Doc. No. 130 at 31. Regardless, the amended complaint alleges that the Department and grantees in the Plaintiff States entered into binding written agreements requiring the Department to provide money in exchange for the grantees performing promised services. Doc. No. 112 at 29–30. Thus, "each grant award takes the form of a contract between the recipient and the government." *California v. U.S. Department of Education*, 132 F.4th 92, 96 (1st Cir. 2025).

abstract. *See Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("an on-going program or policy is not, in itself, a 'final agency action' under the APA"). Even Plaintiffs recognize as much, asserting that the "core determination" in this case concerns "whether Defendants acted lawfully in their *application* of the February 5 Directive to the TQP and SEED programs." Doc. No. 130 at 26 (emphasis added). But, of course, the application of the February 5 Directive consisted of *the termination of federal funding*. And Plaintiffs concede that none of the laws they cite provides a right to federal funding. *See* Doc. No. 130 at 33. Rather, "it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds." *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025).

Plaintiffs also suggest a "right" to be free from arbitrary and capricious action under the APA. *See* Doc. No. 130 at 14–15. But the APA "does not declare self-actualizing substantive rights." *American Waterways Operators v. United States Coast Guard*, 613 F. Supp. 3d 475, 486 (D. Mass. 2020) (citation omitted). When assessing whether a lawsuit may proceed under the APA or must instead proceed under the Tucker Act, courts ask whether the rights being asserted derive from contracts *as opposed to some other source of substantive law*—not the APA. If the APA itself supplied the relevant right, the entire inquiry would be circular and meaningless. *See Megapulse*, 672 F.2d at 967 n.34 (citation omitted). Plaintiffs thus "cannot manufacture an APA claim by asking the court to declare that" the termination of funding "was an arbitrary or capricious act." *Diaz v. Johnson*, No. 19-1501, 2020 WL 9437887, at *2 (1st Cir. Nov. 12, 2020).

## 2. Plaintiffs seek the contractual remedy of specific performance.

Plaintiffs emphasize that they "seek to *vacate an unlawful agency action*"—not money damages. Doc. No. 130 at 27. But, as Defendants explained, a vacatur/set aside "remedy" is an APA-specific tool that would only be available if the APA applied. In any event, Plaintiffs'

repeated invocation of the term does not advance the inquiry. The Court should look to the substance of Plaintiffs' requested relief "irrespective of how it is packaged." *Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989). And Plaintiffs leave no doubt that, by "vacating agency action," they mean reversing the grant terminations. *See United States Conference of Catholic Bishops v. U.S. Department of State*, 770 F. Supp. 3d 155, 165 (D.D.C. 2025) ("Sure, the Conference seeks to set aside agency action. But the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with the Conference.").

Plaintiffs attempt to downplay that reality—relying heavily on *Bowen v. Massachusetts*, 487 U.S. 879 (1988). *See* Doc. No. 130 at 27–29. In *Bowen*, the Supreme Court considered Massachusetts' request to enforce a provision of the Medicaid Act that required the payment of certain amounts to participating states. 487 U.S. at 887. The Court explained that the APA applies where, among other things, the plaintiff seeks relief other than "money damages." *Id.* at 893. And it observed that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* The Court then held that "[t]he State's suit to enforce § 1396b(a) of the Medicaid Act . . . [was] not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay," but, rather, "a suit seeking to enforce the statutory mandate itself." *Id.* at 900.

Plaintiffs reason that, "[i]f, as a result" of their requested relief, "the grant award notifications need to be reissued, and the funds can once again be 'disbursed' going forward . . . that fact alone would not convert this action to one for compensatory damages." Doc. No. 130 at 27. But that is precisely the argument that the Supreme Court considered in granting Defendants a stay. Citing *Bowen*, the Court acknowledged that an APA claim "'is not barred by the possibility'

that an order setting aside an agency's action may result in the disbursement of funds." *California*, 145 S. Ct. at 968. Still, the Court found that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" Plaintiffs request here. *Id.* (citing *Great-West*, 534 U.S. at 212).

Moreover, Plaintiffs' focus on "compensatory damages" ignores the *other* conditions imposed by the APA's waiver of sovereign immunity. In addition to excluding claims for damages, the APA's waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. And there is no dispute that the Tucker Act impliedly forbids granting specific performance of contracts with the United States. Thus, even if Plaintiffs do not seek "compensatory damages," their lawsuit remains barred if their requested remedies amount to specific performance.

Plaintiffs concede that they seek "specific relief," Doc. No. 130 at 27, but deny that they seek "specific performance," *id.* at 29. That attempted distinction proves unavailing. Specific performance is a type of specific relief that compels a party to perform a contract—including "a contractual obligation to pay money." *Great-West*, 534 U.S. at 210. That description best fits the substance of Plaintiffs' requested relief. Plaintiffs seek an order preventing Defendants "from implementing, maintaining, or reinstating" the terminations "for recipients in Plaintiff States." Doc. No. 112 at 64. In other words, Plaintiffs "ask[] the Court to order the Government to cancel the termination[s], pay money due, and reinstate the contracts." *Conference of Catholic Bishops*, 770 F. Supp. 3d at 164. "That is something this Court lacks the power to do." *Id.* "[W]here [the] practical result of granting [a] plaintiff's request for declaratory and injunctive relief would be reinstatement of terminated contracts," that relief amounts to "specific performance." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) (citation omitted). Plaintiffs claim

their remedies "[do] not prevent Defendants from making future individualized terminations so long as the terminations are consistent with law." Doc. No. 130 at 24 n.9. But an order directing that "the government may either perform or terminate so long as it acts in consonance with applicable regulations . . . also amounts to a request for specific performance." *Ingersoll-Rand*, 780 F.2d at 80.

It remains genuinely unclear what type of relief Plaintiffs would want—or have standing to seek—if not the reinstatement of these grant agreements and resumption of funding. After all, Plaintiffs claim that "the harms stemming from the Defendants' [allegedly] unlawful agency action" consist of "the loss of 'tens of millions of dollars' in funding." Doc. No. 130 at 27. Plaintiffs accuse Defendants of "conflat[ing] Plaintiffs' articulation of the harms stemming from the Defendants' unlawful agency action with the remedy being sought." Doc. No. 130 at 27. But that critique gets things exactly backwards and exposes the fundamental disconnect in their theory of jurisdiction. Plaintiffs' asserted injuries *must correlate* to the remedies being sought. If the remedies sought would not redress the injuries asserted, Plaintiffs would not have standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek").

Plaintiffs assert that Defendants cannot be right because it would mean that "neither a federal district court nor the [Court of Federal Claims] can set aside or enjoin the government's unlawful actions here, which would create an intolerable jurisdictional void." Doc. No. 130 at 19. But, far from "intolerable," that is the *intended function* of the APA provision at issue, which "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). The Court of Federal Claims cannot "order specific performance by the United

6

States of its alleged contractual obligations." *Coggeshall*, 884 F.2d at 3. Plaintiffs therefore cannot go to federal district court "to obtain indirectly the injunctive or declaratory relief the [Court of Federal Claims] could not provide directly." *American Science*, 571 F.2d at 63 n.6.

**B. Plaintiffs have an adequate remedy in the Court of Federal Claims.**

The Court also lacks jurisdiction because a money judgment in the Court of Federal Claims would provide an adequate remedy for the injuries of which Plaintiffs complain. 5 U.S.C. § 704. Plaintiffs argue that this question does not present a jurisdictional dispute. But that is plainly wrong. Deciding whether the Court of Federal Claims could provide an adequate remedy involves a threshold determination of "whether the case falls within the jurisdiction of the Court of Federal Claims." *Suburban Mortg. Associates, Inc. v. U.S. Dept. of Housing and Urban Development*, 480 F.3d 1116, 1126 (Fed. Cir. 2007). If the Court of Federal Claims "can provide an adequate remedy," that "is enough to deny a district court jurisdiction under the APA." *Id.*

In any event, Plaintiffs merely contend that the Court of Federal Claims could not provide an adequate remedy because it could not provide them *the remedy that they seek*. *See* Doc. No. 130 at 33–35. But the fact "[t]hat the Court of [Federal] Claims cannot provide the precise relief requested is no grounds for denying its jurisdiction over the claim." *American Science*, 571 F.2d at 62. Plaintiffs also err in suggesting that ruling for Defendants would leave them with no recourse whatsoever. *See* Doc. No. 130 at 19. Both sides agree that the Tucker Act vests the Court of Federal Claims with jurisdiction over claims seeking monetary relief that are founded upon contracts with the United States. If Plaintiffs wish to disavow any claim to monetary relief, that remains their choice. But it does not mean that they have been dealt "an intolerable jurisdictional

void." *Id.* Forgoing monetary relief in the Court of Federal Claims does not give Plaintiffs the alternative option of seeking specific performance in federal district court.

### C. The Court does not have jurisdiction over Plaintiffs' standalone claim under the Declaratory Judgment Act.

Despite invoking the Declaratory Judgment Act (DJA) as a basis for jurisdiction in their amended complaint, Doc. No. 112 at 8, Plaintiffs now represent that they "do not seek to rely on the DJA to establish jurisdiction here." Doc. No. 130 at 38. And despite pleading a claim under the DJA as a standalone cause of action (Count III), Doc. No. 112 at 56–57, Plaintiffs now seek to restyle it as "part and parcel of their APA claims"—i.e., Counts I and II. Doc. No. 130 at 38 n.21. In other words, Plaintiffs explain that they rely on the DJA merely to "lay[] out the relief Plaintiffs seek" under their "APA claims." *Id.* at 26; *see id.* at 28 ("through their Declaratory Judgment claim, Plaintiffs seek forward looking relief *under the APA*" (emphasis added)).

Those explanations help clarify Plaintiffs' theory, but they do not support this Court's jurisdiction. If Plaintiffs seek to assert this "claim" *under the APA*, it must fall within the scope of the APA's waiver of immunity. It does not for all the reasons discussed. Plaintiffs have asked the Court to issue a declaratory judgment "clarify[ing] the rights" of grantees under 2 C.F.R. § 200.340. Doc. No. 112 at 57. But declaring that 2 C.F.R. § 200.340 did not permit the Department to terminate the grants in these circumstances would amount to a declaratory judgment that the Department "was in breach of its contractual obligations." *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986). The Court of Federal Claims cannot issue such a declaration. And "[t]he APA cannot be used to obtain indirectly the injunctive or *declaratory relief* the Court of [Federal] Claims could not provide directly." *American Science*, 571 F.2d at n.6 (emphasis added).

Plaintiffs also appear to seek a different, broader, and more general declaratory judgment—one that declares the rights of *any* grantee under 2 C.F.R. § 200.340 with respect to "every current

and future grant with [the Department]." Doc. No. 130 at 38. But, "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 593 U.S. 659, 672 (2021). Plaintiffs therefore need to allege injuries personal to them and fairly traceable to Defendants' allegedly wrongful conduct. And Plaintiffs cannot do so with respect to grants that Defendants have neither terminated nor threatened to terminate—much less future grants that do not even exist.

### D. The Court lacks jurisdiction over Plaintiffs' constitutional and *ultra vires* claims.

Plaintiffs have similarly clarified that their "constitutional claims and *ultra vires* claim explain additional violations of law underlying the APA claim embodied in Count II." Doc. No. 130 at 36; *see id.* (stating that these claims "build on the legal theory underpinning the APA claims"). Count II of the amended complaint seeks judicial review under the APA, arguing that Defendants' actions were "not in accordance with law." Doc. No. 112 at 54 (citing U.S.C. § 706(2)(A)). Thus, Plaintiffs argue that Defendants' actions were unconstitutional and *ultra vires* (i.e., not in accordance with law), and should therefore be set aside under the APA. But if these "non-APA" claims simply seek to "build on the legal theory underpinning the APA claims" and "explain additional violations underlying the APA claim embodied in Count II," Doc. No. 130 at 36, then they are not truly *non*-APA claims. They are, in fact, *APA* claims that must fall within the scope of the APA's limited waiver of sovereign immunity.

In support of their claim that they "may challenge unconstitutional action" in this Court, Plaintiffs cite 28 U.S.C. § 1331. Doc. No. 130 at 36. But this statute "do[es] not waive sovereign immunity and therefore cannot be the basis for jurisdiction over a civil action against the federal government." *Berman v. United States*, 264 F.3d 16, 20 (1st Cir. 2001). And while constitutional

claims may constitute a species of *ultra vires* claims that do not require a waiver of immunity, Plaintiffs have explained that they are not advancing such claims.  *See* Doc. No. 130 at 37 n.20.

As for their *ultra vires* claim, Plaintiffs do not even *address* the Supreme Court's recent decision explaining that "[u]ltra vires review is . . . unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Nuclear Regulatory Commission v. Texas,* 145 S. Ct. 1762, 1776 (2025) (citation omitted).  As explained, Plaintiffs have a path to judicial review in the Court of Federal Claims as "the [Tucker Act] statute provides . . . clear and convincing evidence that Congress intended to deny the District Court[s] jurisdiction to review" claims which are in essence contractual.  *Board of Governors of Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 44 (1991).  Thus, for all the reasons that the Tucker Act precludes APA actions for claims that are in essence contractual, the Tucker Act also precludes an *ultra vires* action based on such claims.  *See Sustainability Institute*, 2025 WL 1587100, at *2 ("it appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act").

### E.  If the Court does not dismiss the case, it should transfer the action to the Court of Federal Claims.

Finally, Plaintiffs oppose Defendants' alternative request to transfer this case to the Court of Federal Claims.  Doc. No. 130 at 39.  Thus, in Plaintiffs' view, if the Court determines that it lacks jurisdiction, it should deny the motion to transfer and dismiss the case.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated:  July 28, 2025          By:     */s/ Michael L. Fitzgerald*
                                        MICHAEL L. FITZGERALD
                                        Assistant United States Attorney
                                        U.S. Attorney's Office
                                        1 Courthouse Way, Ste. 9200
                                        Boston, MA 02210
                                        (617) 748-3266
                                        michael.fitzgerald2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Michael L. Fitzgerald*
MICHAEL L. FITZGERALD
Assistant U.S. Attorney

Dated:  July 28, 2025